**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MOUNTAIN SPORTS LLC; *et al.*,[1] | ) | Case No. 24-11385 (MFW) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |

**EMERGENCY MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR INSURANCE POLICIES AND PROGRAMS, AND (B) HONOR ALL INSURANCE OBLIGATIONS, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "*Debtors*"), respectfully represent as follows in support of this motion (the "*Motion*"):[2]

**Relief Requested**

1.  By this Motion, pursuant to sections 105(a), 362(d), 363(b), 364 and 503(b) of the title 11 of the United States Code (the "*Bankruptcy Code*"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), the Debtors seek entry of an order (i) authorizing, but not directing, the Debtors to (a) continue to maintain their Insurance Policies and Programs (as defined herein) and, (b) honor their Insurance Obligations (as defined herein) in the ordinary course of business during the administration of these chapter 11 cases, including paying any prepetition Insurance Obligations, and (c) modify the automatic stay if necessary to permit the Debtors' employees to proceed with any claims they may have under the Workers' Compensation Program (as defined herein), and (ii) granting related relief. In furtherance of the foregoing, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Mountain Sports LLC (9597); SDI Gift Card LLC (9775); Bob's Stores USA LLC (6115); SDI Stores LLC (4751); and Mountain Sports USA LLC (4036). The location of the Debtors' corporate headquarters is 160 Corporate Court, Meriden, CT 06450.

Debtors also seek authority to increase, renew, or extend their insurance coverage if they determine, in their reasonable business judgment, that such action is necessary or appropriate.

2.  The Debtors further request that the Court (i) authorize and direct all applicable financial institutions (the "*Banks*") to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent directed by the Debtors in accordance with this Motion and to the extent the Debtors have sufficient funds standing to their credit with such Bank, whether such checks were presented or electronic requests were submitted before or after the Commencement Date, and (ii) authorize all Banks to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion, without any duty of further inquiry, and without liability for following the Debtors' instructions.

3.  A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "*Proposed Interim Order*"), and a proposed form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit B** (the "*Proposed Final Order*" and, together with the Proposed Interim Order, the "*Proposed Orders*").

## JURISDICTION AND VENUE

4.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.  The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code, Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy*

*Rules*"), and Rules 1015-1 and 9013-1(m) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*").

6. Pursuant to Local Rule 9013-1(f), the Debtors hereby consent to the entry of a final order or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

## BACKGROUND

7. The Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "*Chapter 11 Cases*") in this Court on June 18, 2024 (the "*Petition Date*"). The Debtors are authorized to continue operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

8. The Debtors operate outdoor clothing, sporting goods, activewear and sports equipment retail locations in the northeastern United States under the brands "Eastern Mountain Sports" ("*EMS*") and "Bob's Stores" ("*Bob's*"). EMS markets to the adventurer looking for reliable and functional outerwear and gear at a value price. Bob's targets moderate-income customers with a selection of footwear, workwear, teamwear and activewear. Under both brands, the Debtors operate approximately 50 retail outlets and also maintain an ecommerce presence for both brands. Headquartered in Meriden, Connecticut, the Debtors employ approximately 800 full- and part-time employees.

9. Additional information regarding the Debtor's business and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of David Barton In Support of First Day Motions* (the "*Barton Declaration*"), to be filed substantially contemporaneously herewith.

**THE DEBTORS' INSURANCE POLICIES AND PROGRAMS**

10. In connection with the operation of the Debtors' businesses and the management of their properties, the Debtors maintain various insurance policies and workers' compensation programs (collectively, the "*Insurance Policies and Programs*" and all premiums and other obligations related thereto, including any broker or advisor fees, assessments, or other fees, collectively, the "*Insurance Obligations*") through several different insurance carriers (the "*Insurers*") including, but not limited to, those Insurance Policies and Programs and Insurers listed on **Exhibit C** annexed hereto (the "*Insurance Schedule*").

**A.     The Insurance Policies**

11. The Debtors maintain various liability, property and other insurance policies, which provide the Debtors with insurance related to, among other things, general liability, directors & officers, ERISA, business auto, cargo, workers compensation, commercial property, and excess liability coverage (collectively, the "*Insurance Policies*"). The Debtors maintain the Insurance Policies to help manage and limit the various risks associated with operating their stores and store programs, which is essential to the preservation of the value of the Debtors' businesses and assets. Some of the Insurance Policies are required by certain regulations, laws, and contracts that govern the Debtors' commercial activities. Further, the Bankruptcy Code reinforces these requirements, as section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public," is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C).

12. Pursuant to the Insurance Policies, the Debtors pay premiums based upon a fixed rate established and billed by each Insurer (collectively, the "*Insurance Premiums*"). The Debtors pay approximately $1,105,973.00 in Insurance Premiums each year. The Debtors have

approximately $332,650.28 in prepetition Insurance Premiums currently due and payable on account of Insurance Policies which extend coverage to the Debtors during the period beginning May 1, 2024, and ending May 1, 2025.

13.     By this Motion, the Debtors seek authority to pay their Insurance Premiums, as they come due, in the ordinary course of business, whether arising from the prepetition or postpetition period, throughout these Chapter 11 Cases.

**B.     The Workers' Compensation Programs**

14.     The Debtors maintain workers' compensation insurance (the "*Workers Compensation Policies*") as required by statute in each of the states in which they operate (collectively, the "*Workers' Compensation Programs*"). The Debtors' Workers' Compensation Policies insure their employees for on-the-job injuries. The Debtors also maintain several excess workers' compensation insurance policies with certain third-party Insurers, which are maintained to cover workers' compensation claims in excess of the amounts covered by the base Workers Compensation Policies (the "*Excess Policies*" and collectively with the Workers' Compensation Policies, the "*Workers' Compensation Programs*").

15.     The Debtors utilize a third-party administrator to investigate, administer and pay claims arising under their Workers' Compensation Programs.

16.     On June 18, 2024, the Debtors' workers' compensation insurer sent the Debtors a certified letter indicating that effective August 3, 2024, the Debtors' Workers' Compensation Policies would be canceled for nonpayment of premiums. At the time of this Motion, the Debtors had $32,968.60 in overdue workers compensation premiums due immediately.[2] By this Motion,

---

[2] The policy in question is in the name of Roberts 50 USA LLC, the non-Debtor parent of the Debtors. However, the Workers Compensation Policies cover the Debtors' employees.

the Debtors seek to resume payments of their workers' compensation premiums to maintain coverage.

17. By this Motion, the Debtors request authority to pay any obligations arising under or in connection with the Workers' Compensation Programs, to pay the past-due premium payments and to maintain their Workers' Compensation Programs in the ordinary course of business. The Debtors request authority to pay these obligations, including prepetition premiums, and other obligations, and including maintenance of the Excess Policy with the Excess Insurers.

18. In addition, the Debtors request to modify the automatic stay to permit employees who hold workers' compensation claims to proceed with such claims in the appropriate judicial or administrative forum. The Debtors further request that any recovery on account of such claims be limited solely to the proceeds under the Debtors' applicable Workers Compensation Policies and Excess Policies and proceeds from non-Debtor sources.

C. **The Debtors' Insurance Financing Arrangements**

19. Generally, the Debtors' Insurance Policies require annual Insurance Premium payments to be made at the beginning of the applicable policy period. Because it is not always economically advantageous for the Debtors to pay Insurance Premiums on a lump-sum basis, the Debtors finance certain of their Insurance Premiums, pursuant to that certain Premium Finance Agreement – Promissory Note, dated as of May 16, 2024 (the "*Premium Financing Agreement*"), by and between, on one hand, certain of the Debtors and related entities (the "*Insured Parties*")[3], and on the other hand, AFCO Credit Corporation (the "*Premium Financier*").

20. Under the Premium Financing Agreement, the Premium Financier agreed to finance applicable Insurance Premiums up to a total amount of approximately $307,350.00. In

---

[3] These contracting parties include Debtors Mountain Sports USA, LLC and Bob's Stores USA LLC, and non-Debtor Roberts 50 USA, LLC.

exchange therefor, the Insured Parties agreed to pay the Premium Financier a down payment of approximately $61,870.00 followed by ten (10) monthly installments of approximately $25,583.46, beginning on June 1, 2024. These monthly installments are due on the first day of each month. The amount financed under the Premium Financing Agreement accrues interest at an annual rate of 9.10%.

21. Pursuant to the Premium Financing Agreement, the Insured Parties granted the Premium Financier a security interest "in any and all unearned or return premium(s) and dividends which may become due under the policy(ies) being purchased." If the Debtors do not satisfy their obligations under the Premium Financing Agreement, the Premium Financier has the right, subject to the automatic stay, to, among other things, terminate any covered Insurance Policies.

22. By this Motion, the Debtors request to continue honoring their obligations to the Premium Financier in the ordinary course of business, including authority to pay any amounts that may be due and owing or that come due and owing under the Premium Financing Agreement.

**RELIEF REQUESTED SHOULD BE GRANTED**

**A.   Maintaining the Debtors' Insurance Policies and Programs and Payment of the Insurance Obligations is Warranted Under Section 363(b)(1) of the Bankruptcy Code and Doctrine of Necessity.**

23. A bankruptcy court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code. Section 363(b) provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions." *In re*

*Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).

24. In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

25. Further, in a long line of well-established cases, courts consistently have permitted payment of prepetition obligations where such payment is necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. See, e.g., *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y.

1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

26. In addition, the Court may rely on the doctrine of necessity and its equitable powers under section 105(a) of the Bankruptcy Code to authorize the payment of prepetition claims when such payment is essential to the continued operation of a debtor's business. *See*, *e.g.*, *Just for Feet*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of Bankruptcy Code provides statutory basis for payment of prepetition claims under the doctrine of necessity particularly when such payment is necessary for the debtor's survival during chapter 11); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is standard for enabling a court to authorize payment of prepetition claims prior to confirmation of a reorganization plan).

27. Paying the Insurance Obligations are necessary costs of preserving the Debtors' estates. In addition, the Debtors are contractually and legally obligated to maintain certain types of insurance, and the Debtors must maintain certain of the Insurance Policies and Programs in order to comply with the operating guidelines of the Office of the United States Trustee for Region 3. For example, applicable state law mandates that certain Debtors maintain workers' compensation coverage for their employees, or the Debtors could be prohibited from operating their stores. The Debtors' failure to maintain the Workers' Compensation Programs could jeopardize their coverage and expose the Debtors to fines and other adverse actions by state workers' compensation boards. In addition, the risk that eligible workers' compensation claimants would not receive timely payments for prepetition employment-related injuries could negatively impact the financial well-being and morale of not just those claimants, but also the Debtors' active employees. In addition, the Insurance Programs are essential to the Debtors' operations, as the

Debtors would be exposed to significant liability if the Insurance Programs were allowed to lapse or terminate. Such exposure could have a materially adverse impact on the Debtors' chapter 11 strategy and their ability to maximize value for their stakeholders.

28. Accordingly, authority to continue maintaining the Insurance Policies and to pay all Insurance Obligations, including any unpaid Insurance Obligations arising prior to the Commencement of these chapter 11 cases, is critical to the Debtors' ability to preserve the going-concern value of their businesses, which will inure to the benefit of all parties in interest.

29. Moreover, the relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is justified under sections 363(b) and 105(a) of the Bankruptcy Code.

**B.      The Court Should Authorize, But Not Direct, the Debtors, in Their Discretion, to Make Necessary Payments Under the Premium Financing Agreement.**

30. If the Debtors are unable to continue making payments under the Premium Financing Agreement, the Premium Financier may, subject to the automatic stay, be permitted to terminate the covered Insurance Policies. The Debtors may then be required to obtain replacement insurance on an expedited basis and potentially at a significantly increased cost.

31. Thus, in view of the importance of maintaining the related insurance coverage and preserving their cash flow by financing the insurance premiums, the Debtors believe that it is in the best interest of their estates and creditors for the Court to authorize the Debtors to honor the obligations under the Premium Financing Agreement. Any other alternative may require considerable cash expenditures and be detrimental to the Debtors' restructuring efforts. The Debtors thus request to continue making payments under the Premium Financing Agreement in the Debtors' business judgment, as is necessary to avoid immediate and irreparable harm to the Debtors' estates, and as is justified under sections 363(b) and 105(a) of the Bankruptcy Code.

### C. The Automatic Stay Should Be Modified for Workers' Compensation Claims

32. Section 362(a)(1) of the Bankruptcy Code operates to stay:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1). Section 362(d)(1), however, permits a debtor or other party in interest to request a modification or termination of the automatic stay for "cause." 11 U.S.C. § 362(d)(1).

33. Pursuant to section 362(d) of the Bankruptcy Code, the Debtors seek authority to modify the automatic stay to permit employees who hold workers' compensation claims to proceed with such claims in the appropriate judicial or administrative forum. The Debtors further request that any recovery on account of such claims be limited solely to the proceeds under the Debtors' applicable Workers Compensation Policies and Excess Policies and proceeds from non-Debtor sources.

34. There is cause to modify the automatic stay because staying the workers' compensation claims could result in employee departures or otherwise harm employee morale, at a time when the Debtors need their workforce to be operating at peak efficiency. Unnecessary distractions – or worse, heavy attrition – could jeopardize the Debtors' chapter 11 strategy and result in irreversible harm to the Debtors' businesses. Accordingly, the Debtors respectfully request that the Court modify the automatic stay as it relates to valid workers' compensation claims to allow employees holding any such claims to pursue resolution and collection from the applicable Insurance Providers and any other non-Debtor sources.

**D.      Cause Exists to Authorize Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.**

35.     The Debtors have sufficient funds to pay the Insurance Obligations in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the obligations addressed in this Motion. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to the Insurance Obligations, inadvertently may not be honored and that the Court should authorize the Banks, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the relief requested herein, solely to the extent that the Debtors have sufficient funds standing to their credit with such Banks, and such Banks may rely on the representations of the Debtors without any duty of further inquiry and without liability for following the Debtors' instructions.

## **DEBTORS HAVE SATISFIED BANKRUPTCY RULE 6003(b)**

36.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. Fed. R. Bankr. P. 6003(b). As described above, the lapse, termination, or non-renewal of any of the Insurance Policies and Programs as a result of the Debtors' failure to pay their Insurance Obligations could subject the Debtors to substantial administrative liability and a potential cessation of operations. Accordingly, the Debtors submit that the relief requested herein

is necessary to avoid immediate and irreparable harm to their estates, and, therefore, Bankruptcy Rule 6003 is satisfied.

### BANKRUPTCY RULES 4001(a)(3), 6004(a), AND 6004(h)

37. To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) and an order authorizing relief from the automatic stay under Bankruptcy Rule 4001(a). As explained above and in the Barton Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h) and 4001(a)(3), to the extent such notice requirements and such stay apply.

### NOTICE

38. Notice of this Motion has been given to (a) the Office of the United States Trustee for the District of Delaware; (b) the creditors holding the twenty (20) largest unsecured claims against the Debtors' estates; (c) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (d) any such other party entitled to notice pursuant to Local Rule 9013-1(m). As this Motion is seeking "first day" relief, within forty-eight hours of the entry of an order approving this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: June 19, 2024                     Respectfully submitted,

**GOLDSTEIN & MCCLINTOCK, LLLP**

By: /s/ *Maria Aprile Sawczuk*
Maria Aprile Sawczuk, Esq. (Bar ID 3320)
501 Silverside Road, Suite 65
Wilmington, DE 19809
Telephone: (302) 444-6710
marias@goldmclaw.com

-and-

Matthew E. McClintock, Esq. (*pro hac vice* pending)
Amrit Kapai, Esq (*pro hac vice* pending)
William Thomas, Esq. (*pro hac vice* pending)
111 W. Washington Street, Suite 1221
Chicago, IL 60602
Telephone: (312) 337-7700
mattm@goldmclaw.com
amritk@goldmclaw.com
willt@goldmclaw.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*