## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MOUNTAIN SPORTS LLC; *et al.*,[1] | ) | Case No. 24-11385 (MFW) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |

**EMERGENCY MOTION PURSUANT TO SECTIONS 361 AND 363 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 FOR INTERIM
AND FINAL ORDERS: (1) AUTHORIZING USE OF CASH COLLATERAL;
(2) SCHEDULING FINAL HEARING; AND (3) FOR RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "*Debtors*"), by and through their proposed undersigned counsel, hereby move this Court (the "*Motion*") for entry of interim and final orders pursuant to sections 105, 361, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "*Bankruptcy Code*"); Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"); and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*"): (i) entering the proposed Interim Order (as defined below) and authorizing interim use of cash collateral pursuant to the Budget (as defined below); (ii) providing adequate protection to the Bank (as defined below); (iii) scheduling a final hearing on the Motion (the "*Final Haring*"); (iv) entering the Final Order (as defined below) at the Final Hearing and authorizing use of cash collateral pursuant to the Budget on a final basis; and (v) granting other related relief as necessary. In further support of this Motion, the Debtors respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Mountain Sports LLC (9597); SDI Stores LLC (4751); SDI Gift Card LLC (9775); Bob's Stores USA LLC (6115); and Mountain Sports USA LLC (4036). The location of the Debtors' corporate headquarters is 160 Corporate Court, Meriden, CT 06450.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The statutory bases for the relief requested herein are sections 361 and 363 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-2.

## BACKGROUND

### A.   General Background

3.      The Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "*Chapter 11 Cases*") with this Court on June 18, 2024 (the "*Petition Date*"). The Debtors are authorized to continue operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Cases.

4.      The Debtors operate outdoor clothing, sporting goods, activewear and sports equipment retail locations in the northeastern United States under the brands "Eastern Mountain Sports" ("*EMS*") and "Bob's Stores" ("*Bob's*"). EMS markets to the adventurer looking for reliable and functional outerwear and gear at a value price. Bob's targets moderate-income customers with a selection of footwear, workwear, teamwear and activewear. Under both brands, the Debtors operate approximately 50 retail outlets and also maintain an ecommerce presence for both brands. Headquartered in Meriden, Connecticut, the Debtors employ approximately 800 full- and part-time employees.

5.      Additional information regarding the Debtor's business and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of David*

*Barton In Support of First Day Motions* (the "*Barton Declaration*"), to be filed substantially contemporaneously herewith.

6.    The Debtors' senior secured Lender is PNC Bank, N.A. ("*PNC*" or the "*Bank*"). As of the Petition Date, PNC asserts that it is owed approximately $26.4 million pursuant to a revolver and $4.5 million pursuant to a FILO loan. PNC asserts a first-priority security interest in Debtors' inventory, receivables, deposit accounts, and proceeds (collectively, the "*Collateral*"). Specifically, the Debtors understand that the Bank asserts an interest in the Debtors' cash (the "*Cash Collateral*").

**B.  The Need for Use of Cash Collateral**

7.    The Debtors' estates will suffer immediate and irreparable harm if the Debtors do not obtain immediate access to the Cash Collateral. The Debtors do not have sufficient unencumbered cash and need liquidity to operate their businesses and pay operating expenses critical to the businesses, including utilities, payroll, rents, insurance, and taxes. The Debtors cannot reasonably expect their employees, vendors and service providers to continue providing services without a source of payment while they reorganize their businesses.

8.    Most urgently, the Debtors need to make payroll on June 21, 2024, and need to fund same immediately. Accordingly, the Debtors have sought to have this Motion heard on an emergency basis.

**<u>RELIEF REQUESTED</u>**

9.    By this Motion, the Debtors seek interim and final orders (respectively, the "*Interim Order*" and "*Final Order*," and collectively, the "*Cash Collateral Orders*"), *inter alia*:

> a.    authorizing the Debtors' use of "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code ("*Cash Collateral*"), pursuant to the terms of the Cash Collateral Order and the budget attached as Exhibit A to the Interim Order (as amended, modified or supplemented from time to time, the "*Budget*");

       b.      providing adequate protection to the Bank for the use of the Cash Collateral; and

       c.      scheduling a final hearing (the "*Final Hearing*") to be held prior to expiration of the Interim Order to consider entry of the Final Order and approving the proposed notice procedures for the Final Hearing.

Pending entry of the Final Order, the Debtors seek approval of the Interim Order, which will: (i) authorize the Debtors' use of the Bank's Cash Collateral on the terms and conditions in the Interim Order; (ii) authorize the proposed adequate protection; (iii) schedule the Final Hearing; and (iv) approve the proposed notice thereof.

## DISCUSSION

### A.   Basis for Relief

10.   Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash collateral pursuant to section 363 may not be commenced earlier than fourteen (14) days after the service of such motion.  Pursuant to Bankruptcy Rule 4001(b), the Debtors request that the Court conduct a preliminary hearing to enter the proposed Interim Order authorizing the Debtors to use Cash Collateral in an aggregate amount not to exceed the amounts set forth in the Interim Order pending the Final Hearing in order to avoid the immediate and irreparable harm that will be suffered by the estate if the Debtors do not obtain the liquidity needed to sustain their businesses as a going concern.

### B.   Compliance with Local Rule 4001-2

11.   Local Rule 4001-2 requires all motions requesting use of cash collateral to highlight and justify the inclusion of certain extraordinary provisions and prohibits the granting of interim relief containing such provisions in the absence of extraordinary circumstances.  The proposed Interim Order does not contain any such extraordinary provisions, and therefore, interim relief on the Debtors' cash collateral request is appropriate under the Local Rules.

**C.      The Court Should Permit the Debtors' Use of Cash Collateral**

12.      The Debtors have an immediate need to use the Cash Collateral to assure the orderly administration of their Chapter 11 Cases. Without use of the Cash Collateral as set forth in the Budget, the Debtors will not be able to pay their direct operating expenses. Inability to use the Cash Collateral on an interim basis will likely result in cessation of the Debtors' ongoing operations and will cause irreparable harm to the Debtors' estates.  Put simply, the Debtors cannot continue operations or their restructuring efforts absent use of the Cash Collateral.

13.      A debtor's cash "is the life's blood of the business" and the bankruptcy court must assure that it "is available for use even if to a limited extent" to preserve operations.  *In re Mickler*, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981).  Accordingly, bankruptcy courts typically authorize a debtor to use cash collateral to continue its operations as long as the interests asserted by secured parties are adequately protected. *See* 11 U.S.C. § 363(e).

**D.      Adequate Protection**

14.      The Debtors are authorized to use the Cash Collateral because the Bank's interests will be adequately protected.

15.      Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor-in-possession may not use cash collateral[2] without the consent of the secured party or court approval.[3] 11 U.S.C. § 363(c)(2) (debtor may not use, sell, or lease cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section."). Moreover, section 363(e) of

---

[2] "Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estates and an entity other than the estates have an interest."  11 U.S.C. § 363(a).

[3] The Debtors hope to negotiate the consensual use of Cash Collateral between the date hereof and the date of the hearing.

the Bankruptcy Code provides that upon request of an entity that has an interest in property to be

used by a debtor, the Court shall prohibit or condition such use as is necessary to provide adequate

protection of such interest.

16.     Although "adequate protection" is not defined in the Bankruptcy Code, section 361

of the Bankruptcy Code provides the following three non-exclusive examples of what may

constitute adequate protection:

(1)     requiring the trustee to make a cash payment or periodic cash payments to
such entity, to the extent that the . . . use . . . under section 363 of this title,
or any grant of a lien under section 364 of this title results in a decrease in
the value of such entity's interest in such property;

(2)     providing to such entity an additional or replacement lien to the extent that
such . . . use . . . results in a decrease in the value of such entity's interest
in such property; or

(3)     granting such other relief . . . as will result in the realization by such entity
of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

17.     According to the legislative history, a finding of adequate protection is "left to case-

by-case interpretation and development. It is expected that the courts will apply the concept in

light of facts of each case and general equitable principals." H.R. Rep. No. 595, 95th Cong., 2nd

Sess. 339 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6295; *see also In re O'Connor*, 808 F.2d

1393, 1396-97 (10th Cir. 1987); *In re Nashua Trust Co.*, 73 B.R. 423, 430-31 (Bankr. D. N.J.

1987). The purpose is to protect a secured creditor from diminution in the value of its interest in

the particular collateral during the period of use. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d

552, 564 (3d Cir. 1994); *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del.

1996).

18.     As will further be demonstrated at the hearing on this Motion, regardless of whether

the Bank consents to the Debtors' use of Cash Collateral, the Debtors' use of the Bank's Cash

Collateral is authorized pursuant to section 363 of the Bankruptcy Code because the Bank will be adequately protected.

19.     First, as adequate protection for the Debtors' use of Cash Collateral hereunder, the Debtors shall provide the Bank, to secure payment of an amount equal to any diminution in value of the Bank's Cash Collateral, a security interest in and lien upon all assets of the Debtors and all hereafter-acquired assets of the Debtors of the same type and nature upon which the Bank had properly perfected liens as of the Petition Date, wherever located, and the proceeds, products, and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including commercial tort claims and other causes of action (*but not including any causes of action arising under the Bankruptcy Code*) (collectively, the "*Replacement Collateral*"), senior to any other security interests, liens, or encumbrances, subject only to, in the following order of priority: (a) any lien on the Debtor's assets that the Court may approve in the future as being senior to the Bank's liens on a particular asset or assets (with proper notice to Bank and an opportunity to object); (b) valid, perfected, and enforceable prepetition liens which are senior to the Bank's respective liens or security interests as of the Petition Date, (c) the payment of the United States Trustee's fees, pursuant to 28 U.S.C. § 1930, and (d) the amount of fees and disbursements accrued as of the date of the termination of the Debtors' use of Cash Collateral by the Debtors' professionals and the professionals of the creditor's committee, if one is appointed (in each case after application of any pre or post-petition retainer).

20.     Pursuant to section 361 of the Bankruptcy Code, replacement liens like those provided by the Debtors can serve as adequate protection.  11 U.S.C. § 361; *see also In re Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 220 n.9 (Bankr. D. Del. 1995) ("pursuant to Code § 361, 'adequate protection' to a secured creditor may

be provided in the form of an additional or replacement lien").

21.     The adequate protection liens shall be deemed perfected automatically upon entry of the Interim Order, without the necessity of the filing of any UCC-1 financing statement, state or federal notice, mortgage, or similar instrument or document in any states or public records office and without the necessity of taking possession or "control" (within the meaning of the Uniform Commercial Code) of any Replacement Collateral.

22.     Second, the Debtor proposes to pay adequate protection payments as set forth in the Budget ("*Adequate Protection Payments*") to the Bank over the first three weeks of the case. As noted above, 11 U.S.C. § 361 specifically contemplates that periodic cash payments can serve as adequate protection where a Debtor's use of cash collateral is diminishing a lender's collateral. 11 U.S.C. § 361. The Adequate Protection Payments alone should be enough to adequately protect the Bank in this instance.

23.     Third, the Court should find that the Bank is adequately protected as a result of the Debtors continuing to operate through the use of the Cash Collateral, which continued operation will maintain, if not materially enhance, the value of the Bank's collateral. *See, e.g., In re Int'l Aluminum Corp.*, 2010 Bankr. LEXIS 5759, at *10 (Bankr. D. Del. 2010). If the Debtors are unable to use the Cash Collateral, they would be forced to close their retail locations and lay off all of their employees – a complete cessation of their businesses. The only realistic option to generate a return for the Bank at that point would be a bulk sale of the Debtors' inventory, and as the Debtors will establish at the hearing if necessary, a bulk sale would result in a very low percentage recovery on the Bank's primary collateral.

24.     Conversely, by continuing to operate, at a minimum the Debtors will be able to conduct an orderly wind-down of their businesses, including conducting "going out of business"

sales at their store locations. The Debtors believe (and will be prepared to establish) that the Bank's recovery in even that scenario will be at least twice as high as in a liquidation, and importantly the Debtors and their professionals are currently exploring alternatives (such as a partial reorganization around some flagship stores) that will result in an even better outcome.

25.     The cases are legion that a secured lender is adequately protected in connection with a debtor's proposed use of the lender's cash collateral if the cash will be used to maintain the lender's collateral, including for the payment of ongoing operating and other expenses necessary to maximize the value of the collateral. *See, e.g.*, *In re Dixie-Shamrock Oil & Gas, Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984) (permitting the use of cash collateral where it was used to "protect, maintain, or enhance the collateral of [the secured lender]."); *see also In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) ("Allowing the Debtor to use [cash collateral] . . . will preserve the base that generates the income stream.").

26.     While the Debtors do not intend to use any Cash Collateral prior to the entry of the Interim Order, to the extent any Cash Collateral was used by the Debtors prior to the date of the Interim Order, but after the Petition Date, the adequate protection provided pursuant to the Interim Order (including, without limitation, the adequate protection liens) shall apply to provide the Bank with adequate protection against any diminution in its interests in the prepetition Cash Collateral resulting from such use of such Cash Collateral prior to the date of the Interim Order.

27.     The Debtors submit that the foregoing protections to be granted to the Bank will provide the Bank with sufficient adequate protection.

**E.     Request for a Final Hearing**

28.     Finally, pursuant to Bankruptcy Rule 4001(c)(2), the Debtors respectfully request that this Court set a date for the final hearing. The Debtors request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for filing objections, if any, by

first class mail upon the Bank, the United States Trustee, the Debtors' twenty (20) largest creditors, and any party having filed a request to receive service in the Chapter 11 Cases. The Debtors request that the Court consider such notice of the final hearing to be sufficient notice under Rule 4001 of the Bankruptcy Rules.

## <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that this Court (a) conduct an emergency hearing on this Motion; (b) enter an Interim Order substantially in the form submitted herewith; (c) schedule a final hearing on the relief requested herein; and (d) grant such further relief as may be equitable and just.

Dated: June 19, 2024

Respectfully submitted,
**GOLDSTEIN & MCCLINTOCK, LLLP**

By: */s/ Maria Aprile Sawczuk*
Maria Aprile Sawczuk, Esq. (Bar ID 3320)
501 Silverside Road, Suite 65
Wilmington, DE 19809
Telephone: (302) 444-6710
marias@goldmclaw.com

-and-

Matthew E. McClintock, Esq. (*pro hac vice* pending*)*
Amrit S. Kapai, Esq (*pro hac vice* pending*)*
William Thomas, Esq. (*pro hac vice* pending)
111 W. Washington Street, Suite 1221
Chicago, IL 60602
Telephone: (312) 337-7700
mattm@goldmclaw.com
amritk@goldmclaw.com
willt@goldmclaw.com

*Proposed Counsel for the Debtors and*
*Debtors-in-Possession*