## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re:* | Chapter 11 |
| MOUNTAIN SPORTS LLC, *et al.*,[1] | Case No. 24-11385 (MFW) |
| Debtors. | (Jointly Administered) |

**MOTION BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDERS (I) (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS, (B) APPROVING THE FORM AND MANNER OF NOTICE OF THE SALE AND BID DEADLINES, (C) AUTHORIZING THE DEBTORS TO SELECT A STALKING HORSE BIDDER AND ENTER INTO A PURCHASE AGREEMENT WITH SUCH BIDDER PROVIDING FOR CERTAIN BID PROTECTIONS, (D) APPROVING (1) PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (2) THE FORM AND MANNER OF NOTICE THEREOF, (E) SCHEDULING THE AUCTION AND THE HEARING TO CONSIDER APPROVAL OF THE SALE, (F) AUTHORIZING THE COMMITTEE TO RUN THE SALE PROCESS WITH THE DEBTORS' ASSISTANCE AND (G) GRANTING RELATED RELIEF AND (II) (A) APPROVING THE SALE OF THE ASSETS, FREE AND CLEAR OF ALL INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND <ins>(C) GRANTING RELATED RELIEF</ins>**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") and the Official Committee of Unsecured Creditors (the "**Committee**," and together with the Debtors, the "**Movants**") move (this "**Motion**") under (i) sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), (ii) Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and (iii) Rules 2002-1 and 6004-1 of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Mountain Sports LLC (9597); SDI Gift Card LLC (9775); Bob's Stores USA LLC (6115); SDI Stores LLC (4751); and Mountain Sports USA LLC (4036). The location of the Debtors' corporate headquarters is 160 Corporate Court, Meriden, CT 06450.

the *Local Rules of Bankruptcy Practice and Procedures for the Bankruptcy Court for the District of Delaware* (the "**Local Rules**") for entry of two orders:

  ***First***, the Movants seek entry of an order substantially in the form attached as <u>Exhibit A</u> (the "**Bidding Procedures Order**"):

    (a)  approving the bidding procedures (the "**Bidding Procedures**") in substantially the form attached as <u>Exhibit 1</u> to the Bidding Procedures Order to govern any sale (the "**Sale**") of all or substantially all of the Debtors' assets (the "**Company Assets**") or component thereof, pursuant to section 363 of the Bankruptcy Code;

    (b)  establishing the following dates and deadlines in connection with the Bidding Procedures:

- <u>Indication of Interest Deadline:</u> August 2, 2024 at 4:00 p.m. (prevailing Eastern Time), or such later date as may be agreed to by the Debtors, Committee and PNC Bank, N.A. ("**PNC**," and together with the Committee, the "**Consultation Parties**"), as the deadline by which all indications of interest (each, an "**Indication of Interest**") must be received by the Debtors pursuant to the Bidding Procedures (the "**Indication of Interest Deadline**");

- <u>Stalking Horse Designation Deadline</u>: August 9, 2024 at 4:00 p.m. (prevailing Eastern Time);

- <u>Bid Deadline</u>: August 20, 2024 at 4:00 p.m. (prevailing Eastern Time), as the deadline by which all binding bids must be received by the Debtors pursuant to the Bidding Procedures (the "**Bid Deadline**");

- <u>Auction (If Necessary)</u>: August 22, 2024 at 10:00 a.m. (prevailing Eastern Time) as the date by which the Debtors may conduct the Auction (as defined below);

- <u>Sale Hearing</u>: August 29, 2024 at 10:30 a.m. (prevailing Eastern Time), or as soon thereafter as the Court's calendar permits, as the date for a hearing to approve the Sale (if any) of the applicable Company Assets (the "**Sale Hearing**"); and

- <u>Sale Closing</u>: August 30, 2024 as the date by which the Sale must be consummated (the "**Sale Closing Deadline**").

(c)     approving the form and manner of notice of the Sale and the Bid Deadline, substantially in the form attached as <u>Exhibit 2</u> to the Bidding Procedures Order (the "**Sale Notice**");

(d)     authorizing the Debtors, in accordance with the terms of the Bidding Procedures, to select a stalking horse bidder (a "**Stalking Horse Bidder**") and enter into a purchase agreement with any such Stalking Horse Bidder (the "**Stalking Horse Agreement**"), which may provide for certain bid protections, including a break-up fee, with the consent of the Consultation Parties;

(e)     approving (i) procedures (the "**Assumption and Assignment Procedures**") for the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases (the "**Contracts**") as set forth in the Bidding Procedures Order and (ii) the form and manner of notice of assumption and assignment of Contracts, including the form and manner of notice of proposed cure amounts (the "**Cure Amounts**") attached to the Bidding Procedures Order as <u>Exhibit 3</u>;

(f)     scheduling the auction (the "**Auction**"), if any, and the Sale Hearing and approving the form and manner of notice thereof;

(g)     authorizing the Committee to run the marketing and sale process with the Debtors' assistance using, *inter alia*, the Debtors' Confidential Information (defined below); and

(h)     granting related relief.

***Second***, the Movants seek entry of an order in the proposed form that will be filed by the Debtors in advance of the hearing to consider the Sale Order (the "**Sale Order**"):

(a)     authorizing and approving the Sale of the applicable Company Assets free and clear of liens, claims, encumbrances, and other interests on the terms set forth in a definitive purchase agreement (the "**Definitive Purchase Agreement**"), in the proposed form that will be filed by the Debtors in advance of the hearing to consider the Sale Order;

(b)     authorizing and approving the assumption and assignment of certain Contracts in connection therewith; and

(c)     granting related relief.

In support of this Motion, the Movants submit the *Declaration of David Barton in Support of Bidding Procedures Motion* (the "**Barton Declaration**") attached as <u>Exhibit B</u> and the *Declaration of John P. Madden in Support of the Bidding Procedures Motion* (the "**Madden Declaration**") attached as <u>Exhibit C</u> and state as follows in support of this Motion:[2]

## I.

## PRELIMINARY STATEMENT

1.      While the Debtors expressed the need for a marketing process to maximize the value of their estates in the early days of these cases, they have been unable to launch one in earnest given liquidity constraints and certain other disputes with their prepetition lender, PNC.  Upon its appointment, the Committee, its proposed counsel and its proposed financial advisors, Emerald Capital Advisors ("**Emerald**"), immediately initiated conversations with the Debtors, their proposed financial advisors, Silverman Consulting, LLC ("**Silverman**"), and PNC to discuss the viability of a value-maximizing going concern process as an alternate path to a full-scale liquidation of the Company Assets.  The Committee has since brokered a compromise where a laser focused marketing process will be led by Emerald which must locate and lock-in a proposed purchaser for all or a portion of the Company Assets by the Indication of Interest Deadline.  If the Committee fails to do so, the Debtors will transition these cases to a full-chain liquidation.  But if

---

[2]    A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to these Chapter 11 Cases and supporting this Motion, is set forth in the (i) *Declaration of David Barton in Support of First-Day Motions* [D 21] (the "**First Day Declaration**").  Capitalized terms used but not defined have the meanings ascribed to them in the First Day Declaration.

the Committee procures a binding Indication of Interest,[3] the sale process will continue, with a subsequent bid deadline and if needed, the Auction.

 2. A marketing and sale process run by the Committee is necessary to minimize any conflict between the Debtors, as sellers of the Company Assets, and GoDigital Media Group, LLC ("**GoDigital**"), the Debtor's indirect owner and contract counterparty, which has already expressed interest to the Debtors in consummating a going concern acquisition.

 3. To date, the Debtors have received six expressions of interest with five of those parties having submitted executed confidentiality agreements.  The Debtors have shared copies of the expressions of interest with Emerald and Emerald is prepared to, and has started, the process of taking the Company Assets to market to elicit interest from potential bidders.  Emerald, fully equipped with investment banking capabilities, and working hand-in-hand with the Debtors' professionals, is prepared to run an open and fair marketing and sale process in pursuit of a Sale which would yield an economic outcome far better than that of a liquidation.

 4. The Debtors support a marketing and sale process run by the Committee and the parties agree with the timeline set forth in the Bidding Procedures, which was crafted to preserve the value of the Company Assets while also providing an opportunity for the Committee to adequately market the Company Assets to solicit the highest and best offer.  The Movants believe that the Bidding Procedures will best facilitate a potential Auction for the Sale, thereby maximizing recoveries for all stakeholders.

 5. Accordingly, the Movants request that the Court grant the relief requested herein.

II.

---

[3] To the extent the subset of Company Assets associated with Bob's Stores (the "**Bob's Assets**") are not contemplated in any such binding Indication of Interest, the sale process will terminate as to Bob's Assets and the Debtors will transition those assets to full liquidation.

## JURISDICTION AND STATUTORY PREDICATES

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

7.      The statutory predicates for the relief requested herein are sections 105(a) 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure and Local Rules 2002-1 and 6004-1.

8.      Under Local Rule 9013-1(f), the Movants consent to the entry of a final order by the Court in connection with this Motion to the extent it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### III.

### BACKGROUND

A.      **The Chapter 11 Cases**

9.      On June 18, 2024 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code and commenced these Chapter 11 Cases.  Under sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their business and maintain their property as debtors-in-possession.  No trustee or examiner has been appointed in these Chapter 11 Cases.

10.      On July 3, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Committee under section 1102(a)(1) of the Bankruptcy Code. [D.I. 83].  The Committee selected Lowenstein Sandler LLP ("**Lowenstein**") to serve as its lead

counsel and subsequently, Morris James LLP ("**Morris James**") to serve as its Delaware counsel and Emerald (together with Lowenstein and Morris James, the "**Committee Professionals**") to serve as its financial advisor in the Chapter 11 Cases.[4]

11.     After the Petition Date, the Debtors filed the *Debtors' Motion for Entry of an Interim and Final Order (A) Authorizing the Debtors to Enter into the Disposition Agreement; (B) Authorizing and Approving the Sale of Inventory and Other Assets Free and Clear of All Liens, Claims, and Encumbrances; and (C) Granting Related Relief* [D.I. 55] (the "**Disposition Motion**")—which the Court has approved on an interim basis [D.I. 75]—authorizing the Debtors to enter into an inventory Disposition Agreement with Hilco Merchant Resources, LLC ("**Hilco**") and approving the sale of certain inventory and other assets through a liquidation.

12.     If a Sale is not consummated in accordance with the Bidding Procedures, the Debtors will seek a full liquidation with going out of business sales in all of their locations through a proposed order granting the Disposition Motion on a final basis.

### B.     Postpetition Reorganization Efforts

13.     The Debtors filed these Chapter 11 Cases to pursue a value-maximizing sale and/or reorganization for the benefit of the Debtors' stakeholders.  From the beginning of these Chapter 11 Cases, the Debtors believe that a hybrid approach consisting of (i) a liquidation of inventory and wind-down of the Debtors' Bob's Stores business lines and (ii) a restructuring around their profitable Eastern Mountain Stores ("**EMS**") locations would likely yield the best outcome for all creditor constituencies.  Cash Collateral Declaration ¶ 4.  But the Debtors were unable to procure PNC's support for a sale process.

---

[4]     The Committee intends to file retention applications to retain the Committee Professionals promptly.

14.     Upon its appointment, the Committee initiated discussions with the Debtors and PNC to allow for a truncated highly focused sale process designed to (i) maximize recoveries to the Debtors' stakeholders and (ii) leverage Emerald's significant expertise with running sale processes by authorizing the Committee to spearhead the sale process.  This Motion is a result of the Committee's efforts.

C.      **The Proposed Auction and Sale Process**

15.     To date, the Debtors have received six expressions of interest, and five of those parties have entered into confidentiality agreements with the Debtors.

16.     The Bidding Procedures provide for an open, comprehensive sale process that encourages Qualified Bidders (as defined in the Bidding Procedures) to submit bids to all or a portion of the Company Assets (the "**Bids**"), if the consummation of such transaction exceeds the liquidation value of the Company Assets and can be accomplished efficiently.  The timeline set forth in the Bidding Procedures was calculated to balance the need to provide adequate notice to parties and interest and potential bidders and the need to run an expeditious and efficient sale process.

17.     The Debtors and Committee have determined that the Bidding Procedures are in the best interests of the Debtors' estates and provide interested parties with sufficient opportunity to participate.  Accordingly, this Motion seeks approval of the Bidding Procedures to establish an open process for solicitation, receipt, and evaluation of Indications of Interest and Bids on a timeline that allows the Debtors to consummate a sale of the Company Assets or component thereof in a manner that maximizes value for the estates.

D.     **Bidding Procedures**[5]

18.     The following summary describes the salient features of the Bidding Procedures and discloses certain information required under Local Rule 6004-1.  All interested bidders should read the Bidding Procedures attached to the Bidding Procedures Order in their entirety.

19.     The Bidding Procedures are designed to generate the highest or otherwise best available recoveries for the Debtors' stakeholders by encouraging prospective bidders to submit competitive, value-maximizing bids for the Company Assets.  The Movants propose the following timeline for the Sale:

| Event or Deadline | Date and Time[6] |
|---|---|
| Bidding Procedures Hearing | July 22, 2024 at 10:30 a.m. (prevailing Eastern Time) |
| Service and Publication of Sale Notice | 1 business day after entry of Bidding Procedures Order or as soon as reasonably practicable thereafter |
| Debtors' Deadline to File and Serve Cure Notices | July 23, 2024 at 4:00 p.m. (prevailing Eastern Time) |
| Cure Objection Deadline | July 30, 2024 at 4:00 p.m. (prevailing Eastern Time) |
| Indication of Interest Deadline | August 2, 2024 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline | August 6, 2024 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline to Designate Stalking Horse Bid | August 9, 2024 |
| Debtors' Deadline to File Stalking Horse Notice (if necessary) | 2 business days after entering into such agreement |

---

[5]     The summary of the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions of the Bidding Procedures as provided for in the Bidding Procedures Order.  To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Bidding Procedures as provided for in the Bidding Procedures Order, the actual terms and conditions of the Bidding Procedures as provided for in the Bidding Procedures Order shall control.

[6]     All dates and deadlines are subject to modification as may be agreed upon by the Debtors, the Committee and PNC.

| Event or Deadline | Date and Time[6] |
|---|---|
| Bid Deadline | August 20, 2024 at 4:00 p.m. (prevailing Eastern Time) |
| Determination of Qualified Bids | August 21, 2024 |
| Auction (if necessary) | August 22, 2024 at 10:00 a.m. (prevailing Eastern Time) at a place, including via remote video, to be announced.[7] |
| Identification of Successful Bidder and Backup Bidder, if any | August 23, 3024 at 4:00 p.m. (prevailing Eastern Time) |
| Post-Auction Objection Deadline | August 27, 2024 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing | August 29, 2024 at 10:30 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |
| Sale Closing Deadline | August 30, 2024 |

## E.    Indications of Interest and Going Concern Sale Process Termination

20.     Any party interested in buying the Company Assets must submit an Indication of Interest to the Debtors so as to actually be received no later than the Indication of Interest Deadline. As addressed in the Bidding Procedures, the Indication of Interest must, among other things, (a) include a description of the Company Assets which the potential bidder seeks to acquire, (b) set forth the proposed consideration the bidder is prepared to provide for applicable Company Assets, which must exceed the Liquidation Value, and (c) include a detailed description of the intended sources and uses of funds that the bidder contemplates needing to close the Sale.

21.     Under the Bidding Procedures, the Debtors must receive at least one binding Indication of Interest by the Indication of Interest Deadline that (a) sets forth a proposed purchase price that exceeds the Liquidation Value and (b) meets the requirements for a Qualified Bid (but may submit a binding term sheet in lieu of an asset purchase agreement) (a "**Qualified IOI**").

---

[7]    If the Debtors decide to hold a live, in-person Auction, Qualified Bidders shall be able to submit Bids remotely.

22.     *If the Debtors do not receive a Qualified IOI by the Indication of Interest Deadline, the sale process will terminate (the "Going Concern Sale Process Termination"). Upon the Going Concern Sale Process Termination, the Debtors will seek entry of a final order granting the Disposition Motion and authorizing going-out-of-business sales at all of the Debtors' locations.*

23.     *Likewise, if the Debtors receive Qualified IOIs by the Indication of Interest Deadline and none of the Qualified IOIs contemplate the purchased of Bob's Assets, the sale process contemplated by the Bidding Procedures shall terminate as to Bob's Assets (the "Bob's Sale Process Termination").  Upon the Bob's Sale Process Termination, the Debtors shall seek authorization for a full liquidation of Bob's Assets, including through entry of an order in connection with the Disposition Motion.*

### F.     Stalking Horse Bidder and Bid Protections

24.     By this Motion and in connection with the Bidding Procedures, the Movants request that the Debtors be authorized, but not directed, to enter into a Stalking Horse Agreement to serve as the Stalking Horse Bidder for all or a portion of the Company Assets.    A Stalking Horse Agreement may include, among other things, the documentation requirements set forth in section IV.C of the Bidding Procedures.

25.     If t the Debtors enter into a Stalking Horse Agreement that the Consultation Parties determine is in the best interests of the Debtors and their estates, the Debtors will file with the Court and serve on the Sale Notice Parties (defined below) a notice (the "**Stalking Horse Notice**") that includes:  (a) the identification of the Stalking Horse Bidder; (b) a copy of the Stalking Horse Agreement; (c) the form of Bid Protections; (d) the deposit paid by the Stalking Horse Bidder; and (e) a summary of the proposed transaction in accordance with Local Rule 6004-1(b).

26.     If the Debtors, in an exercise of their business judgment, determine that providing bid protections, including a break-up fee of up to 3% of the purchase price (the "**Bid Protections**") to any Stalking Horse Bidder is appropriate, necessary, and value-additive to the process under the circumstances, the Debtors will be required to obtain consent from the Consultation Parties to provide such Bid Protections.

27.     Having the flexibility to designate a Stalking Horse Bidder and grant Bid Protections will provide the Debtors with the ability to maximize the value of the Company Assets. Given the Debtors' need to maximize value for creditors and other stakeholders through a timely and efficient marketing and sale process, the Movants submit that the ability to designate a Stalking Horse Bidder and offer Bid Protections to such bidder, if necessary under the circumstances and with the consent of the Consultation Parties, is a reasonable and sound exercise of the Debtors' business judgment and provides an actual benefit to the Debtors' estates.

### G.      Sale Notice

28.     In accordance with Bankruptcy Rule 2002(a) and (c), the Debtors (or their agents) shall serve by first-class mail the Sale Notice, substantially in the form attached to the Bidding Procedures Order as Exhibit 2, upon: (a) all entities known to have expressed a *bona fide* interest in a transaction with respect to the Company Assets; (b) all entities known to have asserted any lien, claim, or encumbrance in or upon any assets comprising the Company Assets; (c) all federal, state, and local environmental, regulatory, or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (d) known counterparties to any unexpired leases or executory contracts that could be assumed and assigned to a Successful Bidder; (e) the Office of the United States Trustee for the District of Delaware; (f) all taxing authorities having jurisdiction over any of the Company Assets, including the Internal Revenue Service;

12

(g) the Securities and Exchange Commission; (h) the Offices of the United States Attorney for the District of Delaware; (i) the Conflict Parties; and (j) all persons and entities that have filed a request for service of filings in these chapter 11 cases under Bankruptcy Rule 2002 (collectively, the "**Sale Notice Parties**").

       H.      **Assumption and Assignment of Contracts and Cure Notice**

29.     The Movants are seeking approval of the Assumption and Assignment Procedures set forth in the Bidding Procedures Order to facilitate the fair and orderly assumption and assignment of Contracts.  The Assumption and Assignment Procedures will notify the Non-Debtor Counterparties (defined below) of the potential assumption and assignment of their contracts and/or leases and the Debtors' calculation of any cure amount.

30.     The Movants are also seeking approval of the Cure Notice, substantially in the form attached to the Bidding Procedures Order as Exhibit 3, which they propose to serve on each non-Debtor counterparty (each, a "**Non-Debtor Counterparty**") to an executory contract or unexpired lease related to any of the Company Assets which may be assumed or assumed and assigned, no later than one day before the Sale Hearing.  The Cure Notice will:

(a)     identify each Contract;

(b)     state the cure amounts, if any, that the Debtors believe are necessary to assume such Contracts under section 365 of the Bankruptcy Code (the "**Cure Amount**");

(c)     include a statement that the assumption and assignment of such Contract is neither required nor guaranteed;

(d)     notify the Non-Debtor Counterparty that its contract(s) and/or lease(s) may be assumed and assigned to a Stalking Horse Bidder, if any or to such other Successful Bidder at the end of the Auction, if any;

(e)     inform the Non-Debtor Counterparty that objections (a "**Cure/Assignment Objection**"), if any, to one or more of (i) the proposed Cure Amount, (ii) the ability of a Stalking Horse Bidder, if any, to provide adequate assurance of future performance, and (iii) the proposed assumption, assignment, and/or transfer of its

contract(s) or lease(s) (including the transfer of any related rights or benefits thereunder), other than objections that relate specifically to the identity of any Successful Bidder (other than the Stalking Horse Bidder, if any), must: (x) be in writing; (y) state with specificity the nature of such objection, including the amount of Cure Amount in dispute; and (z) be filed with the Court and properly served on the Notice Parties to be received no later than 4:00 p.m. (prevailing Eastern Time) on July 30, 2024 (the "**Cure/Assignment Objection Deadline**"); provided, that if the Successful Bidder is a party other than the Stalking Horse Bidder, if any, objections of Non-Debtor Counterparties related to the identity of such other Successful Bidder must: (x) be in writing; (y) state with specificity the nature of such objection; and (z) be filed with the Court and properly served on the Notice Parties to be actually received no later than 10:00 a.m. (prevailing Eastern Time) on August 27, 2024 (each, a "**Post-Auction Objection Deadline**"); and

(f)     state the date of the Sale Hearing and note the possibility of adjournment.

31.     The Movants propose that any Cure/Assignment Objection must be in writing, filed with the Clerk of the Court, 824 N. Market St., 3rd Floor, Wilmington, DE 19801, and served on the Notice Parties to be received by the Cure/Assignment Objection Deadline.

32.     If no objection to the proposed Cure Amounts is timely received, the Cure Amounts set forth in the Cure Notice shall be controlling and binding on the applicable Non-Debtor Counterparty, notwithstanding anything to the contrary in any assigned Contracts or other documents as of the date of the Cure Notice.

33.     If any Non-Debtor Counterparty does not timely file and serve a Cure/Assignment Objection, such Non-Debtor Counterparty will be: (i) deemed to have consented to the Cure Amounts, if any, set forth in the Cure Notice; (ii) barred, estopped, and enjoined from asserting any additional Cure Amounts under the assumed and assigned Contracts; (iii) barred from objecting to the assumption and assignment of such Contracts to the Successful Bidder; and (iv) barred from objecting to adequate assurance of future performance by such Successful Bidder.

34.     If the Debtors receive any Cure/Assignment Objection that relates solely to the proposed Cure Amount set forth in the Cure Notice, the Movants propose that they may, with the

consent of, or at the direction of, a Stalking Horse Bidder, if any (or other Successful Bidder), pay the undisputed portion of such Cure Amount and place the disputed amount in a segregated account pending further order of the Court or mutual agreement of the parties.  In that case, the objecting Non-Debtor Counterparty will have recourse only to the funds held in such segregated account.  So long as the disputed amount is held in such segregated account, the Debtors may, without delay, assume and assign the Contract that is the subject of such Cure/Assignment Objection.

## I.    <u>Request to Set a Date for the Sale Hearing and Sale Objection Deadline</u>

35.    The Debtors intend to present the Successful Bid (as defined in the Bidding Procedures) for approval by the Court at the Sale Hearing currently proposed for August 29, 2024 at 10:30 a.m. (prevailing Eastern Time), pending the Court's availability and subject to change in accordance with the Bidding Procedures. The Debtors shall be deemed to have accepted a Bid only when the Bid has been approved by the Court at the Sale Hearing.

36.    Subject to entry of the Bidding Procedures Order, all objections to a Sale (a "**<u>Sale Objection</u>**") must be in writing and filed on and served so as to be received by **4:00 p.m. (prevailing Eastern Time) on August 6, 2024**, the ("**<u>Sale Objection Deadline</u>**"), and filed with the Clerk of the Court, 824 Market St. N, 3rd Floor, Wilmington, DE 19801.  In addition, any Sale Objection must be served on the Sale Notice Parties to be received on the Sale Objection Deadline.

## J.    <u>Debtors' Decisions Under the Bidding Procedures</u>

37.    As referenced above and in the Madden Declaration, GoDigital—a party with an ownership interest in the Debtors and other non-Debtor affiliates—has made an expression of interest in pursuing a going concern sale of the Company Assets to the Debtors.  To ensure an open, fair and value-maximizing market and sale process, the Movants support (a) a sale process

run by the Committee with help from the Debtors and (b) a limitation on those involved in the Debtors' decision-making in connection with the Bidding Procedures.

38.     In the event that any of the Debtors' directors, managing members, equity holders, parents or non-debtor affiliates, including, but not limited to, Roberts 50 USA, LLC, Bob's EMS Holdings LLC and GoDigital Media Group LLC or any of their respective affiliates (collectively, the "**Conflict Parties**") intend to present an Indication of Interest and/or make a Bid on the Company Assets of the Debtors, any decisions permitted to be made by the Debtors under this Bidding Procedures Order and the Bidding Procedures shall be made by David Barton without consulting with, or receiving the approval of, the Conflict Parties.  For the avoidance of doubt, in such case, the Conflict Parties shall only be provided with, and have access to, the information available, and provided, to other Potential Bidders, provided, however, that the Conflict Parties will still receive limited operating information to the extent necessary to provide the Debtors with back-office services that it cannot provide itself provided that such information will not provide a materially unfair advantage in the bidding process to the Conflict Parties. If the Conflict Parties affirmatively state that none of them intend to submit an Indication of Interest or Bid, then this paragraph shall be inapplicable.

## IV.

### BASIS FOR RELIEF

#### A.     The Bidding Procedures Are Fair and Reasonable

39.     In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or by auction.  As described above, the Bidding Procedures ensure a fair, comprehensive process that allows for the consideration of Bids to the extent such Bids maximize value and can be executed efficiently and reliably.

40.     The Movants believe that the Bidding Procedures are appropriate under sections 105 and 363 of the Bankruptcy Code to ensure that the bidding and sale process is conducted fairly and will yield the highest or otherwise best value for the Debtors' estates and stakeholders. The Bidding Procedures are designed to facilitate a competitive bidding process in which all potential bidders are encouraged to participate and submit competing bids for the Company Assets, as provided in the Bidding Procedures. The Bidding Procedures also provide potential bidders with sufficient notice and opportunity to submit the necessary materials to gain access to diligence materials necessary to submit a timely and informed Bid. Thus, the Debtors, the Committee and all parties in interest can be assured that the consideration for the Company Assets, including the consideration to be provided by a Stalking Horse Bidder, if any, in exchange for the Company Assets, if no other party submits a Qualified Bid, will be fair and reasonable. At the same time, the Bidding Procedures allow the Debtors to consider all competing offers and to select, in their reasonable business judgment, the highest or otherwise best offers for the Company Assets or any subset thereof.

41.     The Movants believe that the Bidding Procedures provide an appropriate framework for the sale of the Company Assets that will enable the Debtors to review, analyze, and compare all offers received to determine which offer is the highest or otherwise best offer and in the best interests of the Debtors' estates, creditors, and stakeholders. The Movants believe that the proposed deadlines and milestones for noticing, marketing, and selling the Company Assets offer potential bidders ample opportunity to prepare and submit Qualified Bids. Accordingly, the Movants believe that the Court should approve the Bidding Procedures.

B.    **Authorization of a Committee-Run Marketing and Sale Process is Necessary and Appropriate**

42.    As discussed above, upon its appointment, the Committee immediately initiated conversations with the Debtors and PNC to discuss alternatives to a full-scale liquidation of the Debtors' inventory and stores.  The Committee proposed a new path:  a sale process run on a short but effective timeline that considers the existing cash collateral budget and an outside closing date of August 30, 2024.  The Debtors believe that a sale process for the sale of all or a portion of the Company Assets is in the best interests of all stakeholders, and support the Committee's proposed financial advisors, Emerald, running the marketing and sale process with help from the Debtors.  While the Debtors have not retained an investment banker in these Chapter 11 Cases, Emerald is fully capable and highly experienced in running section 363 sale processes—both on behalf of creditors' committees and debtors.

43.    The Court should authorize the Committee to work with the Debtors to solicit alternative going concern proposals before settling on a full self-liquidation.  This protocol is consistent with both the Debtors' and Committee's fiduciary duties. *See, e.g., In re Iridium Operating, LLC,* 486 F.3d 452, 466 (2d Cir. 2007) (the "[c]ommittee has a fiduciary duty to maximize their recovery of the [e]state's assets").

44.    Section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  The statute "is a powerful, versatile tool . . . within the context of bankruptcy proceedings."  *Joubert v. ABN Amro Mortg. Group, Inc. (In re Joubert),* 411 F.3d 452, 455 (3d Cir. 2005).  Courts have relied on section 105(a) in granting relief necessary to ensure the efficient and expeditious administration of bankruptcy estates.  *See, e.g., In re Raytech Corp.,* 222 B.R. 19, 24-25 (Bankr. D. Conn. 1998); *In re Johns-Manville Corp.,* 68 B.R. 618, 625 (Bankr. S.D.N.Y.

1986).  Although broad, the equitable authority still must understandably be exercised within the confines of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206 (1998).

45.     To accomplish the goal of facilitating an open and fair public sale designed to maximize value for the estate, bankruptcy courts are necessarily given discretion and latitude in conducting a sale. *See, e.g., In re Food Barn Stores, Inc.,* 107 F.3d 558, 564–65 (8th Cir. 1997); *see also In re Wintz Co.,* 219 F.3d 807, 812 (8th Cir. 2000) (stating that in structuring a sale of assets, bankruptcy courts "have ample latitude to strike a satisfactory balance between the relevant factors of fairness, finality, integrity, and maximization of assets").

46.     Indeed, the court in *In re Freedom Communications, Inc.* granted a motion by the creditors' committee requesting substantially similar relief as the motion requested herein. *See In re Freedom Commc'ns, Inc.,* Case No. 09-13046 (BLS), D.I. 862 (Bankr. D. Del. Dec. 2, 2009), Hr'g Tr. at 102–03 ("I am satisfied under the circumstances of this case that the committee should be afforded the opportunity if it seeks to test the marketplace.").  Similar relief has been granted by bankruptcy courts and provided to creditors' committees in other chapter 11 cases. *See, e.g., In re The Northwest Company, LLC*, Case No. 20-10990 (MEW), D.I. 126 (Bankr. S.D.N.Y. June 5, 2020) (granting the motion for a joint marketing process between the debtors and committee); *In re SportCo Holdings, Inc.*, Case No. 19-11299 (LSS), D.I. 109 (Bankr. D. Del. July 3, 2019) (granting the committee's motion to run a going concern sale process and directing the debtors' cooperation); *In re Signature Styles, LLC,* Case No. 11-11733 (KG), D.I. 137 (Bankr. D. Del. July 6, 2011) (granting the committee's motion to supplement the sale process); *In re Fisker Automotive Holdings, Inc.,* Case No. 13-13087 (BLS), D.I. 508 (Bankr. D. Del. Jan. 23, 2014) (allowing the committee to run a sale process when it had identified a potential bidder).  In these Chapter 11

19

Cases, the Committee seeks the same relief as that granted by the courts in *Freedom Communications, SportCo, Signature Styles,* and in *Fisker Automotive.*

47.     In order to implement this process, the Movants propose the following protocol:

(a)     The Committee and its advisors (in addition to the Debtors and their advisors, if any) shall be authorized and permitted to disseminate Confidential Information[8] to third parties potentially interested in purchasing any or all of the Company Assets, subject to the terms and conditions below.

(b)     Before the Committee or its professionals may disseminate Confidential Information to any third parties to solicit bids, the Committee will provide the Debtors with one business days' notice of its intention to disseminate such information in such notice, which notice will set forth the identity of the intended recipient and the general categories of information to be supplied to such recipient, together with a copy of a confidentiality agreement executed by such recipient.

(c)     Unless the Committee receives a written objection from the Debtors to the notice of intention to supply Confidential Information, including the basis for any such objection, the Committee shall be authorized to proceed with the dissemination of such confidentiality agreement to interested third parties.

(d)     If the Committee receives a written objection, the Committee and the Debtors will endeavor in good faith to resolve any disputed issues. If unsuccessful, the matter will be presented jointly by the parties to the Court

---

[8]     As used herein, "**<u>Confidential Information</u>**" shall mean: any nonpublic information of the Debtors, including, without limitation, information concerning the Debtors' assets, liabilities, business operations, business practices, business plans, intellectual property and trade secrets, financial projections, financial and business analyses and compilations and studies relating to the foregoing and other documents prepared by the Debtors or their advisors or other agents. "Confidential Information" includes, without limitation: (i) any notes, summaries, compilations, presentations, memoranda, or similar written materials disclosing or discussing confidential information; (ii) any discussion or oral presentation of written confidential information, and (c) any other information conveyed orally that the Debtors or their advisors or other agents advise the Committee should be treated as confidential. Notwithstanding the foregoing, "Confidential Information" does not include any information that: (i) is or becomes generally available to the public or is or becomes available to the Committee on a non-confidential basis, is each case to the extent that such information becomes so available other than by a violation of a contractual, legal, or fiduciary obligation to the Debtors, or (ii) was in possession of the Committee prior to its disclosure by the Debtors and is not subject to any other duty or obligation to maintain confidentiality.

on an expedited basis.  No Confidential Information shall be provided to a third-party pending resolution of the objection either consensually or by order of the Court.

(e)     The Committee's advisors shall be permitted and authorized to participate in all aspects of the sale process, including, but not limited to: (i) all in-person and telephonic meetings with management, including management presentations, receive copies of any written materials provided in connection with the same and be provided with reasonable access to management in connection with the Committees' and Debtors' sale process, (ii) receive all correspondence from potential bidders within one business day of receipt by the Debtors or their advisors, (iii) participate in bi-weekly sale process update calls with the Debtors or their advisors, (iv) receive bi-weekly, written updates from the Debtors or their advisors concerning potential bidders contacted and the status of each contact, and (v) receive bi-weekly data-room statistics, to the extent available, as reasonably requested by the Committee's advisors.

48.     The Committee submits that there is ample authority under sections 105(a) and 1107(a) of the Bankruptcy Code to permit the Committee to work with the Debtors on the sale process and to solicit going concern bids for the Company Assets.

**C.      Approval of the Sale is Warranted Under Section 363(b) of the Bankruptcy Code**

49.     The Movants submit that compelling business justifications exist for the proposed Sale, and thus the Sale should be approved as a sound exercise of the Debtors' business judgment.

50.     Section 363 of the Bankruptcy Code provides that "[t]he [debtor-in-possession], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1).  The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Adams Res. Expl. Corp.*, No. 17-10866 (KG), at 12 (Bankr. D. Del. 2017) ("The relief requested in the Sale Motion . . . is a necessary and appropriate step toward enabling the Debtor to maximize the value of its bankruptcy estate, and it is in the best interests of the Debtor, its estate, and its creditors."); *In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("[I]t is a well-established principle

of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to

such sales is to obtain the highest price or greatest overall benefit possible for the estate."); *In re*

*Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders

is to facilitate an open and fair public sale designed to maximize value for the estate.").

51.    Following the decision in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143

(3d Cir. 1986), courts have used the "sound business purpose" standard for approving sales under

section 363.  *See, e.g.*, *In re ICL Holding Co.,* 802 F.3d 547, 551 (3d Cir. 2015); *Myers* v. *Martin*

(*In re Martin*), 91 F.3d 389, 395 (3d Cir. 1996) (approving a sale under section 363 where there

was a "legitimate business justification"); *see also In re Ionosphere Clubs, Inc*., 98 B.R. 174, 175

(Bankr. S.D.N.Y. 1989).   When evaluating whether a sale of property under section 363 is

supported by a sound business purpose, courts consider a variety of factors that essentially

represent a "business judgment" test.  *In re Culp*, 550 B.R. 683, 697 (Bankr. D. Del. 2015).  The

"sound business purpose" test requires a debtor to establish that: "(1) a sound business purpose

exists for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable

notice; and (4) the purchaser has acted in good faith." *In re Decora Indus., Inc.*, No. 00-4459, 2002

WL 32332749, at *2 (D. Del. May 20, 2002) (citing *Del. & Hudson Ry. Co.*, 124 B.R. 169, 176

(D. Del. 1991)); *see also In re: Pursuit Cap. Mgmt., LLC*, No. BR 14-10610- LSS, 2016 WL

5402735, at *4 (D. Del. Sept. 26, 2016).

52.    As discussed above, the Movants have been exploring the viability of a marketing

and sale process to sell the Company Assets.  Based on the expressions of interest received to date,

the budgets prepared and reviewed by the Debtors' and Committee's professionals and Emerald's

investment banking capabilities, the Debtors have reasonably concluded that the efficient Sale of

all or a portion of the Company Assets to a Stalking Horse Bidder, if any, or any other Successful

Bidder represents the best opportunity for the Debtors to maximize value and preserve their going concern value to benefit their stakeholders. Engaging in the proposed marketing process under the supervision of the Court—with the potential benefit of a Stalking Horse Bidder, should the Debtors choose to designate any as their "baseline" bid—will ensure that the marketing process is open and comprehensive, yet expeditious, thereby establishing that any Sale represents a fair transaction that maximizes the value of the Debtors and limits the time and cost spent during these Chapter 11 Cases.

53.      Additional "market exposure" and an auction process—the best means for establishing whether a fair and reasonable price is being paid—will provide more value to the Debtors' estates, through the solicitation of offers that may provide a better outcome than a full liquidation of the Company Assets. Consequently, the proposed Sale in accordance with the Bidding Procedures satisfy the "sound business purpose" test for the sale of assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code.

54.      Along with the fair and reasonable value offered by the Stalking Horse Bidder, if any, or other Successful Bidder for the Company Assets, the Definitive Purchase Agreement, a version of which shall be filed before the Sale Hearing, will be the product of vigorous arms'-length, good-faith negotiations among the relevant parties.

55.      Lastly, the Movants are also proposing adequate notice of the Sale in the Chapter 11 Cases, including direct notice to potentially interested purchasers and the Debtors' creditors and publication notice on the Debtors' claims and noticing agent's website to ensure that all interested parties are aware of the opportunity to submit Bids for the Company Assets.

56.      Accordingly, the Movants submit that the proposed Sale as contemplated herein and under the process set forth in the Bidding Procedures are in the best interests of the Debtors,

their estates, and their creditors, and should be approved.

**D.    The Company Assets Should be Sold Free and Clear of Claims, Liens, and Encumbrances Under Section 363(f) and Successor Liability Claims**

57.    The Movants also submit that any Sale should be free and clear of any and all claims, liens, and encumbrances under section 363(f) of the Bankruptcy Code.  Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of third-party interests only if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interests; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Since section 363(f) of the Bankruptcy Code is written in the disjunctive, any of the five conditions provides authority to sell free and clear of claims, liens, and encumbrances. *See In re Pacific Energy Res Ltd., et al.*, Case No. 09-10785 (KJC) (Bankr. D. Del. Aug. 18, 2009); *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *In re Flying J Inc., et al.*, Case No. 08-13384 (MFW) (Bankr. D. Del. July 27, 2009).

58.    The Movants submit that each lien that is not an assumed liability or permitted encumbrance under the Definitive Purchase Agreement satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code.  If an entity with liens on certain of the Company Assets does not consent to the proposed Sale of such assets, the Debtors intend to demonstrate at the Sale Hearing their satisfaction of the requirements of section 363(f) of the Bankruptcy Code, including because the Debtors may sell the Company Assets free and clear of any other interests under section 363(f)(5) of the Bankruptcy Code because the liens on any assets sold will attach to the

cash proceeds of the Sale in their order of priority and entities holding such interests could be compelled to accept money satisfaction in legal or equitable proceedings. *See In re Boston Generating, LLC*, 440 B.R. 302, 332 (Bankr. S.D.N.Y. 2010); *In re Beker Indus., Corp.*, 63 B.R. 474, 477–78 (Bankr. S.D.N.Y. 1986). Accordingly, under section 363(f) of the Bankruptcy Code, the Debtors may sell the Company Assets free and clear of all claims, liens, and encumbrances.

59. Moreover, the Debtors will send the Sale Notice to any purported lienholders. If such lienholders do not object to the proposed Sale, then their consent should reasonably be presumed. Accordingly, the Movants request that unless a party asserting a lien on any of the Assets (other than for assumed liabilities or permitted encumbrances under a Definitive Purchase Agreement) timely objects to this Motion, such party shall be deemed to have consented to the Sale approved at the Sale Hearing. *See Hargave* v. *Twp. of Pemberton*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor deemed to consent); *Pelican Homestead* v. *Wooten*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same); *see also*, *Precision Indus., Inc.* v. *Qualitech Steel SBQ, LLC*, 327 F.3d 537, 548 (7th Cir. 2003) (finding that a lessee who did not object to the sale order or seek adequate protection had no additional recourse when leasehold interest was sold through a section 363 sale).

60. It is also appropriate to sell the Company Assets free and clear of successor liability relating to the Debtors' business. Such limitations on successor liability ensure that the Successful Bidder is protected from any claims or lawsuits premised on the theory that the Successful Bidder is a successor in interest to one or more of the Debtors. Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes free and clear from successor liability relating to the debtor's business. *See, e.g.*, *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288–90 (3d Cir. 2003) (sale of assets under section 363(f) barred successor liability claims for employment

discrimination and rights under travel voucher program); *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 585 (4th Cir. 1996) (affirming the sale of debtors' assets free and clear of certain taxes); *In re Ormet*, 2014 WL 3542133, at *4 (Bankr. D. Del. July 17, 2014) (permitting a sale free and clear of successor liability claims relating to an under-funded pension plan); *In re Insilco Techs., Inc.*, 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a 363 sale permits a buyer to take ownership of property without concern that a creditor will file suit based on a successor liability theory).

61.     The purpose of a sale order purporting to authorize the transfer of assets free and clear of all claims, liens, and encumbrances would be defeated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's pre-sale conduct. Moreover, without such assurances, potential bidders may choose not to participate in the Auction or, if they did, would submit reduced bid amounts.  To that end, the Movants submit that the Successful Bidder consummating a Sale should not be liable under any theory of successor liability relating to the Debtors' business, but should take the acquired Company Assets free and clear.

### E.     The Successful Bidder Should be Entitled to the Protections of Section 363(m) of the Bankruptcy Code

62.     Under section 363(m) of the Bankruptcy Code, a good-faith purchaser is one who buys assets for value, in good faith, and without notice of adverse claims.  *See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147; *see also, In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Temtechco, Inc.*, 1998 WL 887256, at *5 (D. Del. 1998); *In re Congoleum Corp.*, 2007 WL 1428477, at *2 (Bankr. D.N.J. May 11, 2007).  Any Sale will be result of a robust, intensive postpetition sale process run by the Committee with the Debtors' assistance, and any resulting Definitive Purchase Agreement will be the result of extensive, arm's-length negotiations, with both parties separately represented by independent advisors, which the Debtors and any

purchaser will also show through additional evidence submitted in connection with the proposed Sale.

63.     The proposed Bidding Procedures seek to establish a process which will help market the Company Assets in an efficient and effective fashion.  The Movants diligently formulated the Bidding Procedures to ensure an open and fair process.  The Bidding Procedures set forth a targeted sale process run by the Committee, and the Bidding Procedures permit Bids for all or a portion of the Company Assets.  Under the Bidding Procedures, the Debtors will consider all Qualified Bids to ensure an arms'-length, good-faith sale process.

64.     Accordingly, the Movants request that the Sale Order includes a provision that the Successful Bidder for the Company Assets is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code.  The Movants maintain that providing the Successful Bidder with such protection will ensure that the maximum price will be received by the Debtors for the Company Assets.

### F.     The Stalking Horse Bidder Provisions are Fair and Reasonable and Should be Approved

65.     The Debtors are also seeking authority to designate a Stalking Horse Bidder and, in connection therewith, to offer Bid Protections to such Stalking Horse Bidder.  Bid Protections would be offered only with the consent of the Consultation Parties.  Debtors customarily use stalking horse bidders, a bidder who is "an initial bidder whose due diligence and research serve to encourage future bidders, and whose bid sets a floor for subsequent bidding," to maximize the value of estate assets at auction.  *See In re Interforum Holding LLC*, 2011 WL 2671254, at *1 n.1 (E.D. Wis. July 7, 2011) (stalking horse bidders "establish a framework for competitive bidding and facilitat[ing] a realization of that value").  The offering of Bid Protections to induce stalking horse bidders to provide these benefits has become an established practice in chapter 11 cases.

66.     Courts have made clear that a debtor's business judgment is entitled to substantial deference to the procedures to be used in selling estate assets. *See, e.g.*, *In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require the [Debtor] to show that a sound business purpose justifies such actions.' If the [Debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale." (*quoting In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'" (internal citations omitted)); *see also Integrated Resources*, 147 B.R. at 656–57 (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").  With respect to the granting of bid protections, the Third Circuit has held that there is no "compelling justification for treating an application for a break-up fee and expenses under § 503(b) differently from other applications for administrative expenses under the same provision." *Reliant Energy Channelview LP* v. *Kelson Channelview LLC* (*In re Reliant Energy Channelview LP*), 594 F.3d 200, 206 (3d Cir. 2010) (citing *Calpine Corp.* v. *O'Brien Env't Energy, Inc.* (*In re O'Brien Env't Energy, Inc.*), 181 F.3d 527 (3d Cir. 1999)).

67.     Therefore, the Third Circuit has ruled that bid protections must meet the standard in the administrative expense provisions of Bankruptcy Code section 503(b), which is generally satisfied if such bid protections provide some benefit to the debtor's estate. *See In re Energy Future Holdings Corp.*, 904 F.3d 298, 314 (3rd Cir. 2018); *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d at 533.  Benefits to the debtor's estate may be found if "assurance of a break-up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and

without which bidding would have been limited" and where the availability of the break-up fees and expenses "were to induce a bidder to research the value of the debtor and convert that value to a dollar figure on which other bidders can rely . . . increasing the likelihood that the price at which the debtor is sold will reflect its true worth." *Id.* at 537. The Bid Protections contemplated herein may be necessary to induce parties to act as a Stalking Horse Bidder.

68.     A Stalking Horse Bid would help ensure the continuation of the Debtors' business and establish a substantial "baseline" for a thorough postpetition auction. Such Stalking Horse Bid may further contemplate the employment of some or all of the Debtors' employees, provide for the satisfaction of accrued trade obligations as they become due and payable post-Sale in the ordinary course of business, or contemplate the assumption of some or substantially all of the Debtors' Contracts. In consideration of the foregoing, the Movants submit that the Court should authorize the Debtors to offer Bid Protections under sections 503(b), 507(a)(2), and 507(b), which protections will be only offered with the consent of the Consultation Parties.

**G.     Assumption and Assignment of Executory Contracts and Unexpired Leases Should be Authorized**

69.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a). Courts use the business judgment standard to determine whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease. *See, e.g.*, *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (stating that the assumption or rejection of a lease "will be a matter of business judgment by the bankruptcy court"); *In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that a debtor's decision to assume or reject an executory contract is governed by the "business judgment" standard). The business judgment test "requires only that the trustee [or debtor in possession]

29

demonstrate that [assumption or] rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp.* v. *West Penn Power Co.* (*In re Wheeling-Pittsburgh Steel Corp.*), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) *quoting In re Stable Mews Assoc.*, *Inc.,* 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984).   A more exacting scrutiny would harm the estate through increased costs and "would slow the administration of a debtor's estate, . . . interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co.* v. *Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).   Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under title 11.   Under section 105(a) of the Bankruptcy Code, a court may issue orders or decrees that help preserve or protect the value of a debtor's assets. *See, e.g.*, *In re Chinichian*, 784 F.2d 1440, 1443 ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.").

70.     The assumption and assignment of Contracts, as designated by a Stalking Horse Bidder or other Successful Bidder, is crucial to the Debtors' ability to obtain the best value in connection with the Sale and falls well within the reasonable exercise of the Debtors' business judgment.   Under section 365(b)(1) of the Bankruptcy Code, for a debtor to assume an executory contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default which is required to be cured, including compensating or providing adequate assurance of prompt compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1).   Once an executory contract is assumed, the trustee or debtor in possession may elect to assign it. *See In re Rickel Home Centers, Inc*., 209 F.3d 291, 299 (3d Cir. 2000) ("The Code generally favors free assignability as a means to maximize the value of the debtor's estate").

Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract … only if the trustee assumes such contract … and adequate assurance of future performance is provided." 11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *Carlisle Homes, Inc.* v. *Arrari* (*In re Carlisle Homes, Inc.*), 103 B.R. 524, 538 (Bankr. D.N.J. 1989).  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.

71.     The Movants submit that the Assumption and Assignment Procedures are appropriate and reasonably tailored to provide Non-Debtor Counterparties with adequate notice of the potential assumption and assignment of their Contracts, as well as proposed Cure Amounts, if any.  Non-Debtor Counterparties will have the opportunity to object to the Cure Amounts listed in the Cure Notice, or to the assumption and assignment of their Contracts on other grounds, including concerns about inadequate assurance of future performance.  The Assumption and Assignment Procedures also provide that, in the event an objection is not resolved, the Court will determine the disputed issues.  Accordingly, the Movants submit that implementation of the Assumption and Assignment Procedures is appropriate under the facts and circumstances of the Chapter 11 Cases and the proposed Sale.

72.     For all these reasons, the Movants submit that the assumption and assignment of the Debtors' Contracts to a Stalking Horse Bidder or other Successful Bidder should be approved as an exercise of the Debtors' sound business judgment.

**H.    The Form, Manner, and Extent of Notice of the Motion and the Proposed Sale are Appropriate and Adequate Under the Circumstances**

73.    The Debtors will serve the Sale Notice and the Cure Notice and propose to publish a form of the Sale Notice on their claims and noticing agent's website in accordance with the Bidding Procedures Order.  The notice of the proposed Sale to be provided by the Debtors as set forth herein sufficiently describes the terms and conditions of the proposed Sale.

74.    Several sections of the Bankruptcy Code and Bankruptcy Rules dictate the sufficiency of notice and adequacy of service.  As discussed below, the content and manner of service of this Motion and the related notices satisfy all such requirements:

(a)    <u>Section 363 Notice</u> – section 363 of the Bankruptcy Code provides that a trustee may sell property "after notice and hearing."  Under Section 102(1) of the Bankruptcy Code, the phrase "after notice and hearing" means "notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances."  11 U.S.C. § 102(1)(A).  As discussed above, creditors will be provided notice of the salient details about this motion and the Sale Hearing through service of this Motion, the Sale Notice, and the Cure Notice, each as described above. Notice is therefore sufficient under section 363 of the Bankruptcy Code.

(b)    <u>Bankruptcy Rule 2002</u> – Bankruptcy Rule 2002 requires twenty-one days' notice of the proposed sale of property other than in the ordinary course of business.  In addition, Bankruptcy Rule 2002 provides that notice of a sale shall "include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections." Fed. R. Bankr. P. 2002.  As discussed above, the notice of this Motion that has been and will be provided by the Debtors satisfies each of these requirements.

(c)    <u>Bankruptcy Rules 6004 and 6006</u> – Bankruptcy Rule 6004 requires that notice of sales of property out of the ordinary course of business complies with Bankruptcy Rule 2002.  As discussed above, the Debtors have complied with Bankruptcy Rule 2002.  Bankruptcy Rule 6006 requires notice of a motion to assume and assign an executory contract or unexpired lease to be served on the non-Debtor counterparty to such contract or lease, as well as on other parties in interest as the Court may direct.  The Sale Notice and the Cure Notices have been or will be served on the Non-Debtor Counterparties to any assigned contracts, thereby satisfying this requirement.

(d)    <u>Procedural Due Process</u> – The notices of this Motion and the Sale that are being provided as described above, including the notice being provided by publication to the Debtors' claims and noticing agent's website as described above and the Bidding Procedures Order, are "reasonably calculated" to apprise interested parties of the pendency of the matter and to allow them to object. *See Mullane* v. *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Parties in interest have been and should be found to have been afforded adequate notice of this Motion, the proposed Sale, the Bidding Procedures, and the other relief requested herein.

75.    The Movants submit that the notice the Debtors intend to provide as outlined above with respect to the proposed Sale, the Bidding Procedures, and the Cure Amounts, as applicable, is reasonable and appropriate and constitutes good and adequate notice of the Sale of the Company Assets and the procedures and proceedings related thereto and therefore should be approved by this Court.

**I.    <u>The Stay of the Sale Order Should be Waived</u>**

76.    Under Bankruptcy Rules 6004(h) and 6006(d), an order authorizing the sale of property or the assignment of an unexpired lease is stayed for fourteen days after the entry of an order unless the Court orders otherwise.

77.    The Movants request that the Court order that such stay does not apply to the Sale Order entered with respect to the Sale of the Company Assets and assignment and assumption of the Contracts.

**V.**

**<u>NOTICE</u>**

78.    The Debtors will provide notice of this Motion to: (a) all entities known to have expressed a bona fide interest in a transaction with respect to the Company Assets; (b) all entities known to have asserted any lien, claim, or encumbrance in or upon any assets comprising the Company Assets; (c) all federal, state, and local environmental, regulatory, or taxing authorities

or recording offices which have a reasonably known interest in the relief requested by the Motion; (d) known counterparties to any unexpired leases or executory contracts that could be assumed and assigned to a Successful Bidder; (e) the Office of the United States Trustee for the District of Delaware; (f) all taxing authorities having jurisdiction over any of the Company Assets, including the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Offices of the United States Attorney for the District of Delaware; (i) Roberts 50 USA, LLC, Bob's EMS Holdings LLC and GoDigital Media Group LLC; and (j) all persons and entities that have filed a request for service of filings in these chapter 11 cases under Bankruptcy Rule 2002.

79.     Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Movants submit that, given the relief requested, no other or further notice need be given.

**WHEREFORE,** the Movants request that the Court grant the relief requested herein and such other relief as the Court deems just and appropriate under the circumstances.

Dated: July 15, 2024                              Respectfully Submitted,

| **GOLDSTEIN & McCLINTOCK LLLP** | **MORRIS JAMES LLP** |
|---|---|
| By: */s/ Maria Aprile Sawczuk* | */s/ Eric J. Monzo* |
| Maria Aprile Sawczuk, Esq. (Bar ID 3320) | Eric J. Monzo (DE Bar No. 5214) |
| 501 Silverside Road, Suite 65 | Brya M. Keilson (DE Bar No. 4643) |
| Wilmington, DE 19809 | 500 Delaware Avenue, Suite 1500 |
| Telephone: (302) 444-6710 | Wilmington, DE 19801 |
| marias@goldmclaw.com | Telephone: (302) 888-6800 |
| | emonzo@morrisjames.com |
| -and- | bkeilson@morrisjames.com |
| | |
| Matthew E. McClintock, Esq. (admitted *pro hac vice*) | -and- |
| Amrit S. Kapai, Esq. (admitted *pro hac vice*) | **LOWENSTEIN SANDLER LLP** |
| William H. Thomas, Esq. (admitted *pro hac vice*) | Jeffrey L. Cohen (admitted *pro hac vice*) |
| 111 W. Washington Street, Suite 1221 | Brent I. Weisenberg (admitted *pro hac vice*) |
| Chicago, IL 60602 | Erica G. Mannix (admitted *pro hac vice*) |
| | Chelsea R. Frankel (admitted *pro hac vice*) |

| | |
|---|---|
| Telephone: (312) 337-7700<br>mattm@goldmclaw.com<br>amritk@goldmclaw.com<br>willt@goldmclaw.com<br><br>*Proposed Counsel for the Debtors and Debtors-In-Possession* | 1251 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 262-6700<br>jcohen@lowenstein.com<br>bweisenberg@lowenstein.com<br>emannix@lowenstein.com<br>cfrankel@lowenstein.com<br><br>*Proposed Counsel to the Official Committee of Unsecured Creditors* |