**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MOUNTAIN SPORTS LLC; *et al.*,[1] | ) | Case No. 24-11385 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Re: Docket No. 11, 45, 80 |

**FINAL AGREED ORDER (I) AUTHORIZING USE OF CASH**
**COLLATERAL, (II) GRANTING ADEQUATE PROTECTION**
**TO PREPETITION SECURED PARTY, (III) MODIFYING**
**AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "*Motion*")[2] of the above-captioned Debtors and Debtors-in-possession (collectively, the "*Debtors*") for entry of an interim order and final order, pursuant to sections 105(a), 361, 362, 363, 506 and 507 of title 11 of the United States Code (the "*Bankruptcy Code*"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and Rules 2002-1, 4001-2, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*") seeking, among other things:

(i)    authorization for the Debtors' use of Cash Collateral (as defined herein), and any proceeds thereof, for a final period;

(ii)    the grant of adequate protection as of the Petition Date (as defined herein) to PNC Bank, National Association (the "*Prepetition Secured Party*"), pursuant to Bankruptcy Code sections 361, 362, and 363(e), for any diminution in value of its interests in the Prepetition

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Mountain Sports LLC (9597); SDI Stores LLC (4751); SDI Gift Card LLC (9775); Bob's Stores USA LLC (6115); and Mountain Sports USA LLC (4036). The location of the Debtors' corporate headquarters is 160 Corporate Court, Meriden, CT 06450.

[2] Capitalized terms not defined herein shall have the meanings provided in the Motion.

Collateral (as defined herein) resulting from the Debtors' use of Cash Collateral and imposition of the automatic stay pursuant to Bankruptcy Code section 362;

(iii)    modification by the Court of the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to permit the Debtors and the Prepetition Secured Party to implement and effectuate the terms and provisions of this Final Order, subject to notice and a hearing as provided herein;

(iv)    waiver of the Debtors' ability to surcharge against the Prepetition Collateral or the Adequate Protection Collateral (as defined herein) pursuant to Bankruptcy Code section 506(c) or any other applicable principle of equity or law and waiver of the applicability of the "equities of the case" exception under Bankruptcy Code section 552(b); and

(v)    waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for the immediate effectiveness of this Final Order;

and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and appropriate notice of the Motion under the circumstances having been given and such notice having been good and sufficient; and the Court having conducted hearings for interim relief ("*Interim Hearings*") and final relief ("*Final Hearing*") on the Motion; and the Court having reviewed the Motion, the *Declaration of David Barton In Support of First Day Motions* [Docket No. 21] ("*First Day Declaration*") and the *Declaration of David Barton In Support of Cash Collateral Motion* [Docket No. 27] (together with the First Day Declaration, the "*Declarations*") filed

2

contemporaneously with the Motion, the other evidence adduced by the parties, the representations

of counsel, and the entire record made at the Interim Hearings and Final Hearing, if any; and this

Court having entered the *Interim Order Authorizing Use of Cash Collateral; Granting Adequate*

*Protection to Prepetition Secured Party, Scheduling Second Interim Hearing, and Granting*

*Related Relief* [Docket No. 45] (the "*First Interim Order*") and the *Second Interim Order*

*Authorizing Use of Cash Collateral; Granting Adequate Protection to Prepetition Secured Party,*

*Scheduling Second Interim Hearing, and Granting Related Relief* [Docket No. 80] (the "*Second*

*Interim Order*" and together with the First Interim Order, the "*Interim Orders*"); the Prepetition

Secured Party having filed *PNC's Objection To Debtors' Continued Use Of Cash Collateral*

[Docket No. 140] (the "*PNC Objection*"); and the Prepetition Secured Party having agreed to

withdraw the PNC Objection upon the terms and conditions of this Final Order; and the relief

granted herein being reasonable, appropriate and in the best interests of the Debtors, their creditors,

their estates and all other parties in interest in these Chapter 11 Cases (as defined herein); and the

Court having determined that the relief granted herein is necessary to avoid immediate and

irreparable harm to the Debtors and their estates; and the Court having determined that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and after

due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    *Disposition*.  The relief requested in the Motion is hereby granted on a final basis

on the terms set forth below.  Any objections to the Motion that have not been withdrawn, waived,

---

[3] In accordance with Bankruptcy Rule 7052, any proposed finding of fact more properly classified as a proposed legal conclusion shall be deemed as such, and any proposed conclusion of law more properly classified as a proposed factual finding shall also be deemed as such.

135913727

or settled, and all reservations of rights included therein, are hereby denied, and overruled on the merits.  This Final Order shall become effective immediately upon its entry.

B.     *Petition Date*.  On June 18, 2024 ("*Petition Date*"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code ("*Chapter 11 Cases*") with this Court.

C.     *Debtors in Possession*.  The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases.

D.     *Jurisdiction and Venue.*  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief granted herein are Bankruptcy Code sections 105, 361, 362, 363, 506, 507, and 552, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rule 2002-1, 4001-2, and 9013-1(m).

E.     *Committee Formation*.  On July 3, 2024, the Office of the United States Trustee for the District of Delaware (the "*United States Trustee*") appointed an Official Committee of Unsecured Creditors pursuant to Bankruptcy Code section 1102 (the "*Committee*") in these Chapter 11 Cases [Docket No. 83].

F.     *Notice*.  In accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014, and the Local Rules, notice of the Motion has been provided by the Debtors to (i) the Prepetition

4

Secured Party, (ii) the United States Trustee, (iii) the Debtors' twenty (20) largest creditors, (iv) all parties known to the Debtors that hold any liens or security interests in the Debtors' assets, including those parties that have filed UCC-1 financing statements against the Debtors, or that, to the Debtors' knowledge, have asserted any liens on any of the Debtors' assets, (v) all landlords; (vi) all federal and state taxing authorities and any other governmental bodies holding a claim against the Debtors and (vii) any party having filed a request to receive service in these Chapter 11 Cases (collectively, the "*Notice Parties*").

   G. *Debtors' Representations and Stipulations.*  Without prejudice to the rights of any other party, but in each case subject to the limitations contained in Paragraph 4 below, the Debtors represent, admit, stipulate, and agree (collectively, "*Debtors' Stipulations*") as follows:

   (1) <u>Prepetition Credit Facility</u>.  On April 7, 2023, Roberts 50 USA, LLC ("*Roberts*"), SDI Stores LLC ("*SDI*"), Mountain Sports LLC ("*MSL*"), Bob's Stores USA LLC ("*BSO*"), SDI Gift Card LLC ("*DIGC*") and Mountain Sports USA LLC ("*MSU*," and together with DIGC, BSO, MSL, SDI and Roberts, each a "*Borrower*" and collectively, "*Borrowers*"), and Bob's EMS Holdings LLC ("*BEH*")[4] as "*Guarantor*" and PNC, in its capacity as agent (in such capacity, "*Agent*") on behalf of itself and financial institutions (each a "*Lender*" and collectively, "*Lenders*," and being referred to collectively, in its capacity as both Lender and as Agent, the "*Prepetition Secured Party*") entered into that certain Revolving Credit and Security Agreement (as amended, modified, restated, amended and restated, and/or supplemented from time to time, the "*Credit Agreement*" and, collectively with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments,

---

[4] Roberts is a Borrower and BEH is a Guarantor under the Credit Agreement (as defined herein) but neither are Debtors.

indemnities, indemnity letters, fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, including the "Other Documents" as such term is defined in the Credit Agreement, "*Prepetition Loan Documents*"), which provided the Borrowers with an asset-based revolving loan credit facility ("*Credit Facility*"). The Credit Facility consists of an up to: (a) a $60 million revolving credit facility ("*RC Facility*," and such loans thereunder, "*Revolving Loans*"); (b) a $6 million subfacility for the issuance of letters of credit (the "*Letters of Credit*"); and (c) the "*Cash Management Products and Services*" (as such term is defined in the Credit Agreement), which were provided by the Prepetition Secured Party to the Debtors in accordance with the Prepetition Loan Documents. The Prepetition Secured Obligations (as defined herein) shall be deemed to have been automatically accelerated on the Petition Date as a result of the commencement of these Chapter 11 Cases in accordance with the terms of the Prepetition Loan Documents and all commitments of the Prepetition Secured Party have been terminated. All indebtedness, liabilities, and obligations under the Prepetition Loan Documents, specifically including all "Obligations" as defined in the Credit Agreement are referred to herein as the "*Prepetition Secured Obligations*." Each of the Prepetition Loan Documents is valid, binding, and, subject to applicable bankruptcy law, enforceable against the Debtors party to any Prepetition Loan Documents.

(2)    <u>Prepetition Secured Obligations</u>. As of the Petition Date, the Debtors were justly and lawfully indebted and liable, jointly and severally, under the Prepetition Loan Documents, jointly and severally, without defense, counterclaim, reduction or offset of any kind, in the aggregate principal amount of not less than $29,397,667 in respect of loans and other financial accommodations made by PNC pursuant to, and in accordance with, the Credit Agreement and other Prepetition Loan Documents, plus accrued and unpaid interests, fees, costs

and expenses (including counsel, financial advisors, consultants, accountants, to the extent applicable, chargeable or reimbursable under the Prepetition Loan Documents) with respect to each of the foregoing.

(3)     Prepetition Liens.  Pursuant to and as more particularly described in the Prepetition Loan Documents, the Prepetition Secured Obligations are secured by, among other things, first priority liens on, security interests in, and assignments and pledges of (collectively, the "*Prepetition Liens*"), all of the Debtors' right, title, and interest in: all Receivables (including Credit Card Receivables) and all supporting obligations relating thereto; all Inventory; all chattel paper, instruments and documents, including, without limitation, any chattel paper, instruments and documents evidencing or substituted for Receivables all other rights to payment for Inventory, and all rights thereunder;; all letters of credit and letter of credit rights arising from, or related to, any of the foregoing; all deposit accounts and all other demand, deposit, time, savings, cash management, passbook and similar accounts maintained with any bank or other financial institution and all monies, securities, instruments and other investments deposited or required to be deposited in any of the foregoing; all general intangibles (including all payment intangibles and all software) and all supporting obligations related thereto, in each case, arising from or related to the foregoing; all contract rights, rights of payment which have been earned under any contract, commercial tort claims (whether now existing or hereafter arising), all of each Borrower's rights as a consignor, a consignee, an unpaid vendor, mechanic, artisan, or other lienor, including stoppage in transit, setoff, detinue, replevin, reclamation and repurchase; cash, certificates of deposit, insurance proceeds (including hazard, flood and credit insurance), security agreements, eminent domain proceeds, condemnation proceeds, tort claim proceeds and all supporting obligations, in each case, arising from or related to the foregoing; all ledger sheets, ledger cards,

7

files, correspondence, records, books of account, business papers, computers, computer software (owned by such Borrower or in which it has an interest), computer programs, tapes, disks and documents, including all of such property relating to the property described above;  and all proceeds and products of the foregoing property, in whatever form, in each case, other than Excluded Property (as defined in the Prepetition Loan Documents) (to the extent provided in and as more fully described in the Prepetition Loan Documents, the "*Prepetition Collateral*"), subject to any other valid, perfected and unavoidable lien or security interest otherwise existing as of the Petition Date that is senior to the security interest of the Prepetition Secured Party, to the extent such liens or security interests are valid, perfected and unavoidable liens or security interests existing as of the Petition Date and otherwise senior to the Prepetition Liens as of the Petition Date (collectively, the "*Prepetition Permitted Liens*" and each a "*Prepetition Permitted Lien*").

(4)    Validity of Prepetition Liens and Prepetition Secured Obligations.  The Prepetition Liens are (a) valid, binding, perfected, duly recorded and enforceable liens on, and security interests in, all of the Debtors' respective right, title, and interest in, and to, the Prepetition Collateral and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, offset, recoupment, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity.  Each of the Debtors (i) irrevocably releases and waives, for itself and its estate, any right to challenge or contest in any way the scope, extent, perfection, priority, validity, non-avoidability, or enforceability of the Prepetition Liens or the validity, or enforceability of the Prepetition Loan Documents or the validity, enforceability, or priority of payment of the Prepetition Secured Obligations, and (ii) forever releases and waives, any claims,

8

objections, challenges, counterclaims, causes of action, defenses, setoff rights, obligations, rights to subordinate, or any other liabilities, whether arising in equity or under the Bankruptcy Code or applicable nonbankruptcy law, against the Prepetition Secured Party, or any of their respective affiliates, agents, attorneys, consultants, advisors, professionals, officers, directors, and employees from the beginning of time through the Petition Date.  The Prepetition Liens were granted to the respective Prepetition Secured Party for fair consideration and reasonably equivalent value and were granted in consideration of the making and/or continued making of loans, commitments, and/or other financial accommodations under the Prepetition Loan Documents.  No portion of the Prepetition Secured Obligations or any payments made to the Prepetition Secured Party or applied to or paid on account of the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

H.      *Adequate Protection for the Prepetition Secured Party*.  As a result of the authorization for the Debtors' sale, use, or lease of Prepetition Collateral and the imposition or enforcement of the automatic stay of Bankruptcy Code section 362, the Prepetition Secured Party is entitled to receive adequate protection pursuant to Bankruptcy Code sections 361, 362, and 363 for any diminution in the value, from and after the Petition Date, of its interests in the Prepetition Collateral resulting from the automatic stay and/or from the Debtors' use of the Prepetition Collateral.  As adequate protection for the imposition of the automatic stay and such use of the Prepetition Collateral, the Prepetition Secured Party will receive the adequate protection described in this Final Order, and, in light of such adequate protection, the Prepetition Secured Party has consented to the Debtors' use of the Cash Collateral, solely on the terms and conditions set forth

9

in this Final Order.  The adequate protection provided herein, and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to protect such party's interests in the Prepetition Collateral in accordance with Bankruptcy Code sections 361, 362 and 363.  The adequate protection provided herein, and other benefits and privileges contained herein are necessary in order to (i) protect the Prepetition Secured Party from any diminution of its interests in the value of the Prepetition Collateral (including the proceeds thereof) and (ii) obtain the foregoing consents and agreements.

I.      *Cash Collateral*.  For purposes of this Final Order, the term "*Cash Collateral*" shall be deemed to include, without limitation, all of each Debtor's "Cash Collateral" as defined under Bankruptcy Code section 363, including all deposits subject to setoff and cash arising from the collection or other conversion to cash of any and all property (whether real or personal) in which the Prepetition Secured Party has valid, perfected security interests, liens or mortgages, regardless of whether such security interests, liens, or mortgages existed as of the Petition Date or arise thereafter or pursuant to this Final Order.

J.      *Section 552(b); Section 506(c)*.  The Prepetition Secured Party is entitled to (a) all of the rights and benefits of Bankruptcy Code section 552(b) in connection with the use of any of the Prepetition Collateral and Cash Collateral and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply with respect to the proceeds, products, offspring or profits with respect to any of the Prepetition Collateral and Cash Collateral, and (b) a waiver by the Debtors' and their respective estates of their right to surcharge the Prepetition Collateral and Cash Collateral  pursuant to Bankruptcy Code section 506(c).

K.      *Necessity of Relief Requested*.  Good cause has been shown for the entry of this Final Order.  The Debtors have an immediate need to continue to use Cash Collateral to, among

10

other things, fund the orderly continuation and/or liquidation of their businesses, maintain the confidence of their customers, pay their operating expenses, and preserve their going-concern value for a potential sale or, alternatively, preserve value for an orderly winddown, consistent with the Approved Budget (as defined herein).  In the absence of the availability of such liquidity in accordance with the terms hereof, the orderly sale of assets of the Debtors' businesses would not be possible, and the Debtors, their estates, and their creditors would be harmed.  The terms for the Debtors' use of Cash Collateral pursuant to this Final Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.  The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and (d).  Absent granting the relief sought herein, the Debtors' estates would be immediately and irreparably harmed.  The continued use of Cash Collateral in accordance with this Final Order is therefore in the best interest of the Debtors and their estates, their creditors, and other parties in interest.

L.      *Use of Cash Collateral*.  All Cash Collateral, including proceeds of the Prepetition Collateral shall be used only for: (i) operating expenses; (ii) payments to the Prepetition Secured Party; (iii) other general corporate purposes of the Debtors; and (iv) the satisfaction of the costs and expenses of administering the Chapter 11 Cases, in accordance with the Approved Budget (as defined herein).

M.      *Immediate Entry of this Final Order*.  Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2).

Based upon the foregoing findings and conclusions, and upon the record made before the Court at the Interim Hearings and Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ADJUDGED AND ORDERED** that:

1.      *Motion Granted*.  The Motion is granted on a final basis in accordance with the terms and conditions set forth in this Final Order.  Any objections to the Motion with respect to entry of this Final Order, to the extent not withdrawn, waived, or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled.

2.      *Authorization to Use Cash Collateral*.  The Debtors are authorized to use Cash Collateral as set forth in this Final Order commencing from the Petition Date through and including (but not beyond) the earliest of:

        (a)      any Event of Default (as defined herein);

        (b)      the end of the budget period under the Going Concern Sale Process Budget (as defined herein); or

        (c)      if the Liquidation Budget is in effect, the end of the budget period under the Liquidation Budget (as defined herein).

The Debtors are authorized to use Cash Collateral solely in accordance with the 13-week cash flow forecast of cash receipts and disbursements of the Debtors on a consolidated basis for the period commencing on the Petition Date and continuing through September 30, 2024, attached as **Exhibit 1** to this Final Order (Exhibit 1 attached hereto, the "*Going Concern Sale Process Budget*").  The Going Concern Sale Process Budget shall be the Approved Budget unless the Liquidation Budget is in effect as set forth in the next sentence.  Attached as **Exhibit 2** to this Final Order (the "*Liquidation Budget*," and together with the Going Concern Sale Process Budget, as applicable, the "*Approved Budget*") shall be the Approved Budget if the Debtors fail to deliver an executed stalking horse asset purchase agreement (the "*Stalking Horse Agreement*"), in form and substance reasonably acceptable to the Prepetition Secured Party, on or before August 3, 2024 (the "*Stalking*

*Horse Designation Deadline*"), for the sale of the outdoor clothing, sporting goods, activewear and sports equipment retail locations in the northeastern United States under the brands "Eastern Mountain Sports" (the "*EMS Business*"); *provided*, *however*, that the Debtors and the Committee may seek an emergency hearing and for cause shown, if successful, prevent the Liquidation Budget from going into effect.  Until such time as the parties agree or the Court resolves the parties' dispute at the hearing on August 8, 2024, the Debtors may continue to operate under the Going Concern Sale Process Budget.  Any changes to the Liquidation Budget or the Going Concern Sale Process Budget must be approved in writing by the Prepetition Secured Party.  In each instance, the Debtors may not use Cash Collateral except for the itemized disbursements and only up to the amounts set forth in the Approved Budget, plus up to a 10% variance on total disbursements.  If the cash disbursements in any period are less than the amounts for such period in the applicable Approved Budget, then the variance approved in the prior sentence for such disbursements for the next succeeding period shall be increased by an amount equal to such difference (and roll over into such successive period to the extent such additional budgeted capacity is unused by the Debtors).

3.      *Adequate Protection for the Prepetition Secured Party*.

a.      Subject only to the terms of this Final Order, pursuant to Bankruptcy Code sections 361, 362, 363(c)(2), and 363(e) and in consideration of the stipulations and consents set forth herein, the Debtors hereby grant to the Prepetition Secured Party, for its benefit, an additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected, *nunc pro tunc* to the Petition Date, postpetition security interest in and first priority senior lien ((i) and (ii) below referred to collectively as "*Adequate Protection Liens*") (i) on the Debtors' post-petition assets which, but for the commencement of the Chapter 11 Cases, would constitute Prepetition Collateral in which the Prepetition Secured Party had a valid and perfected security interest as of

the Petition Date, and (ii) to the extent of any diminution in the value, from and after the Petition Date, of the Prepetition Secured Party's interests in the Prepetition Collateral ("*Diminution in Value*") resulting from: (A) any postpetition use of Cash Collateral; (B) the use, sale, or lease of the Prepetition Collateral, including the Cash Collateral; (C) post-petition Cash Management Liabilities (as defined in the Credit Agreement) to be incurred by the Debtors; and (D) the imposition of the automatic stay (collectively, the "*Adequate Protection Obligations*"), on all of the rights, titles, and interests of the Debtors and their "estates" (as created pursuant to Bankruptcy Code section 541(a)) in, to, and under all property and rights and interests in property of the Debtors of any kind or nature whatsoever in existence as of the Petition Date as well as thereafter created or acquired, and wherever located, including, without limitation, (a) all Prepetition Collateral, including Cash Collateral; (b) all Inventory (as defined in the Credit Agreement); (c) all Receivables (as defined in the Credit Agreement) and all supporting obligations relating thereto; (d) all equipment and fixtures; (e) all chattel paper, instruments and documents, including, without limitation, any chattel paper, instruments and documents evidencing or substituted for Receivables, all other rights to payment for Inventory, and all rights thereunder; (f) all letters of credit and letter of credit rights arising from, or related to, any of the foregoing clauses; (g) all deposit accounts and all other demand, deposit, time, savings, cash management, passbook and similar accounts maintained with any bank or other financial institution and all monies, securities, instruments and other investments deposited or required to be deposited in any of the foregoing; (h) all general intangibles (including all payment intangibles and all software) and all supporting obligations related thereto, arising from or related to the foregoing; (i) all contract rights, rights of payment which have been earned under any contract, commercial tort claims (whether now existing or hereafter arising); (j) all of each Debtors' rights as a consignor, a consignee, an unpaid

14

vendor, mechanic, artisan, or other lienor, including stoppage in transit, setoff, detinue, replevin, reclamation and repurchase; cash, certificates of deposit, insurance proceeds (including hazard, flood and credit insurance), security agreements, eminent domain proceeds, condemnation proceeds, tort claim proceeds and all supporting obligations, in each case, arising from or related to the foregoing clauses; (k) all ledger sheets, ledger cards, files, correspondence, records, books of account, business papers, computers, computer software (owned by each such Debtor or in which it has an interest), computer programs, tapes, disks and documents, including all of such property relating to the property described in the foregoing clauses; (l) the Carve-Out Reserve Account and all funds on deposit in the Carve-Out Reserve Account and all other segregated or reserve accounts; *provided, however*, that the Prepetition Secured Party's Adequate Protection Lien shall be subordinate to the rights of Professionals (as defined below) to the Carve-Out; (m) all intellectual property, including without limitation all trademarks, trade names, domain names, and websites, without limitation, easternmountainsports.com, ems.com, and easternmountain.com; (n) all real property and all leasehold interests; (*provided*, *however*, that as to a lien on all fee, leasehold, and other real property interests and the proceeds thereof: (I) with respect to non-residential real property leases, no liens or encumbrances shall be granted or extended under this Interim Order to leasehold interests of non-residential real property that prohibit or restrict the granting of such liens in the applicable lease (but shall include the proceeds of the sale or disposition of such leases); (II) any security deposits (in possession of the landlord) or the Debtors' interests, if any, in pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents (provided that the Prepetition Secured Party's Adequate Protection Liens shall extend to any such security deposits or pre-paid rent upon reversion thereof to the Debtors, if at all) and (III) should the Prepetition Secured Party's

15

internal regulatory or compliance requirements require the completion of either or both flood due diligence and obtaining evidence of applicable flood insurance with respect to any real property or leasehold interest, then until completion of such flood due diligence, the Prepetition Secured Party shall be deemed to have obtained a lien only on the economic value of, proceeds of any sale or other disposition of such real property interests, provided that subject to the terms of the Debtors' leases for non-residential real property and otherwise to the fullest extent provided by applicable law that the liens granted herein shall not interfere with any rights held by a landlord to insurance proceeds for damage to a landlord's property; (o) all causes of action whether pursuant to federal or applicable state law, and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise, other than Avoidance Actions (as defined below) (collectively, "*Causes of Action*"); (p) all claims and causes of action, including proceeds of and property received from such claims and causes of action, under chapter 5 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or state law of the Debtors or their Estates (collectively, the "*Avoidance Actions*"); and (q) all proceeds and products of the property described in the foregoing clauses, in whatever form, in each case (all of the foregoing sometimes collectively referred to in this Final Order as "*Adequate Protection Collateral*").  Notwithstanding the foregoing or anything herein to the contrary, (i) the Prepetition Secured Party shall cooperate with the Committee to have all causes of actions arising under Bankruptcy Code section 547 or state law equivalent (the "*Preference Actions*") with respect to non-insider creditors transferred to the buyer of the Debtors' assets so that such actions shall be released and extinguished or (ii) if no sale of the Preference Actions is made to a buyer acceptable to the Committee is approved, the Prepetition Secured Party agrees to, and hereby does, waive the right to prosecute the Preference Actions against all non-insider creditors; *provided*, *however*, that neither of the foregoing sections

"(i)" and "(ii)" shall impact or reduce the Prepetition Secured Party's diminution liens and claims against other assets of the Debtors' estates. For the avoidance of doubt, the Prepetition Secured Party shall not release any Adequate Protection Liens on any Causes of Action or Avoidance Action arising out of, relating to, or in connection with the inventory transferred or removed prepetition by the Debtors to their non-debtor affiliate(s), which inventory constituted Prepetition Collateral. The Adequate Protection Collateral is subject only to the Carve-Out (defined below).

b.       *Adequate Protection Superpriority Claims*. The Prepetition Secured Party, for its benefit, is hereby granted, subject only to the Carve-Out, an allowed superpriority administrative expense claim (each an "*Adequate Protection Superpriority Claim*" and, collectively, "*Adequate Protection Superpriority Claims*") as provided for in Bankruptcy Code section 507(b), payable from and having recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof. Subject only to the Carve-Out, and except as provided below, the Adequate Protection Superpriority Claims shall have priority over any and all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726, and 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment) and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Case(s) or any subsequently converted bankruptcy case(s) of any Debtors (collectively, "*Successor Cases*"), at any time existing or arising, of any kind or nature whatsoever. The Adequate Protection Superpriority Claim shall be against each Debtor on a joint and several basis. Other than the Carve-Out, no cost or expense of administration of the Chapter 11 Cases shall be senior to, or *pari passu* with, any of the Adequate Protection Superpriority Claims. Notwithstanding anything

17

herein to the contrary, the Adequate Protection Superpriority Claims shall be payable from and have recourse only to Adequate Protection Collateral, subject to the Carve Out.

      c.    *Adequate Protection Payments*.  As additional adequate protection, the Debtors are authorized to and shall pay without the need for the filing of formal fee applications, the adequate protection payments as set forth in this Paragraph 3(c) ("*Adequate Protection Payments*," and together with the Adequate Protection Liens and Adequate Protection Claim, the "*Adequate Protection*") to the Prepetition Secured Party as provided for in the Approved Budget:

      (1)    immediately upon entry of this Final Order, the reasonable professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and third-party consultants, including financial advisors and auditors) incurred by the Prepetition Secured Party under the Prepetition Loan Documents whether arising prior or subsequent to the Petition Date in connection with the Chapter 11 Cases.  All payments of professional fees, expenses and disbursements authorized under this Paragraph 3(c) shall be made within ten (10) days (which time period may be extended by the applicable professional) ("*Review Period*") after receipt by the Debtors, the Committee, and the U.S. Trustee of summary invoices therefor ("*Invoiced Fees*") and without the necessity of filing formal fee applications.  The summary invoices for such Invoiced Fees shall include the total aggregate number of hours billed and a summary description of services provided, and the expenses incurred by the applicable professional; *provided*, *however*, that any such invoice may be redacted to protect privileged, confidential, or proprietary information.  The Debtors, the Committee and the U.S. Trustee may object to any portion of the Invoiced Fees ("*Disputed Invoiced Fees*") within the Review Period setting forth the specific objections to the Disputed Invoiced Fees.  The Debtors shall pay (i) any Invoiced Fees that are not Disputed Invoiced Fees immediately after expiration

135913727

of the Review Period; and (ii) any Disputed Invoiced Fees within fifteen (15) days after approval by the Court by a final order requiring payment of any previously Disputed Invoiced Fees. Without limiting any other provisions of this Final Order, any and all fees that remain unpaid shall be paid in full in cash on the earlier of the effective date of the Debtors' confirmed chapter 11 plan and the closing of any sale; and

(2)     The Prepetition Secured Party shall be entitled to all interest on account of the outstanding Obligations (as defined in the Prepetition Loan Documents) at the default rate set forth therein, which was in effect as of the Petition Date and which shall accrue and be paid at the times and in the manner set forth in the Prepetition Loan Documents, fees, and other amounts (other than principal), as applicable, which shall accrue and be payable as set forth in the Credit Agreement and at the times provided for in the Prepetition Loan Documents, and which may be swept by the Prepetition Secured Party from time to time.

d.      *Use of Cash Management Products and Services*.  Solely in connection with the Cash Management Products and Services (as defined in the Credit Agreement), the Prepetition Secured Party is authorized to continue to make advances pursuant to the terms of its existing agreements (in reliance upon section 364(e) of the Bankruptcy Code) with the Debtors, including advancing funds secured by cash deposits held by PNC.  The Debtors are authorized to continue to use the Cash Management Products and Services and incur related Cash Management Liabilities (as defined in the Credit Agreement) under the terms of the applicable agreements governing such Cash Management Products and Services, the Prepetition Loan Documents, and this Final Order. Solely with respect to the Cash Management Products and Services, the terms of all existing agreements related thereto by and between the Debtors and PNC, including, but not limited to, any depository agreement with the Prepetition Secured Party, shall govern the Prepetition Secured

19

Party's postpetition transactions with the Debtors.

e.      *Adequate Protection Reservation.*  The receipt by the Prepetition Secured Party of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Party is adequately protected.  Further, this Final Order shall not prejudice or limit the rights of the Prepetition Secured Party to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection, without prejudice to the Debtors' or the Committee's rights to contest the seeking of such relief by the Prepetition Secured Party.  Each of the Debtors shall be jointly and severally liable for the Adequate Protection provided for herein.

f.      In addition to, and without limiting, whatever rights to access the Prepetition Secured Party has under the Prepetition Loan Documents, respectively, the Debtors shall permit representatives, agents, and employees of the Prepetition Secured Party to have reasonable access to: (i) inspect the Debtors' assets and properties; (ii) examine the Debtors' books and records, and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers, management, financial advisors, attorneys and consultants, *provided*, *however*, that the Debtors shall not be required to disclose to the Prepetition Secured Party information protected by the work product doctrine, the attorney-client privilege or any similar privileges.

4.      <u>Effect of Stipulations on Third Parties</u>.

a.      *Generally.*  The Debtors have admitted, stipulated, and agreed to the various stipulations and admissions contained in this Final Order, solely to the extent set forth in the Debtors' Stipulations, which stipulations and admissions are and shall be binding upon the Debtors and any successors thereto (other than with respect to a successor Trustee (as defined herein) appointed before the expiration of the Initial Challenge Period (as defined herein), which successor

20

Trustee shall be bound by the Stipulations upon expiration of the Challenge Period, as provided in this paragraph, in all circumstances. The stipulations and admissions contained in this Final Order, including without limitation, the Debtors' Stipulations, shall also be binding upon the Debtors' estates and all other parties in interest, including the Committee or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "*Trustee*"), for all purposes unless (a) any party in interest (other than the Committee), no later than the date that is seventy five (75) days from entry of the First Interim Order or (b) the Committee, no later than the date that is fifteen (15) days after entry of this Final Order (as applicable, the "*Initial Challenge Period*"), has properly filed an adversary proceeding as required under the Bankruptcy Rules (x) challenging the amount, validity, enforceability, priority or extent of the Prepetition Secured Obligations, the liens of the Prepetition Secured Party on the Prepetition Collateral securing the Prepetition Secured Obligations, or (y) otherwise asserting any other claims, counterclaims, causes of action, objections, contests or defenses against the Prepetition Secured Party on behalf of the Debtors' estates ((x) and (y), collectively, referred to herein as "*Challenges*"), and (b) the Court rules in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; *provided*, that, as to the Debtors, all such Challenge(s) are hereby irrevocably waived and relinquished effective as of the Petition Date. If during the Initial Challenge Period, the Committee or other third party files a motion for standing with a draft complaint identifying and describing all Challenge(s) consistent with applicable law and rules of procedure, the Initial Challenge Period will be tolled solely for the Committee or such other third party and solely with respect to the Challenge(s) asserted in the draft complaint until five (5) business days from the entry of an order granting the motion for standing to prosecute such Challenge(s) described in the draft complaint and permitted by the Court ("*Extended Challenge*

135913727

*Period*," together with the Initial Challenge Period, "*Challenge Period*").  If standing is denied by the Court, the Challenge Period shall be deemed to have expired.

   b.  *Binding Effect.*  If no such Challenge or motion for standing, as applicable, is timely filed prior to the expiration of the Initial Challenge Period, without further order of the Court:  (1) the Debtors' stipulations, admissions and releases contained in this Final Order (including the Debtors' Stipulations contained herein and the releases set forth in Paragraph 5 below) shall be binding on all parties in interest, including the Debtors' estates, the Committee, and any subsequently appointed Trustee, case fiduciary, or successors and assigns; (2) the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in these chapter 11 cases and any subsequent chapter 7 cases; (3) the Prepetition Secured Party's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, to be, legal, valid, binding, perfected, and with the priority specified in the Stipulations, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (4) the Prepetition Secured Party (and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors) shall not be subject to any other or further challenge by any Committee or any other party in interest, and any such Committee or party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Initial Challenge Period); *provided*, that if the chapter 11 cases are converted to chapter 7 or a Trustee is appointed prior to the expiration of the Initial Challenge Period, then any such estate representative or Trustee shall receive the full benefit of the later of (a) the expiration of the Initial Challenge Period and (b) thirty

22

(30) days from the appointment of such estate representative or Trustee, subject to the limitations described herein.  If any Challenge or motion for standing, as applicable, is timely and properly filed prior to the expiration of the Initial Challenge Period, the releases, stipulations and admissions contained in this Final Order, including without limitation, in the Debtors' Stipulations, of this Final Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and any other person, including any Trustee appointed in any chapter 11 case(s) or Successor Cases, as applicable, except as to any such findings and admissions that were expressly challenged in the original complaint initiating the adversary proceeding and excluding any amended or additional claims that may or could have been asserted thereafter through an amended complaint under FRCP 15 or otherwise.  The Debtors' Stipulations shall be binding upon the Debtors, their estates, all parties in interest in these chapter 11 cases and their respective successors and assigns, including any Trustee or other fiduciary appointed in these chapter 11 cases or any Successor Cases and shall inure to the benefit of the Prepetition Secured Party and the Debtors and their respective successors and assigns.

> c.      *No Standing*.  Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any claim or cause of action belonging to the Debtors and/or their bankruptcy estates, including, without limitation, any Challenge(s) with respect to the Prepetition Loan Documents or the Prepetition Secured Obligations.

> 5.      <u>Waivers and Releases</u>.

> a.      No costs or expenses of administration that have been or may be incurred in these Chapter 11 Cases or Successor Cases at any time shall be charged against the Prepetition Secured Party, its claims, the Adequate Protection Collateral, or the Cash Collateral pursuant to

23

Bankruptcy Code section 506(c) without the prior written consent of the Prepetition Secured Party (and no such consent shall be implied from any other action, inaction or acquiescence by the Prepetition Secured Party).  The Prepetition Secured Party shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Prepetition Secured Party with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral, Adequate Protection Collateral, or the Cash Collateral (collectively, the "*Collateral*").  In no event shall the Prepetition Secured Party be subject to the equitable doctrine of "marshaling" or any similar equitable doctrine with respect to the Collateral.

      b.     In consideration of and as a condition to the Prepetition Secured Party's consent to the use of the Prepetition Collateral, including Cash Collateral, and providing other financial accommodations to the Debtors pursuant to the provisions of this Final Order, each Debtor, on behalf of itself, and its respective successors and assigns and such Debtor's estate (collectively, "*Releasors*"), subject only to Paragraph 4 above, hereby absolutely releases and forever discharges and acquits (i) the Prepetition Secured Party, (ii) the respective successors, participants, assigns directors, officers, attorneys, employees, financial advisors, consultants and other representatives of the Prepetition Secured Party, (iii) the present and former shareholders, affiliates, subsidiaries, divisions, and predecessors of the Prepetition Secured Party (the parties identified in clauses (i) through (iii) being hereinafter referred to collectively as "*Releasees*") of and from any and all claims, demands, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, cross claims, defenses, rights of set-off, demands, and liabilities whatsoever (individually, a "*Prepetition Released Claim*" and collectively, "*Prepetition Released Claims*") of

24

every kind, name, nature and description, known or unknown, foreseen or unforeseen, matured or contingent, liquidated or unliquidated, primary or secondary, suspected or unsuspected, both at law and in equity, which, including, without limitation, any so-called "lender liability" claims or defenses, that any Releasor may now or hereafter own, hold, have, or claim to have against Releasees, or any of them for, upon, or by reason of any nature, cause, or thing whatsoever which arose or may have arisen at any time on or prior to the date of this Second Interim Order, in respect of the Debtors, the Prepetition Secured Obligations, the Prepetition Loan Documents, and any Letters of Credit, or other financial accommodations under the Prepetition Loan Documents.

6. *Approved Budget; Reporting; Covenants.*

a.      Commencing on Tuesday, June 25, 2024, then every week thereafter, the Debtors shall provide to the Prepetition Secured Party and the Committee (1) an "actual to budget" reconciliation of all postpetition receipts and expenses listed in the Approved Budget as of such date, including a breakdown of sales and inventory by "Bob's" and "EMS" business at the end of each preceding week, if such breakdown of sales is available, (2) a Borrowing Base Certificate, and (3) a compliance or non-compliance certificate.

b.      As and when the Debtors' cash on hand exceeds $1.5 million ("*Cash Floor*"), the Prepetition Secured Party shall be allowed to sweep any amounts in excess of the Cash Floor ("*Excess Cash Flow*") as paydown of the Prepetition Secured Obligation for the benefit of the Prepetition Secured Party upon consultation with Silverman (as defined herein) prior to each such sweep.  In addition, all net proceeds (after segregation of the Emerald Fees (as defined herein), any break-up fee in connection with the auction of the EMS Business, and funding any deficiency in the Carve-Out Reserve Account) from the sale, transfer, or other disposition of any assets (including without limitation, intellectual property, leaseholds, and

25

general intangibles) shall be paid in full in cash to the Prepetition Secured Party until indefeasibly paid and satisfied in full.  For the avoidance of doubt, the Debtors and the Committee waive any argument or challenge on diminution in value of the Prepetition Secured Party's Prepetition Collateral and Adequate Protection Collateral, and its liens and claims with respect thereto, after the Carve Out and hereby acknowledges that the Prepetition Secured Party is entitled to all such proceeds until payment in full.

c.      During the Approved Budget period, Net Sales shall be no less than 95% of the amount budgeted for "Net Sales" in the Approved Budget then in effect.  This "Net Sales" covenant will be tested on a building cumulative basis commencing on the Petition Date, to be tested on every Tuesday, commencing July 30th,  for the prior week ending period (i.e. testing date on July 30th would be for the cumulative period ending July 27th).

d.      All funds from operation of the Debtors' businesses must continue to be deposited with the Prepetition Secured Party consistent with the Prepetition Loan Documents.

e.      The Prepetition Secured Party has been and continues to be authorized to communicate directly with the Debtors' liquidation consultant, Hilco Merchant Resources, LLC ("*Hilco*"), and the Debtors' financial advisor, Silverman Consulting ("*Silverman*").  The Debtors shall cooperate with PNC in making Hilco and Silverman available to the Prepetition Secured Party, as necessary.

f.      The Debtors shall simultaneously share all bid information, drafts of any expressions of interest and asset purchase agreements, and any other information that is given to the Committee with the Prepetition Secured Party.

g.      The Debtors represent, warrant and covenant that the intellectual property in which each of the Loan Parties (as defined under the Prepetition Credit Agreement) has an

135913727

interest, was on the Petition Date and is currently, owned by Debtor Mountain Sports LLC ("*MSL*") as set forth in the "Trade Mark Applications & Registrations In the name of Mountain Sports, LLC," (the *MSL Report*") dated as of May 2024, and by non-debtor Roberts 50 USA, LLC ("*Roberts*") as set forth in the "Trade Mark Registrations In the name of SDI USA, LLC" (which entity merged into Roberts) (the "*Roberts Report*"), also dated as of May 2024. Further, MSL represents, warrants, and covenants that it has not granted any liens, rights to or interests in the intellectual property set forth in the MSL Report (other than a security interest in favor of MidCap Funding IV Trust that was terminated upon entry into the Prepetition Credit Agreement.

      h.      No less than the "Revolver Paydown (Adequate Protection Cost)" amounts set forth in the Budget (subject to a 10% variance), together with the amounts to be paid in each weekly period, shall be paid to the Prepetition Secured Party; provided that any shortfall from one week may be made up in the following week and paid to the Prepetition Secured Party so that all amounts shall be paid in full by the next weekly period.

      i.      With respect to all gift cards, returns and rewards programs relating to (1) "Bob's Stores," such shall not be honored by the Debtors and any remaining gift cards, returns, and rewards relating to "Bob's Stores" terminated and became invalid automatically as of 11:59 p.m. ET on July 14, 2024, and (2) "Eastern Mountain Sports," such may be honored by the Debtors, in their discretion, from the date of this Final Order through August 30, 2024, unless the Liquidation Budget is in force and effect, pursuant to which authorization to honor any remaining gift cards, returns, and rewards shall cease, and any remaining gift cards, returns, and rewards relating to "Eastern Mountain Sports" shall become invalid automatically as of fourteen (14) days after the Liquidation Budget is in effect.

7.      *Carve-Out*.  The Prepetition Liens, the Adequate Protection Liens, and Adequate Protection Superpriority Claims shall be subject only to the right of payment of the following expenses (collectively, "*Carve-Out*"), to the extent provided herein:

a.      statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) with respect to the Debtors ("*Statutory Fees*"); and

b.      the allowed fees and costs of the Debtors' claims and noticing agent, subject in all respects to the terms of the Final Order; and

c.      the allowed fees and expenses actually incurred by persons or firms retained by the Debtors and the Committee on or after the Petition Date pursuant to Bankruptcy Code sections 327, 328, 363, or 1103 (each a "*Professional*" and collectively, "*Professionals*") in a cumulative sum for the period prior to the occurrence of the delivery of a Carve-Out Trigger Notice (as defined herein), an amount not to exceed the lesser of (A) the aggregate weekly amounts budgeted for each such Professionals for such week in accordance with the Approved Budget (to the extent a Carve-Out Trigger Notice is delivered mid-week, pro-rated for such week) and (B) the actual amount of such Allowed Professional Fees for each Professional incurred on or after the Petition Date up through and including the date a Carve-Out Trigger Notice is delivered ("*Allowed Professional Fees*"), subject in all respects to the terms of the Final Order and the Approved Budget.  The Carve-Out shall include all Allowed Professional Fees that are incurred or earned (1) at any time before delivery of a Carve-Out Trigger Notice, whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice, subject and limited in all respects to the amounts set forth in the Approved Budget for payment of such Professionals; and (2) beginning the first day after the delivery by the Prepetition Secured Party of written notice (which for the avoidance of doubt may be by electronic mail, "*Carve-Out Trigger Notice*") of the

occurrence of an Event of Default to the Debtors, the Debtors' counsel, the U.S. Trustee, and counsel for the Committee, the fees and expenses incurred by the Professionals retained by the Debtors in an aggregate amount not to exceed $25,000 ("*Post-EOD Carve-Out Amount*") (the aggregate amount of clauses (1) and (2), collectively, "*Carve-Out Cap*"); *provided*, *however* the Carve-Out shall not include any bonus, transaction fees, success fees, completion fees, substantial contribution fees, or any other fees of similar import of any of the Professionals.  Notwithstanding the foregoing, the Carve-Out Trigger Notice shall be deemed to have been delivered to the required notice parties on the Termination Date.  The Carve-Out shall include the fees (the "*Emerald Fees*," solely to the extent this Court approves such fees) payable to Emerald Capital Advisors ("*Emerald*") upon a closing of the sale of the EMS Business, as set forth in an order authorizing and approving Emerald's retention by the Committee; *provided*, *however*, that Emerald shall only be entitled to such fees if (i) an Emerald sourced bidder submits a Qualified Bid for the EMS Business that is overbid whether prior to, or at the Auction (as defined in the bidding procedures order to be entered by this Court), then a fee no greater than 2% of the total purchase price of such assets, up to a maximum fee of $220,000; or (ii) if no Overbid is submitted, then a flat fee of $100,000.

      d.    For the avoidance of doubt, to the extent the budgeted amounts for a Professional for any Approved Budget period exceed the actual fees and expenses incurred by such Professional for that period, the excess may be carried forward to later Approved Budget periods or backward to prior Approved Budget periods to be applied to any fees or expenses that exceeded the budgeted amounts for such prior or later periods. Furthermore, at the conclusion of the Approved Budget period, to the extent the budgeted amounts for any Professional exceed the actual

fees and expenses incurred by such Professional, the excess may be used to satisfy any other Professionals budgeted fees whose fees exceeded the budgeted amounts in the Approved Budget.

8.    *Excluded Professional Fees*.  Except as otherwise provided in this Final Order, neither the Carve-Out, nor the proceeds of any Prepetition Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following:  (a) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief:  (i) challenging the legality, validity, priority, perfection, or enforceability of the Prepetition Secured Obligations or the Prepetition Secured Party's liens on and security interests in any of the Collateral, (ii) seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the Prepetition Secured Obligations, the Prepetition Secured Party's liens on and security interests in the Collateral, or (iii) preventing, hindering or delaying the Prepetition Secured Party's assertion or enforcement of any lien, claim, right, or security interest or realization upon any of the Collateral, in accordance with the terms and conditions of this Final Order, (b) a request to use the Cash Collateral on and after the Termination Date, except to the extent expressly permitted herein, (c) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), other than from the Prepetition Secured Party, without the prior written consent of the Prepetition Secured Party, (d) the commencement or prosecution of any action or proceeding of any claims, causes of action, or defenses against the Prepetition Secured Party, or any of its respective officers, directors, employees, agents, attorneys, financial advisors, consultants, affiliates, successors, or assigns, including, without limitation, any attempt to avoid any claim, lien, or interest of, or obtain any recovery from any of the Prepetition Secured Party

30

under Chapter 5 of the Bankruptcy Code; *provided*, *however*, that, subject to the Carve-Out Cap, an amount not to exceed $20,000 in the aggregate of Cash Collateral may be used to pay the Allowed Professional Fees of the Committee to investigate (but not prosecute) claims against and possible objections with respect to the Prepetition Secured Obligations and the pre-petition liens and security interests of, the Prepetition Secured Party (including, without limitation, issues regarding validity, perfection, priority, or enforceability of the secured claims of such party). Nothing herein shall be construed as a consent to the allowance of the fees and expenses of any Professional or shall affect the right of the Prepetition Secured Party to object to the allowance and payment of such fees and expenses.  The Debtors shall be permitted to pay fees and expenses allowed and payable pursuant to an Order of the Bankruptcy Court under Bankruptcy Code sections 330 and 331, as the same may be due and payable, solely to the extent set forth in the Approved Budget and not to exceed the amounts set forth in the Approved Budget or as otherwise permitted in paragraph 7.d. of this Final Order, provided that any such payment shall be subject to entry of a final order of the Bankruptcy Court of each Professional's final application for allowance of such fees and expenses.

9.      *Payment of Carve-Out*.

a.      Each Estate Professional that receives Carve-Out funds pursuant to the terms hereof shall maintain such funds in escrow (the "*Carve-Out Reserve Accounts*"), which accounts shall be funded by or on behalf of the Debtors in accordance with the Approved Budget on a weekly basis, in advance, until the occurrence of a Carve-Out Trigger Notice.  The Estate Professionals shall be entitled to withdraw their fees and expenses from funds in their respective Carve-Out Reserve Accounts, in compliance with an interim compensation procedures and in the manner set forth in this Final Order in accordance with the Approved Budget.

135913727

b.        The Carve-Out Cap shall be reduced on a dollar-for-dollar basis by the amounts actually funded into the Carve-Out Reserve Accounts and/or the amounts actually paid on account of the Carve-Out.  Payment of any amounts on account of the Carve-Out, whether by or on behalf of the Prepetition Secured Party, shall not be deemed to reduce the Prepetition Secured Obligations, and shall not and shall not be deemed to subordinate any of the Prepetition Secured Party's liens and security interests in the Collateral, or the Adequate Protection Claim, to any junior pre- or post-petition lien, interest, or claim in favor of any other party.  The Prepetition Secured Party shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with these chapter 11 cases or Successor Cases (as defined herein) under any chapter of the Bankruptcy Code, and nothing in this Paragraph 9 shall be construed to obligate the Prepetition Secured Party, in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors has sufficient funds to pay such compensation or reimbursement.

c.        Nothing herein shall be construed as a consent to the allowance of the fees and expenses of any Professional or shall affect the right of the Prepetition Secured Party to object to the allowance and payment of such fees and expenses.  So long as no Event of Default has occurred or is continuing, the Debtors shall be permitted to pay fees and expenses allowed and payable pursuant to an order of the Court, including any order approving interim compensation procedures, under Bankruptcy Code sections 330 and 331, as the same may be due and payable, solely to the extent set forth in the Approved Budget and not to exceed the amounts set forth in the Approved Budget *provided* that (i) any such payment shall be subject to entry of a final order of this Court of each Professional's final application for allowance of such fees and expenses and (ii) unused amounts set forth in the Approved Budget may be carried forward until the Carve-Out Trigger

Notice, if any, and used to fund such item in any subsequent week. Furthermore, as of the date a Carve-Out Trigger Notice is issued, to the extent the budgeted amounts for any Professional exceed the actual fees and expenses incurred by such Professional, the excess may be used to satisfy any other Professionals budgeted fees whose fees exceeded the budgeted amounts in the Approved Budget.

10. *Lien Perfection*. This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, the Prepetition Secured Party (on behalf of itself) may, in its sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of Bankruptcy Code section 362 in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases. The Prepetition Secured Party (on behalf of itself) may, in its sole discretion, file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order.

135913727

11.     *Events of Default.* The following events shall constitute an Event of Default unless waived by the Prepetition Secured Party in writing, subject only to any rights and terms set forth in paragraph 13 below.  The Debtors' right to use Cash Collateral shall terminate, without further order of this Court or any further action by the Prepetition Secured Party, on the earliest to occur of any of the following (each an "*Event of Default*"):

a.     The failure by the Debtors to make, or cause to be made, any payment under this Final Order to the Prepetition Secured Party when due;

b.     The failure by the Debtors to deliver to the Prepetition Secured Party any of the material documents or other material information required to be delivered pursuant to this Final Order when due or any such documents or other information shall contain a material misrepresentation;

c.     The failure by the Debtors to comply with any Approved Budget covenants;

d.     The delivery of a non-compliance certificate;

e.     The Debtors shall grant, create, incur or suffer to exist any postpetition liens or security interests other than:  (i) those granted pursuant to this Final Order; (ii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business for amounts outstanding as of the Petition Date, even if recorded after the Petition Date; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any postpetition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; and (v) any Prepetition Permitted Liens;

34

135913727

f.      Entry reversing, adversely amending, adversely supplementing, staying, vacating, or otherwise adversely modifying any material provision of this Final Order without the written consent of the Prepetition Secured Party;

g.      Breach by any Debtor of any material provisions of this Final Order, or this Final Order shall cease to be in full force and effect or shall have been reversed, modified, amended, stayed, vacated or subject to stay pending appeal, in the case of any modification or amendment;

h.      The Debtors file a motion seeking approval to create, incur, or suffer to exist any claim that is senior to the Adequate Protection Superpriority Claims;

i.      The Debtors shall create, incur, or suffer any other claim which is *pari passu* with or senior to the Adequate Protection Superpriority Claim;

j.      Entry of an order dismissing any of the Chapter 11 Cases without the Prepetition Secured Party's consent;

k.      Entry of an order confirming a plan of reorganization or liquidation that is not acceptable to the Prepetition Secured Party;

l.      Entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code without the Prepetition Secured Party's consent;

m.      Entry of an order authorizing the appointment or election of a trustee or examiner with expanded powers or any other representative with expanded powers relating to the operation of the businesses in the Chapter 11 Cases, without the consent of the Prepetition Secured Party;

n.      The Court shall have entered an order granting relief from the automatic stay imposed by Bankruptcy Code section 362 to any entity;

35

135913727

o.      A filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition Secured Obligations or asserting any other cause of action against and/or with respect to the Prepetition Secured Obligations, the Collateral, or the Prepetition Secured Party (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party);

p.      A filing of a motion for bidding procedures or a motion for the sale of any or all of a Debtor's assets, which motion and order approving such motion are not in form and substance reasonably acceptable to Prepetition Secured Party.  For the avoidance of doubt, the proposed form of bidding procedures order presented to the Court on July 23, 2024 shall be acceptable to the Prepetition Secured Party;

q.      A sale order is entered for the sale of any Collateral or assets of the Debtor that is not in form and substance reasonably acceptable to the Prepetition Secured Party;

r.      The execution of a Stalking Horse Agreement that is not in form and substance acceptable to the Prepetition Secured Party, which consent shall not be unreasonably withheld; *provided*, *however*, that the Prepetition Secured Party has the right to determine whether such Stalking Horse Agreement's offered purchase price and certainty to close are acceptable to the Prepetition Secured Party in its sole discretion;

s.      Any material breach or termination of the Stalking Horse Agreement once executed by the buyer or seller(s) unless, after the Auction on August 22, 2024, a Back-Up Bidder (each as defined in the bidding procedures filed at Docket No. 116) is obligated to purchase the Debtors' assets;

36

t.      A determination by this Court that any disputed title or ownership issues cannot be adjudicated in connection with the sale hearing and such issues prevent the consummation of a sale of the Debtors' assets by August 30, 2024;

u.      The Court does not set a deadline of August 6, 2024 for any party claiming an interest in any of the Debtors' intellectual property or inventory to file an objection to the sale ("Title Objection") or otherwise be barred from disputing the Debtors' title to such assets;

v.      As of August 9, 2024, the Court has not scheduled a hearing to determine any Title Objection and/or resolve any related title disputes prior to August 30, 2024;

w.      The Debtors shall use Collateral in any manner inconsistent with the Approved Budget and the other terms of this Final Order, including, without limitation, Paragraph 2 hereof;

x.      The sale or transfer of any assets of any Debtor, or the filing of a motion by any of the Debtors seeking approval of the sale or transfer, of any Prepetition Collateral or Collateral outside of the ordinary course of business without the prior consent and approval of the Prepetition Secured Party, which consent shall not be unreasonably withheld;

y.      Impairment or failure to preserve the Prepetition Secured Obligations, Adequate Protection Obligations, and/or their rights to credit bid the Prepetition Secured Obligations and/or Adequate Protection Obligations;

z.      Entry of an order avoiding, disallowing, subordinating or recharacterizing any claim, lien, or interest held by any Prepetition Secured Party arising under the Credit Agreement, unless (i) the Debtors have sought a stay of such order within five (5) business days

37

after the date of such issuance, and such order is stayed, reversed or vacated within ten (10) business days after the date of such issuance or (ii) the Prepetition Secured Party has consented to such order in writing;

aa.   The Committee's failure to file and to prosecute in consultation with the Prepetition Secured Party a turnover complaint for the immediate return of inventory in an approximate amount of $2 million, which Prepetition Collateral was removed from the Debtors' premises prepetition by a non-debtor affiliate, and the Debtors represent is currently being stored in trailers off premises, by July 22, 2024; *provided* that such adversary proceeding shall not be withdrawn, dismissed, or its prosecution unnecessarily delayed, without the consent of the Prepetition Secured Party.

bb.   The Debtors' failure to meet any of the following milestones by the applicable deadline, which deadlines may be extended by mutual written agreement between the Debtors, the Committee, and the Prepetition Secured Party:

(1)  Failure to designate a Stalking Horse Agreement, in form and substance acceptable to the Prepetition Secured Party by August 3, 2024; provided, however, that the Debtors and the Committee, in conformance with their fiduciary duties, may seek an emergency hearing with this Court on August 8, 2024, and for successful cause shown, have this date reasonably modified;

(2) Failure to hold the auction by August 22, 2024, which date may be extended upon the consent of the Prepetition Secured Party, such consent not to be unreasonably withheld;

(3)  Failure to hold the sale hearing by August 29, 2024, which date may be extended upon the consent of the Prepetition Secured Party, such consent not to be unreasonably withheld;

(4)  Failure to obtain a sale closing of the EMS Business by August 30, 2024; and

(5)  Failure to remit all proceeds and cash on hand to the Prepetition Secured Party after payment of the Carve-Out by the ending date of the budget period under the Going Concern Sale Process Budget or Liquidation Budget, whichever is in effect, as applicable.

12.     *Termination*.  Upon the earlier of September 30, 2024 or the occurrence of an Event of Default (unless such occurrence is waived by the Prepetition Secured Party in its sole discretion), the Debtors' right to use the Collateral, shall automatically terminate (the date of such termination, "*Termination Date*"), without further notice or court proceeding; *provided that*, with the consent of the Debtors, the Committee, and the Prepetition Secured Party, in the exercise of its respective sole discretion, the Termination Date may be extended without further Court approval upon the filing of a notice on the docket of the Chapter 11 Cases setting forth the new Termination Date.

13.     *Remedies upon An Event of Default*.  Upon the occurrence of an Event of Default (unless such occurrence and continuance is waived by the Prepetition Secured Party in its sole discretion), and upon three (3) business days' written notice of such Event of Default ("*Default Notice Period*") to the Debtors, their restructuring counsel, the U.S. Trustee, and counsel to the Committee, (a) the Debtors shall immediately cease using the Collateral; (b) the Adequate Protection Obligations, if any, shall become due and payable; (c) the Prepetition Secured Party may exercise the rights and remedies available to it under the Prepetition Loan Documents, this

Final Order, or applicable law, as applicable, including, without limitation, foreclosing upon and selling all or a portion of the Collateral in order to collect and satisfy the Prepetition Secured Obligations and Adequate Protection Obligations, in accordance with this Final Order; and (d) all cash on hand should be immediately paid to the Prepetition Secured Party; *provided*, *however*, that the Carve-Out Reserve Account shall be funded in accordance with this Final Order. The automatic stay under Bankruptcy Code section 362 is hereby deemed modified and vacated to the extent necessary to permit such actions; *provided that* during the Default Notice Period, unless the Court orders otherwise, the automatic stay under Bankruptcy Code section 362 (to the extent applicable) shall remain in effect; *provided further*, that during the Default Notice Period the Debtors and the Committee shall be entitled to an emergency hearing before this Court, and the Default Notice Period shall be extended until the Court issues an order with respect thereto, and the Debtors or any party in interest shall be permitted to use of Cash Collateral only for critical payroll (excluding amounts for key employee retention and incentive programs, if any). Any delay or failure of the Prepetition Secured Party to exercise rights under the Prepetition Loan Documents or this Final Order shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable document. Subject and subordinate only to the Carve-Out and as otherwise set forth herein, the Prepetition Secured Party shall be entitled to apply the payments or proceeds of the Collateral in accordance with the provisions of the Prepetition Loan Documents, as applicable. Notwithstanding the occurrence of the Event of Default or anything herein, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Party under this Final Order shall survive the Termination Date.

14.      *Preservation of Rights Granted Under this Final Order.*

a.      Notwithstanding any order dismissing any of the Chapter 11 Cases under Bankruptcy Code section 1112 (x) the Adequate Protection Superpriority Claims, the other administrative claims granted pursuant to this Final Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Adequate Protection Obligations shall have been paid and satisfied in full in cash (and such Adequate Protection Superpriority Claims, the other administrative claims granted pursuant to this Final Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

b.      If any or all of the provisions of this Final Order are hereafter reversed, modified or stayed, such reversal, stay, or modification shall not affect:  (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition Secured Party, of the effective date of such reversal, stay or modification; or (ii) the validity, priority or enforceability of the Adequate Protection Liens. Notwithstanding any such reversal, stay or modification, any use of the Collateral or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the Prepetition Secured Party of the effective date of such reversal, stay or modification shall be governed in all respects by the original provisions of this Final Order, and the Prepetition Secured Party shall be entitled to all of the rights, remedies, privileges and benefits granted herein and to the protections afforded in Bankruptcy Code section 363(m) with respect to all uses of the Cash Collateral and all Adequate Protection Obligations.

41

c.      Subject to Paragraph 3 of this Final Order, the Adequate Protection Payments made pursuant to this Final Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Chapter 11 Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

d.      Except as expressly provided in this Final Order, the Adequate Protection Obligations, the Adequate Protection Superiority Claims and the Adequate Protection Liens and all other rights and remedies of the Prepetition Secured Party granted by the provisions of this Final Order shall survive, and shall not be modified, impaired or discharged by the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, or by any other act or omission.  The terms and provisions of this Final Order shall continue in the Chapter 11 Cases, in any Successor Cases if the Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the Adequate Protection Superiority Claims, the other administrative claims granted pursuant to this Final Order, and all other rights and remedies of the Prepetition Secured Party granted by the provisions of this Final Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

15.     *No Marshalling*.  The Prepetition Secured Party shall not be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Collateral (including Cash Collateral).

16.     *Good Faith.* The Prepetition Secured Party acted in good faith in connection with this Final Order and this Final Order has been, and is, in good faith.

135913727

17.    *Miscellaneous*.

a.    *Binding Effect*.  The provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation,  the Committee, the Prepetition Secured Party, the Debtors, and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Secured Party and the Debtors and their respective successors or assigns.

b.    *Modification of Automatic Stay*.  The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Final Order and the transactions contemplated hereby.  The automatic stay of Bankruptcy Code section 362 is hereby modified to permit the Debtors and the Prepetition Secured Party to accomplish the transactions contemplated by this Final Order.

c.    *Headings*.  The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

d.    *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Final Order.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed and vice versa.

e.      *No Third-Party Rights*.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third-party, creditor, equity holder or any direct, indirect, third-party, or incidental beneficiary.

f.      *Survival of Final Order*. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any chapter 11 plan or plans of reorganization or liquidation in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from the Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in the Court.

g.      *Controlling Effect of Final Order*.  To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Final Order shall control to the extent of such conflict.

h.      *Order Immediately Effective.* Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are effective immediately and enforceable upon its entry.

i.      *Debtor Authorization to Effectuate Relief*.  The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

j.      *Jurisdiction*.  This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

18.      *Proofs of Claim*.  Notwithstanding the entry of an order establishing a bar date in any of these Chapter 11 Cases, or the conversion of these Chapter 11 Cases to a case under chapter

44

135913727

7 of the Bankruptcy Code, the Prepetition Secured Party shall not be required to file proofs of claim in any of the Chapter 11 Cases or any Successor Cases with respect to any of the Prepetition Secured Obligations, Adequate Protection Obligations, Adequate Protection Liens, Adequate Protection Superpriority Claim, or any other claims or liens granted hereunder or created hereby. The Prepetition Secured Party is hereby authorized and entitled, in its sole and absolute discretion, but in no event is required, to file (and amend and/or supplement, as it sees fit) proofs of claim in each of the Chapter 11 Cases on behalf of all of itself in respect of the Prepetition Secured Obligations. Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by the Prepetition Secured Party. Any order entered by the Bankruptcy Court in relation to the establishment of a bar date in any of the Chapter 11 Cases will so provide.

**Dated: July 23rd, 2024**
**Wilmington, Delaware**

45

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**

135913727