## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| MOUNTAIN SPORTS LLC, *et al.,*[1] | Case No. 24-11385 (MFW) |
| Debtors. | (Jointly Administered) |
| | Related to Docket No. 116 |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS, (II) APPROVING THE FORM AND MANNER OF NOTICE OF THE SALE AND BID DEADLINES, (III) AUTHORIZING THE DEBTORS TO SELECT A STALKING HORSE BIDDER AND ENTER INTO A PURCHASE AGREEMENT WITH SUCH BIDDER PROVIDING FOR CERTAIN BID PROTECTIONS, (IV) APPROVING (A) PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (B) THE FORM AND MANNER OF NOTICE THEREOF, (V) SCHEDULING THE AUCTION AND THE HEARING TO CONSIDER APPROVAL OF THE SALE, (VI) AUTHORIZING THE COMMITTEE TO RUN THE SALE PROCESS WITH THE DEBTORS' ASSISTANCE AND (VII) GRANTING RELATED RELIEF**

Upon of the motion (the "**Motion**") of the Debtors and the Official Committee of Unsecured Creditors (the "**Committee**," and together with the Debtors, the "**Movants**") for entry of two orders:[2]

(I)     An order (this "**Bidding Procedures Order**"):

    (a)     approving the bidding procedures (the "**Bidding Procedures**") in substantially the form attached as <u>Exhibit 1</u> hereto to govern the sale of all or substantially all of the Debtors' assets (the "**Company Assets**") or component thereof, pursuant to section 363 of the Bankruptcy Code;

    (b)     approving the form and manner of notice of the Sale and the Bid Deadline (defined below), substantially in the form attached as <u>Exhibit 2</u> hereto (the "**Sale Notice**");

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Mountain Sports LLC (9597); SDI Gift Card LLC (9775); Bob's Stores USA LLC (6115); SDI Stores LLC (4751); and Mountain Sports USA LLC (4036).  The location of the Debtors' corporate headquarters is 160 Corporate Court, Meriden, CT 06450.

[2]     Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion or the Bidding Procedures.

(c)     authorizing the Debtors, in accordance with the terms of the Bidding Procedures, to select a bidder to act as a stalking horse bidder (a "**Stalking Horse Bidder**") and enter into a purchase agreement with any such Stalking Horse Bidder (a "**Stalking Horse Agreement**"), which may provide for certain bid protections, including a break-up fee, with the consent of the Consultation Parties (defined below);

(d)     approving (i) procedures (the "**Assumption and Assignment Procedures**") for the assumption and assignment of executory contracts and unexpired leases (together, the "**Contracts**") and (ii) the form and manner of the notice (the "**Cure Notice**") of assumption and assignment of Contracts, including the form and manner of notice of proposed cure amounts (the "**Cure Amounts**") attached as Exhibit 3 hereto;

(e)     scheduling the auction (the "**Auction**"), if any, and the hearing to consider approval of the Sale (the "**Sale Hearing**") and approving the form and manner of notice thereof;

(f)     authorizing the Committee to run the marketing and sale process with the Debtors' assistance using, *inter alia*, the Debtors' Confidential Information (defined below); and

(g)     granting related relief.

(II)     Entry of an order (the "**Sale Order**"):

(a)     approving the Sale of the Company Assets or component thereof, free and clear of all Interests (defined below);

(b)     authorizing the assumption and assignment of certain Contracts; and

(c)     granting related relief.

And upon the First Day Declaration, the Barton Declaration, and the Madden Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their

creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "**Hearing**"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor:

### IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    The Bidding Procedures attached as <u>Exhibit 1</u> are fair, reasonable, and appropriate, and are designed to maximize the value to be achieved from the Sale.

B.    The Assumption and Assignment Procedures provided for herein are fair, reasonable, and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code.

C.    The Movants have articulated good and sufficient business reasons for this Court to approve:  (i) the Bidding Procedures, including all related deadlines, the Auction, and Sale Hearing with respect to the proposed Sale and the form and manner of notices related thereto; (ii) the establishment of procedures to assume and assign the Contracts and fix the Cure Amounts and the form and manner of notices related thereto; and (iii) the Debtors' authorization, in consultation with (a) the Committee and (b) PNC Bank, N.A. ("**PNC**," and together with the Committee, the "**Consultation Parties**"), to select a Stalking Horse Bidder and offer certain bid

---

[3]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

protections with the consent of the Consultation Parties, which bid shall be subject to higher or otherwise better offers as set forth in the Bidding Procedures.

D.     The form and manner of service of the Sale Notice attached as <u>Exhibit 2</u> hereto is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale, the Bidding Procedures, and the Assumption and Assignment Procedures to be employed in connection therewith, including, without limitation:  (i) the date, time, and place of the Auction (if held); (ii) the Bidding Procedures and the dates and deadlines related thereto; (iii) the objection deadline for the Sale and the date, time, and place of the Sale Hearing; (iv) the identification of the Company Assets to be sold, which is comprised of the Debtors' assets associated with their two brands, Eastern Mountain Sports ("**<u>EMS</u>**," and its assets, the "**<u>EMS Assets</u>**"); and Bob's Stores ("**<u>Bob's</u>**," and its assets, the "**<u>Bob's Assets</u>**"); and (v) representations describing the Sale as being free and clear of all liens, claims, interests, and other encumbrances (collectively, "**<u>Interests</u>**"), with all such Interests attaching with the same validity and priority to the proceeds of the Sale; and no other or further notice of the Sale shall be required.

E.     The Cure Notice attached hereto as <u>Exhibit 3</u> is appropriate and reasonably calculated to provide each non-debtor party to any Contracts (such parties, the "**<u>Non-Debtor Counterparties</u>**") with proper notice of the potential assumption and assignment of the applicable Contract, the proposed Cure Amount, and the Assumption and Assignment Procedures.  The inclusion of any particular contract or lease on a Cure Notice shall not be deemed to be an admission that such contract or lease is an executory contract or unexpired lease of property or require or guarantee that such contract or lease will be assumed and/or assigned, and all rights of the Debtors with respect to the foregoing are reserved.

F.    No further notice beyond that described in the foregoing paragraphs is required in connection with the Sale.

G.    The Movants have articulated good and sufficient business reasons for this Court to authorize the Committee and its proposed financial advisors, Emerald Capital Advisors ("**Emerald**"), to run the marketing and sale process with the Debtors' assistance using the Debtors' Confidential Information.[4]

H.    The entry of this Bidding Procedures Order is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The Motion is granted as set forth herein.

2.    All objections to the Motion or the relief provided herein, as they pertain to the entry of this Bidding Procedures Order, that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits.

**The Bidding Procedures**

3.    The Bidding Procedures are fully incorporated herein and approved in their entirety. All dates and deadlines set forth in the Bidding Procedures are hereby established, subject

---

[4]    As used herein, "**Confidential Information**" shall mean: any nonpublic information of the Debtors, including, without limitation, information concerning the Debtors' assets, liabilities, business operations, business practices, business plans, intellectual property and trade secrets, financial projections, financial and business analyses and compilations and studies relating to the foregoing and other documents prepared by the Debtors or their advisors or other agents. "Confidential Information" includes, without limitation: (i) any notes, summaries, compilations, presentations, memoranda, or similar written materials disclosing or discussing confidential information; (ii) any discussion or oral presentation of written confidential information, and (c) any other information conveyed orally that the Debtors or their advisors or other agents advise the Committee should be treated as confidential. Notwithstanding the foregoing, "Confidential Information" does not include any information that: (i) is or becomes generally available to the public or is or becomes available to the Committee on a non-confidential basis, is each case to the extent that such information becomes so available other than by a violation of a contractual, legal, or fiduciary obligation to the Debtors, or (ii) was in possession of the Committee prior to its disclosure by the Debtors and is not subject to any other duty or obligation to maintain confidentiality.

to the terms of the Bidding Procedures.  The Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the Sale under section 363 of the Bankruptcy Code.  The Debtors, in consultation with the Consultation Parties, are authorized to schedule the Auction in connection with the Bidding Procedures.

4.       In the event that any of the Debtors' directors, managing members, equity holders, parents or non-debtor affiliates, including, but not limited to, Roberts 50 USA, LLC, Bob's EMS Holdings LLC and GoDigital Media Group LLC or any of their respective affiliates (collectively, the "**Conflict Parties**") intend to present an Indication of Interest and/or make a Bid on the Company Assets of the Debtors, any decisions permitted to be made by the Debtors under this Bidding Procedures Order and the Bidding Procedures shall be made by David Barton without consulting with, or receiving the approval of, the Conflict Parties.  For the avoidance of doubt, in such case, the Conflict Parties shall only be provided with, and have access to, the information available, and provided, to other Potential Bidders, provided, however, that the Conflict Parties will still receive limited operating information to the extent necessary to provide the Debtors with back-office services that it cannot provide itself provided that such information will not provide a materially unfair advantage in the bidding process to the Conflict Parties. If the Conflict Parties affirmatively state that none of them intend to submit an Indication of Interest or Bid, then this paragraph shall be inapplicable.

## Assumption and Assignment Procedures

5.       The following Assumption and Assignment Procedures shall govern the assumption and assignment of the Contracts in connection with the Sale, and any objections related thereto:

     a.       The Debtors shall file with this Court and serve the Cure Notice on each Non-Debtor Counterparty to each of the Contracts on or before July 23, 2024 via

overnight mail or email, if available, to the notice parties listed in the applicable Contract, and any counsel of record in these Chapter 11 Cases.

b.      In the event that the Debtors identify any Non-Debtor Counterparties that were not served with the Cure Notice, the Debtors may subsequently serve (by overnight mail) such Non-Debtor Counterparty with a Cure Notice, and the following procedures will nevertheless apply to such Non-Debtor Counterparty; *provided*, *however*, absent further order of this Court, the Cure Objection Deadline (defined below) with respect to such Non-Debtor Counterparty shall be 4:00 p.m. (prevailing Eastern Time) on the date that is seven (7) days following service of the Cure Notice.

c.      The Cure Notice served on each Non-Debtor Counterparty shall:  (i) identify each Contract; (ii) list the Cure Amount the Debtors believe is required to be paid pursuant to the Bankruptcy Code in order to effectuate the assignment of the Contract; (iii) include a statement that the assumption and assignment of such Contract is neither required nor guaranteed; and (iv) inform such Non-Debtor Counterparty of the requirement to file any Cure Objections (defined below) by the Cure Objection Deadline (defined below).  Service of a Cure Notice does not (x) constitute, and shall not be deemed, an admission that a particular Contract is an executory contract or unexpired lease of property, or (y) confirm that the Debtors are required to assume and/or assign such Contract.

d.      Objections (a "**<u>Cure Objection</u>**"), if any, to a scheduled Cure Amount must: (x) be in writing; (y) state with specificity the nature of such objection, including the amount of Cure Amount in dispute; and (z) be filed with this Court and properly served on the Debtors, the Consultation Parties, and the Notice Parties so as to be received no later than **4:00 p.m. (prevailing Eastern Time) on July 30, 2024** (the "**<u>Cure Objection Deadline</u>**"), subject to subparagraph (b) above.

e.      Objections of any Non-Debtor Counterparty related solely to the identity of, and adequate assurance of future performance by, a Successful Bidder must (x) be in writing, (y) state with specificity the nature of such objection, and (z) be filed with this Court and properly served on the Debtors, the Consultation Parties, and the Notice Parties so as to be received no later than the Post-Auction Objection Deadline (defined below) unless otherwise ordered by this Court or agreed to by the Debtors and the Successful Bidder.

f.      Any Non-Debtor Counterparty to a Contract that fails to timely file and properly serve a Cure Objection or Post-Auction Objection, as provided herein, will:  (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Contract in the event it is assumed and/or assigned by the Debtors, and the Debtors and the assignee of the Contract shall be entitled to rely solely upon the Cure Amounts scheduled on the Cure Notice; and (ii) be deemed to have consented to the assumption, assignment, and/or transfer of such Contract (including the transfer of any related rights and benefits thereunder) to the assignee and shall be forever barred and estopped from objecting to the

assumption or assignment of such Contracts to the assignee or asserting or claiming against the Debtors or the assignee that any additional pre-assignment amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied under such Contract, that any related right or benefit under such Contract cannot or will not be available to the assignee, or that the assignee failed to provide such Non-Debtor Counterparty with adequate assurance of future performance.

g.  If a Non-Debtor Counterparty files an objection satisfying the requirements of these Assumption and Assignment Procedures that is not consensually resolved by the Sale Hearing, such unresolved objection shall not be considered at the Sale Hearing; and instead shall be considered at a subsequent hearing on at least seven (7) days' notice to the applicable Non-Debtor Counterparty, *provided*, *however*, any Contract that is the subject of a Cure Objection with respect solely to the amount of the Cure Amount may be assumed and assigned prior to resolution of such objection, so long as the Debtors or assignee, as applicable, (i) pay any undisputed Cure Amount on or about the date the Sale is consummated and (ii) appropriately reserve funding for the disputed portion of the Cure Amount pending resolution of the dispute.

h.  The Debtors' assumption and/or assignment of a Contract is subject to approval by this Court and consummation of the Sale.  Absent entry of a Sale Order approving the assumption and/or assignment of the Contracts and consummation of the Sale, the Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

i.  The Debtors may only assume and assign contracts and non-residential real property leases to the extent such are deemed executory contracts and unexpired leases under section 365 of the Bankruptcy Code.

**Notice Procedures**

6.    The Sale Notice in the form attached hereto as <u>Exhibit 2</u> is approved, and the Debtors are authorized to make non-substantive or immaterial changes to the Sale Notice or to fill in missing information, in each case to the extent not inconsistent with this Bidding Procedures Order, prior to service of the Sale Notice.

7.    One business day after entry of this Bidding Procedures Order, the Debtors will (i) serve the Sale Notice on the (a) all entities known to have expressed a bona fide interest in a transaction with respect to the Company Assets or component thereof; (b) all entities known to have asserted any lien, claim, or encumbrance in or upon any assets comprising the Company

Assets; (c) all federal, state, and local environmental, regulatory, or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (d) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to a Successful Bidder; (e) the Office of the United States Trustee for the District of Delaware; (f) all taxing authorities having jurisdiction over any of the Company Assets, including the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Offices of the United States Attorney for the District of Delaware; (i) the Conflict Parties; and (j) all persons and entities that have filed a request for service of filings in these chapter 11 cases pursuant to Bankruptcy Rule 2002 (collectively, the "**Sale Notice Parties**") and (ii) cause a form of the Sale Notice and the Bidding Procedures Order to be posted on the Debtors' website maintained by Epiq Corporate Restructuring, LLC ("**Epiq**"), the Debtors' claims and noticing agent.

8.      No other or further notice of the Sale, the Auction, the Sale Hearing, or the Sale Objection Deadline shall be required.  Service of the Sale Notice as set forth herein is deemed to satisfy the notice requirements under Bankruptcy Rules 2002, 6004, and 6006, as well as Local Rule 6004-1, and to otherwise comply in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

9.      The Debtors shall file a notice on this Court's docket identifying the Successful Bidder and any Backup Bidder by **12:00 noon (prevailing Eastern Time) on August 23, 2024**.

10.     The form of Cure Notice attached hereto as <u>Exhibit 3</u> and the Assumption and Assignment Procedures set forth herein are approved and are deemed to be sufficient to provide effective notice to the Non-Debtor Counterparties of the Debtors' intent to potentially assume and assign some or all of the Contracts and the Debtors' proposed Cure Amounts.  Such notice is deemed to satisfy the notice requirements under Bankruptcy Rules 2002, 6004, and 6006, as well

as Local Rule 6004-1, and to otherwise comply in all respects with applicable provisions of the

Bankruptcy Code, Bankruptcy Rules, and Local Rules.

**Sale Process Termination**

11.      Indication of Interest Deadline.  As further described in the Bidding Procedures,

the Indication of Interest Deadline (as defined in the Bidding Procedures) is **4:00 p.m. (prevailing**

**Eastern Time) on August 2, 2024**.

12.      By the Indication of Interest Deadline, the Debtors must receive at least one binding

Indication of Interest that (any such Indication of Interest, a "**Qualified IOI**"):  (i) provides for

consideration for the applicable Company Assets in excess of the projected liquidation value of

the Company Assets as reasonably agreed upon by the Debtors, the Committee and PNC (the

"**Liquidation Value**") and (ii) meets the requirements for a Qualified Bid, but may submit a

binding term sheet in lieu of an asset purchase agreement.

13.      Going Concern Sale Process Termination Date.  If the Debtors do not receive a

Qualified IOI by the Indication of Interest Deadline, the sale process contemplated by this Bidding

Procedures Order shall terminate (the "**Going Concern Sale Process Termination**").  Upon the

Going Concern Sale Process Termination, the Debtors shall seek entry of a final order granting the

*Debtors' Motion for Entry of an Interim and Final Order (a) Authorizing the Debtors to Enter Into*

*the Disposition Agreement; (b) Authorizing and Approving the Sale of Inventory and Other Assets*

*Free and Clear of All Liens, Claims, and Encumbrances; (c) Scheduling Final Hearing and*

*(d) Granting Related Relief* [D.I. 55] (the "**Disposition Motion**") and authorizing going-out-of-

business sales at all of the Debtors' locations.

14.      Bob's Sale Process Termination Date.  If the Debtors receive Qualified IOIs by the

Indication of Interest Deadline and none of the Qualified IOIs contemplate the purchase of the

Bob's Assets, the sale process contemplated by this Bidding Procedures Order shall terminate as to Bob's Assets (the "**Bob's Sale Process Termination**").  Upon the Bob's Sale Process Termination, the Debtors shall continue their full liquidation of Bob's Assets, pursuant to the order granting the Disposition Motion.

### Auction, Hearing regarding Title to Certain Assets, and Sale Hearing

15.    Bid Deadline.  As further described in the Bidding Procedures, the deadline for Bids is **4:00 p.m. (prevailing Eastern Time) on August 20, 2024**.  No Bid shall be deemed to be a Qualified Bid unless such Bid meets the requirements set forth in the Bidding Procedures.

16.    PNC Credit Bid.  PNC shall be entitled to make a credit bid (a "**Credit Bid**") in accordance with section 363(k) of the Bankruptcy Code at any Auction for Assets comprising PNC's collateral, absent further order of this Court. PNC shall be deemed a Qualified Bidder and any Credit Bid it submits in compliance with the Bidding Procedures shall be deemed a Qualified Bid.

17.    Sale Objection Deadline. Subject to paragraph 25, the Sale Objection Deadline is **4:00 p.m. (prevailing Eastern Time) on August 6, 2024**. For the sake of clarity, any party claiming an interest in any of the Debtors' intellectual property, customer lists and data, inventory, or other Asset shall file a Sale Objection by the Sale Objection Deadline, and attach as an exhibit any evidence of such interest in the Assets, or shall otherwise be barred and estopped from asserting (a) any interest in, disputing that the Debtors hold exclusive title to, such Assets and (b) that the Debtors have the ability to transfer such Assets free and clear of the claims or interests without the consent of any party (other than PNC as secured party with respect to such Assets, as applicable) (such Sale Objection, a "**Title Objection**"); provided, however, that PNC shall not be required to file a Title Objection to assert its security interest in and lien on such Assets. A Sale

Objection must be filed with this Court and served in the manner set forth below so as to be actually received no later than the Sale Objection Deadline.

18.      Title Objection Hearing. The hearing to resolve Title Objections shall take place on August 8, 2024 at 10:30 a.m. (prevailing Eastern Time) (the "**Title Objection Hearing**"). At the Title Objection Hearing, the Debtors, together with PNC and the Committee, will seek a determination that no party holds any interest in any of the Debtors' intellectual property, customer lists and data, inventory, or other Asset (other than PNC as secured party with respect to such Assets, as applicable).

19.      Auction; Cancellation of Auction.  Depending on the Bids received in accordance with the Bidding Procedures, the Debtors may conduct an Auction for the proposed Sale.  If at least one Qualified Bid is received in accordance with the Bidding Procedures with regard to the Company Assets or component thereof, the Debtors shall be permitted to hold the Auction in accordance with the Bidding Procedures, which shall take place on **August 22, 2024 at 10:00 a.m. (prevailing Eastern Time),** at such place, including by remote video, as the Debtors shall designate, in consultation with the Consultation Parties.  In the event that the Debtors, in consultation with the Consultation Parties, designate a later time or place for the Auction, they shall (i) notify all Qualified Bidders (as defined in the Bidding Procedures) who have submitted Qualified Bids, and (ii) file notice of such change with this Court.  Only (a) Qualified Bidders (including the Stalking Horse Bidder, if any) and their legal and financial advisors, (b) the Consultation Parties, and (c) actual creditors of the Debtors (provided that they give at least 48 hours' notice to the Debtors' counsel and Committee's counsel of their intention to attend an Auction via email to (i) Goldstein & McClintock LLLP, Attn: Maria Aprile Sawczuk (marias@goldmclaw); and Matt McClintock (mattm@goldmclaw.com) and (ii) Lowenstein

Sandler LLP, Attn: Jeffrey Cohen (jcohen@lowenstein.com), Brent Weisenberg (bweisenberg@lowenstein.com), and Erica Mannix (emannix@lowenstein.com), shall be entitled to attend an Auction.

20.    In the event that (i) the Debtors, in consultation with the Consultation Parties, designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement, if no Qualified Bids other than the Stalking Horse Bid are received in accordance with the Bidding Procedures, or (ii) in the absence of a Stalking Horse Bidder, only one Qualified Bid is received, then the Debtors may decide, in the Debtors' reasonable business judgment and in consultation with the Consultation Parties, to cancel the Auction and designate the Stalking Horse Bid or Qualified Bid as the Successful Bid (as defined in the Bidding Procedures) and pursue entry of an order approving a Sale to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement.

21.    If the Auction is cancelled, the Debtors shall promptly file a notice cancelling the Auction and designating the Stalking Horse Bid or Qualified Bid as the Successful Bid, if applicable, no later than August 23, 2024 at 12:00 noon (ET).

22.    Each Qualified Bidder participating in the Auction will be required to confirm on the record at the Auction, that (i) it has not engaged in any collusion with respect to the Bidding Procedures and the Auction, (ii) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder or Backup Bidder, and (iii) the Qualified Bidder agrees to serve as the Backup Bidder if its Qualified Bid is the next highest or otherwise best bid after the Successful Bid.

23.    Notice for Non-Debtor Counterparties.  As soon as reasonably practicable after closing the Auction, if any, and in any event not more than one business day following closing the Auction and no later than 12:00 noon (ET) on August 23, 2024, the Debtors shall cause a notice

of Successful Bid and Successful Bidder, and the Qualified Bid Documents for the Successful Bid and Backup Bid to be filed with the Court.

24.    <u>Sale Order.</u>  The Debtors shall file the form of proposed Sale Order with the Court no later than August 23, 2024 at 4:00 p.m. (ET).

25.    <u>Post-Auction Objection Deadline</u>.  The deadline to object only to (i) the conduct at the Auction (if held); (ii) the form of Sale Order; or (iii) solely with respect to the Non-Debtor Counterparties to the Contracts, to the specific identity of and adequate assurance of future performance provided by the Successful Bidder (only if such Successful Bidder is not a Stalking Horse Bidder) (such a limited objection, a "**<u>Post-Auction Objection</u>**") is **4:00 p.m. (prevailing Eastern Time) on August 27, 2024** (the deadline, the "**<u>Post-Auction Objection Deadline</u>**").

26.    <u>Sale Hearing</u>.  The Sale Hearing shall take place on **August 29, 2024 at 10:30 a.m. (prevailing Eastern Time)**.  At the Sale Hearing, the Debtors will seek the entry of the Sale Order approving and authorizing the Sale to the Successful Bidder.  The Sale Hearing (or any portion thereof) may be adjourned by this Court or the Debtors, in consultation with the Consultation Parties, from time to time without further notice other than by announcement in open court or through the filing of a notice or other document on this Court's docket.

## **<u>Objection Procedures</u>**

27.    Any party that seeks to object to the proposed Sale or related relief must file a formal written objection that complies with the objection procedures set forth herein.

28.    Objections, if any, must be: (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (v) be filed with this Court; and (vi) served on the Debtors, the

Committee, and the Notice Parties, in each case so as to be received no later than the Sale Objection Deadline, Cure Objection Deadline, or the applicable Post-Auction Objection Deadline (collectively, the "**Deadlines**"), as applicable.

29.     Failure to file an objection on or before the applicable Deadline (i) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and/or to the consummation and performance of the Sale with a Successful Bidder, and (ii) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale related thereto free and clear of any interest in the Company Assets or component thereof as contemplated by the Sale.

**Approval of Designation of Stalking Horse Bidder, Bid Protections and Backup Bidder**

30.     Pursuant to the Bidding Procedures, the Debtors, in consultation with the Consultation Parties, are authorized, but not directed, to select a bidder to act as the Stalking Horse Bidder for the Company Assets, or any component thereof, and enter into a Stalking Horse Agreement with the Stalking Horse Bidder so selected.

31.     In the event that the Debtors enter into a Stalking Horse Agreement, within one (1) business day of entering into such agreement, the Debtors shall file with the Court and serve on the Sale Notice Parties, a notice (the "**Stalking Horse Notice**") which shall include, among other things: (i) the identification of the Stalking Horse Bidder; (ii) a copy of the Stalking Horse Agreement; (iii) the amount of the deposit paid by the Stalking Horse Bidder and (iv) if Bid Protections (defined below) are included in the Stalking Horse Agreement, the additional documents and information required by paragraph 33.

32.     The Debtors are authorized, in connection with a Stalking Horse Agreement, to offer bid protections to a Stalking Horse Bidder with the consent of the Consultation Parties.

Absent further order of the Court, any Stalking Horse Agreement shall limit a (i) Break-Up Fee of up to an aggregate of three percent (3%) of the total cash consideration offered for any Stalking Horse Bid and (b) Expense Reimbursement (together, the Break-Up Fee and the Expense Reimbursement shall be referred to as the "**Bid Protections**") actually incurred by a Stalking Horse Bidder in connection with its bid, not to exceed $50,000; *provided, however*, that no Break-Up Fee or Expense Reimbursement in any amount are being approved herein and any such approval shall be subject to further order of this Court as set forth herein.

33.     Notwithstanding anything in the Bidding Procedures or the Bidding Procedures Order to the contrary, to the extent the Debtors, with the consent of the Consultation Parties, determine to offer Bid Protections to any Stalking Horse Bidder, the Debtors shall disclose such Bid Protections in the Stalking Horse Notice.  The Stalking Horse Bidder Notice, if filed, shall include an appropriate declaration in support of the proposed Bid Protections (the "**Bid Protections Declaration**") and a proposed form of order approving the Bid Protections (the "**Bid Protections Order**").  Any objection to (i) the Bid Protections set forth in the Stalking Horse Notice and Bid Protections Declaration or (ii) the form of the Bid Protections Order (a "**Bid Protections Objection**") shall be filed no later than three days after the Bid Protections Declaration is filed.  The Stalking Horse Notice and Bid Protections Declaration shall set forth the reasons the Debtors believe the Bid Protections satisfy the requirements of section 503(b) of the Bankruptcy Code.  For the avoidance of doubt, nothing in the Bidding Procedures Order is shifting the Debtors' burden of proof that the Bid Protections are actually necessary to preserve the value of the estates pursuant to section 503(b) of the Bankruptcy Code.  If a timely Bid Protections Objection is filed, the Debtors will schedule a hearing in consultation with any objecting parties, the Consultation Parties, and the Court.  Absent any timely Bid Protections Objection, the Court

may enter the Bid Protections Order without further hearing.

34.     Any Bid Protections incurred by the Debtors will be payable to the Stalking Horse Bidder, in the event the Stalking Horse Bidder is not a successful bidder, solely from the proceeds of the cash portion of the purchase price of the successful bid upon Closing.

## Authorization of the Sale Process Run by the Committee

35.     The Committee, through Emerald, shall be authorized to conduct the process to market the Debtors' assets for a going concern sale through and including Sale Closing Deadline in accordance with the Bidding Procedures.  In connection therewith, the Debtors will provide Emerald with reasonable access to the data room and any and all documents that Emerald believes are relevant to such going concern sale process and, in general, cooperate with the Committee's efforts and due diligence requests by interested parties.

36.     The Committee and its professionals (in addition to the Debtors and their professionals) shall be authorized and permitted to disseminate Confidential Information to third parties potentially interested in purchasing any or all of the Company Assets, subject to the terms and conditions below.

37.     Before the Committee or its professionals may disseminate Confidential Information to any third parties for the purpose of soliciting bids, the Committee shall provide the Debtors with one business days' notice of its intention to disseminate such information in such notice, the Committee shall set forth the identity of the intended recipient and the general categories of information to be supplied to such recipient, together with a copy of a confidentiality agreement executed by such recipient.

38.     Unless the Committee receives a written objection from the Debtors (which may be made via e-mailed correspondence) to the notice of intention to supply Confidential

Information, including the basis for any such objection, the Committee shall be authorized to proceed with the dissemination of such confidentiality agreement to interested third parties.

39.    If the Committee receives a written objection, the Committee and the Debtors shall endeavor in good faith to resolve any disputed issues.  If unsuccessful, the matter shall be presented jointly by the parties to the Court on an expedited basis.  No Confidential Information shall be provided to a third-party pending resolution of the objection either consensually or by order of the Court.

40.    The Committee's advisors shall be permitted and authorized to participate in all aspects of the sale process, including, but not limited to: (i) all in-person and telephonic meetings with management, including management presentations, receive copies of any written materials provided in connection with the same and be provided with reasonable access to management in connection with the Committees' and Debtors' sale process, (ii) receive all correspondence from potential bidders within one business day of receipt by the Debtors or their advisors, (iii) participate in bi-weekly sale process update calls with the Debtors or their advisors, (iv) receive bi-weekly, written updates from the Debtors or their advisors concerning potential bidders contacted and the status of each contact, and (v) receive bi-weekly data-room statistics, to the extent available, as reasonably requested by the Committee's advisors.

## Other Relief Granted

41.    Absent a subsequent order of this Court to the contrary, this Bidding Procedures Order shall be binding in all respects upon any trustees, examiners, "responsible persons," or other fiduciaries appointed in the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code.

42.    Nothing herein shall be deemed to or constitute the assumption, assignment, assumption and assignment, or rejection of any executory contract or unexpired lease.

43.    Notwithstanding any provision in the Bankruptcy Rules to the contrary, the stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Bidding Procedures Order shall be effective immediately and enforceable upon its entry.

44.    Notwithstanding anything to the contrary in this Bidding Procedures Order, the Bidding Procedures, or the Assumption and Assignment Procedures, the Debtors, with the consent of the Consultation Parties, may extend or seek an extension from this Court, the deadlines set forth in this Bidding Procedures Order or the Bidding Procedures, including, but not limited to, the Bid Deadline (as this term is defined in the Bidding Procedures).

45.    All persons or entities (whether or not a Qualified Bidder) that participate in the bidding process will be deemed to have knowingly and voluntarily (i) consented to the entry of a final order by this Court in connection with the Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (ii) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

46.    In the event of any conflict between this Bidding Procedures Order and the Motion and/or the Bidding Procedures, this Bidding Procedures Order shall govern in all respects.

47.    This Court shall retain exclusive jurisdiction over any matters related to or arising from the implementation, interpretation, and enforcement of this Bidding Procedures Order.

**Dated: July 23rd, 2024**
**Wilmington, Delaware**

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**