# **Exhibit 1**

## Bidding Procedures

**BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF MOUNTAIN SPORTS LLC., ET AL.**

On June 18, 2024, Mountain Sports LLC and certain of its affiliates (collectively, the "**Debtors**" or the "**Company**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

On July [●], 2024, the Court entered the *Order (I) Approving Bidding Procedures For The Sale Of The Debtors' Assets, (II) Approving The Form And Manner Of Notice Of The Sale And Bid Deadlines, (III) Authorizing The Debtors To Select A Stalking Horse Bidder And Enter Into A Purchase Agreement With Such Bidder Providing For Certain Bid Protections, (IV) Approving (A) Procedures For The Assumption And Assignment Of Executory Contracts And Unexpired Leases And (B) The Form And Manner Of Notice Thereof, (V) Scheduling The Auction And The Hearing To Consider Approval Of The Sale, (VI) Authorizing The Committee To Run The Sale Process With The Debtors' Assistance And (VII) Granting Related Relief* [D.I. [●]] (the "**Bidding Procedures Order**"), which authorized and/or approved, among other things, (a) procedures pursuant to which the Committee of Unsecured Creditors (the "**Committee**") is authorized to solicit and pursue (such procedures, the "**Bidding Procedures**") a sale of all or substantially all of the Debtors' assets (the "**Company Assets**") or component thereof under section 363 of the Bankruptcy Code (the "**Sale**"), with the Debtors' assistance, (b) the scheduling of a hearing to approve the Sale of the applicable Company Assets, free and clear of any liens, claims, and other encumbrances (collectively, the "**Interests**") under section 363 of the Bankruptcy Code, and (c) procedures in connection with the assumption and assignment of any executory contracts or unexpired leases the Debtors seek to have assumed and assigned in connection with a Sale. ***All interested bidders should carefully read the Bidding Procedures Order and these Bidding Procedures in their entirety***.[1]

## I. OVERVIEW

These Bidding Procedures set forth the process by which the Committee is authorized to conduct a marketing process with the assistance of the Debtors, and if necessary, an auction (an "**Auction**"), for the Sale. The Company's business operates under two brands: Eastern Mountain Sports ("**EMS**"); and Bob's Stores ("**Bob's**"), each as further described in the First Day Declaration. The Company will consider bids for the purchase of all or substantially all of the

---

[1] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order or the *Motion By The Debtors And The Official Committee Of Unsecured Creditors For Orders (I) (A) Approving Bidding Procedures For The Sale Of The Debtors' Assets, (B) Approving The Form And Manner Of Notice Of The Sale And Bid Deadlines, (C) Authorizing The Debtors To Select A Stalking Horse Bidder And Enter Into A Purchase Agreement With Such Bidder Providing For Certain Bid Protections, (D) Approving (1) Procedures For The Assumption And Assignment Of Executory Contracts And Unexpired Leases And (2) The Form And Manner Of Notice Thereof, (E) Scheduling The Auction And The Hearing To Consider Approval Of The Sale, (F) Authorizing The Committee To Run The Sale Process With The Debtors' Assistance And (G) Granting Related Relief And (II) (A) Approving The Sale Of The Assets, Free And Clear Of All Interests, (B) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases And (C) Granting Related Relief* [D.I. [●]] (the "**Motion**"), as applicable.

Company Assets or component thereof (a "**Bid**"), including the assets associated with EMS (the "**EMS Assets**") or the assets associated with Bob's (the "**Bob's Assets**").

The Debtors reserve the right to modify these Bidding Procedures, in consultation with the Committee and the Debtors' prepetition lender, PNC Bank, N.A. ("**PNC**," and together with the Committee, the "**Consultation Parties**"), including without limitation, to modify the requirements set forth herein or impose additional terms and conditions at any time to the extent they determine, in their reasonable business judgment, that doing so will best promote the goals of the bidding process, including during an Auction. For the avoidance of doubt, the Debtors shall not extend the Indication of Interest Deadline without consent from the Consultation Parties.

## II.     KEY SALES PROCESS DATES

The Debtors and Committee shall assist interested parties in conducting their respective due diligence investigations and the Debtors shall accept (i) non-binding indications of interest (an "**Indication of Interest**") on or before **August 2, 2024, at 4:00 p.m. (prevailing Eastern Time)** (as may be extended by the Debtors in their reasonable business judgment and only with the consent of the Consultation Parties) (the "**Indication of Interest Deadline**"), and (ii) Bids until **August 20, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**").

By the Indication of Interest Deadline, the Debtors must receive at least one binding Indication of Interest that (any such Indication of Interest, a "**Qualified IOI**"): (i) provides for consideration for the applicable Company Assets in excess of the projected liquidation value of the Assets as reasonably agreed upon by the Debtors, the Committee and PNC (the "**Liquidation Value**"); and (ii) meets the requirements for a Qualified Bid, but may submit a binding term sheet in lieu of an asset purchase agreement.

**IF THE DEBTORS DO NOT RECEIVE A QUALIFIED IOI BY THE INDICATION OF INTEREST DEADLINE, THE SALE PROCESS CONTEMPLATED BY THESE BIDDING PROCEDURES SHALL TERMINATE (THE "GOING CONCERN SALE PROCESS TERMINATION"). UPON THE GOING CONCERN SALE PROCESS TERMINATION, THE DEBTORS SHALL SEEK ENTRY OF A FINAL ORDER GRANTING THE *DEBTORS' MOTION FOR ENTRY OF AN INTERIM AND FINAL ORDER (A) AUTHORIZING THE DEBTORS TO ENTER INTO THE DISPOSITION AGREEMENT; (B) AUTHORIZING AND APPROVING THE SALE OF INVENTORY AND OTHER ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES; (C) SCHEDULING FINAL HEARING AND (D) GRANTING RELATED RELIEF* [D.I. 55] AND AUTHORIZING GOING-OUT-OF-BUSINESS SALES AT ALL OF THE DEBTORS' LOCATIONS.**

**IF THE DEBTORS RECEIVE QUALIFIED IOIS BY THE INDICATION OF INTEREST DEADLINE AND NONE OF THE QUALIFIED IOIS CONTEMPLATE THE PURCHASE OF THE BOB'S ASSETS, THE SALE PROCESS CONTEMPLATED BY THIS BIDDING PROCEDURES ORDER SHALL TERMINATE AS TO BOB'S ASSETS (THE "BOB'S SALE PROCESS TERMINATION"). UPON THE BOB'S SALE PROCESS TERMINATION, THE DEBTORS SHALL CONTINUE THEIR FULL LIQUIDATION OF BOB'S ASSETS.**

The other key dates for the marketing process are as follows:

| Event or Deadline | Date and Time[2] |
|---|---|
| Bidding Procedures Hearing | July 22, 2024 at 10:30 a.m. (prevailing Eastern Time) |
| Service and Publication of Sale Notice | 1 business day after entry of Bidding Procedures Order |
| Debtors' Deadline to File and Serve Cure Notices | July 23, 2024 at 4:00 p.m. (prevailing Eastern Time) |
| Cure Objection Deadline | July 30, 2024 at 4:00 p.m. (prevailing Eastern Time) |
| Indication of Interest Deadline | August 2, 2024 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline (including Title Objections) | August 6, 2024 at 4:00 p.m. (prevailing Eastern Time) |
| Title Objection Hearing | August 8, 2024 at 10:30 a.m. (prevailing Eastern Time) |
| Deadline to Designate Stalking Horse Bid | August 9, 2024 |
| Debtors' Deadline to File Stalking Horse Notice (if necessary) | 1 business day after entering into such agreement |
| Bid Deadline | August 20, 2024 at 4:00 p.m. (prevailing Eastern Time) |
| Determination of Qualified Bids | August 21, 2024 |
| Auction (if necessary) | August 22, 2024 at 10:00 a.m. (prevailing Eastern Time) at a place, including via remote video, to be announced.[3] |
| Identification of Successful Bidder and Backup Bidder, if any | August 23, 3024 at 12:00 noon (prevailing Eastern Time) |
| Post-Auction Objection Deadline | August 27, 2024 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing | August 29, 2024 at 10:30 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |
| Sale Closing Deadline | August 30, 2024 |

## III. PUBLIC ANNOUNCEMENT OF AUCTION

As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall: (a) serve on the Sale Notice Parties a notice of the Auction and Sale (the "**Sale Notice**") and (b) post the Sale Notice on Epiq's restructuring website, https://dm.epiq11.com/case/mtq.

---

[2] All dates and deadlines are subject to modification as may be agreed upon by the Debtors, the Committee and PNC.

[3] If the Debtors decide to hold a live, in-person Auction, Qualified Bidders shall be able to submit Bids remotely.

## IV. **BIDDING PROCESS**

These Bidding Procedures set forth the terms by which prospective bidders may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer for all or a portion of the Company Assets. The Debtors, in consultation with their advisors and the Consultation Parties, will consider any Bid for all or a portion of the Company Assets that provides consideration exceeding the Liquidation Value (defined below).

### A. **Potential Bidders**

To participate in the bidding process under these Bidding Procedures, an entity interested in consummating the Sale must deliver the following to the Debtors and Committee (any such entity, a "**Potential Bidder**"):

(a) an executed confidentiality agreement on terms reasonably acceptable to the Debtors (a "**Confidentiality Agreement**"); and

(b) any other evidence the Debtors may reasonably request to evaluate the entity's fitness to participate in the bidding process or ability to timely acquire the Company Assets.

### B. **Binding Indications of Interest**

As set forth above, the Debtors must receive a Qualified IOI by the Indication of Interest Deadline or a Going Concern Sale Process Termination will occur. If none of the Qualified IOIs received by the Indication of Interest Deadline contemplate the purchase of the Bob's Assets, then a Bob's Sale Process Termination will occur. The Indication of Interest must be submitted in accordance with the following requirements:

(a) Delivery of Indication of Interest. The Indication of Interest must be addressed and delivered in writing via email by no later than the Indication of Interest Deadline, and directed to:

(i) the Debtors at:

1. Silverman Consulting LLC, Attn: Hassaan Mansoor (hmansoor@silvermanconsulting.net) and Greg Schmitt (gschmitt@silvermanconsulting.net); and

2. Goldstein & McClintock LLLP, Attn: Maria Aprile Sawczuk (marias@goldmclaw); and Matt McClintock (mattm@goldmclaw.com); and

(ii) the Committee at:

1. Lowenstein Sandler LLP, Attn: Jeffrey Cohen (jcohen@lowenstein.com), Brent Weisenberg (bweisenberg@lowenstein.com), and Erica Mannix (emannix@lowenstein.com); and

    2. Emerald Capital Advisors, Attn: John Madden (jpm@emeraldcapitaladvisors.com), Christopher Saitta (csaitta@emeraldcapitaladvisors.com), and Daniel Pace (dpace@emeraldcapitaladvisors.com) (an email to such email addresses, an "**Email Notice**").

(b) Scope of Potential Transaction. The Indication of Interest must include a description of the Company Assets which the Potential Bidder seeks to acquire.

(c) Valuation. The Indication of Interest must indicate the proposed consideration that the Potential Bidder is prepared to provide for the applicable Company Assets, which must exceed the Liquidation Value.

(d) Financing. The Indication of Interest should include a detailed description of the intended sources and uses of funds that the Potential Bidder's contemplates needing to close the Sale.

(e) Identity & Credit Worthiness. To the extent known by the Potential Bidder, the Indication of Interest must include the identity (including full legal name) of any entity proposed to acquire the Company Assets or provide consideration to the Debtors pursuant to the Sale and a description of such entity's jurisdiction, form of organization and affiliates, ultimate ownership, and financial capacity. If the identity of such entity is not known by the Potential Bidder or such entity does not have the creditworthiness on its own to fully fund the contemplated transaction, the Indication of Interest should specify whether the Potential Bidder is willing to provide guarantees of such entity's commitments in connection with a potential transaction from creditworthy entities.

(f) Approvals. The Indication of Interest must specify any approvals that would be required to execute a definitive agreement governing the Sale, including any internal approvals and any external approvals, including governmental or regulatory approvals (excluding, for the avoidance of doubt, any Bankruptcy Court approvals).

(g) Due Diligence Requirements. The Indication of Interest must describe in reasonable detail the nature, timing, and extent of the key areas and specific matters needed to complete the Potential Bidder's due diligence review and any additional information, including any specific concerns, that the Potential Bidder would need to be addressed in order to submit a final binding proposal and finalize a definitive agreement governing the Sale. The Indication of Interest must also include any material assumptions, terms, conditions, or open due diligence points that may impact the Potential Bidder's view on valuation upon which the Indication of Interest is based, whether business, operational, financial, tax, or otherwise.

(h) Contacts. The Indication of Interest must include contact details (including names, telephone numbers, and email addresses) of the individuals who will be prepared to discuss and answer any questions of the Debtors regarding the Indication of Interest.

Note that submitting an Indication of Interest by the Indication of Interest Deadline does not obligate the submitting party to submit a formal bid or to participate in the sale process and does not exempt the submitting party from also having to submit a Qualified Bid by the Bid Deadlines to participate in an Auction, each as defined below.

**C. Stalking Horse Bidder**

Subject to the terms and conditions of the Bidding Procedures Order, the Debtors are authorized, in consultation with the Consultation Parties, but not obligated, in an exercise of their business judgment, to (a) select a bidder to act as Stalking Horse Bidder and enter into a Stalking Horse Agreement with the Stalking Horse Bidder so selected and (b) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder, provide bid protections with the consent of the Consultation Parties (as defined below) (the "**Bid Protections**").

No later than one (1) business day after the selection of a Stalking Horse Bidder, the Debtors shall file a notice with the Court of such selection that includes a copy of the Stalking Horse Agreement.

**D. Due Diligence**

Only Potential Bidders shall be eligible to receive due diligence information and access to the Debtors' electronic data room (the "**Data Room**") and to receive additional non-public information regarding the Debtors. Only Potential Bidders that enter into a Confidentiality Agreement with the Debtors will be permitted to conduct any due diligence that includes confidential information. The Committee and its advisors will use commercially reasonable efforts to provide due diligence information to any such Potential Bidder, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall: (i) provide the Committee with such confidential information upon request; and (ii) post confidential information concerning the Company Assets to the Debtors' electronic data room which will be made available to Potential Bidders. Unless extended by the Debtors in their reasonable business judgment and in consultation with the Consultation Parties, each Potential Bidder's due diligence period will end on the Bid Deadline, after which the Debtors and the Committee shall have no obligation to furnish any due diligence information.

The Debtors and Committee need not furnish any confidential information relating to the Company Assets, liabilities of the Debtors, or any other information to any person or entity except to a Potential Bidder or to such Potential Bidder's duly authorized representatives to the extent provided in the applicable Confidentiality Agreement and requested by such Potential Bidder. The Committee and its advisors, and the Debtors and their advisors, shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided*, that the Committee, in consultation with the Debtors and PNC, may decline to provide (or elect to withdraw access to) due diligence information to any Potential Bidder who, at such time has not established (or there is otherwise a reasonable basis to doubt) that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale. The Committee shall promptly notify a Potential Bidder, and the United States Trustee, of the Committee's determination that the Potential Bidder is not proceeding in good faith to, or lacks the capacity to, consummate the Sale.

In consultation with the Debtors and PNC, the Committee also reserves the right to withhold any diligence materials that the Committee determines are sensitive or otherwise not appropriate for disclosure to a Potential Bidder, including a Potential Bidder the Committee, with the assistance of the Debtors, determines is (or is affiliated with) a competitor or supplier of the Debtors, or is otherwise an entity to which the disclosure of sensitive or competitive information, may risk unduly placing the Debtors at a competitive disadvantage or subject them to regulatory scrutiny. Neither the Committee, Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any entity that is not determined to be a Potential Bidder.

***All due diligence requests are to be sent to the Committee through Email Notice.***

1. Communications with Potential Bidders

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive communications related to Bids or any Sale relating to the Debtors between or amongst Potential Bidders shall be conducted exclusively through the Committee and its advisors. Communications between and amongst Potential Bidders relating to the Debtors or these Bidding Procedures is expressly prohibited unless the Committee, in consultation with the Debtor and PNC, expressly consents in writing to such communication; *provided*, that if such consent is given, a representative of the Committee shall be present for or party to any such communications (unless otherwise agreed by the Committee in its sole discretion, in consultation with Debtor and PNC).

2. Due Diligence of Potential Bidders

Each Potential Bidder shall comply with any reasonable requests of the Committee or their advisors for additional information or due diligence access regarding qualification as a Potential Bidder or Qualified Bidder, the terms of the Potential Bidder's Bid, or the ability of the Potential Bidder to acquire the Company Assets. Failure by a Potential Bidder to comply with such reasonable requests may be a basis for the Committee, in consultation with the Debtors and PNC, to determine that such bidder is no longer a Potential Bidder or that any bid made by such Potential Bidder is not a Qualified Bid (a "**Non-Qualifying Bid**").

The (i) Debtors and each of their respective advisors and representatives and (ii) Committee and its advisors shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the Chapter 11 Cases, in each case in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable confidentiality agreement, the Committee, its advisors, the Debtors and the Debtors' advisors may disclose confidential information: (i) with the prior written consent of such Potential Bidder; (ii) to the applicable Potential Bidder; (iii) in accordance with these Bidding Procedures; and (iv) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular Potential Bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies. For the avoidance of doubt, the

Debtors and the Committee will consult with and provide copies of any Bids or confidential information to PNC unless and until PNC submits a Credit Bid.

***The Committee and Debtors encourage all Potential Bidders interested in participating in these marketing processes to promptly notify the Committee and Debtors and each of their advisors of such interest. Such Potential Bidders should describe, in as much specificity and as soon as practically feasible, the scope of Company Assets that are envisioned to be encompassed by any Indication of Interest or Bid that such Potential Bidders expect to submit.***

**E. Qualified Bidders**

1. A "**Qualified Bidder**" is a Potential Bidder who satisfies the following requirements (unless waived by the Debtors in their reasonable business judgment and in consultation with the Consultation Parties): (a) the Potential Bidder has demonstrated the financial capability to consummate the Sale (as determined by the Debtors in consultation with the Consultation Parties); (b) the Potential Bidder's Bid is a Qualified Bid; and (c) the Debtors, in consultation with the Consultation Parties, have determined the Potential Bidder should be considered a Qualified Bidder. For the avoidance of doubt, PNC shall be deemed to be a Qualified Bidder for all purposes. Within two (2) days after the Bid Deadline, the Debtors' advisors will notify each Potential Bidder whether such Potential Bidder is a Qualified Bidder. Any Stalking Horse Bidder shall be deemed a Qualified Bidder for all purposes under these Bidding Procedures.

2. If any Potential Bidder is determined by the Debtors, in consultation with the Consultation Parties, not to be a Qualified Bidder, the Debtors will refund such Potential Bidder's Deposit and all accumulated interest, if any, thereon within five business days of the Bid Deadline.

3. For the avoidance of doubt, after consulting with the Consultation Parties, the Debtors expressly reserve the right to notify a Potential Bidder that its Bid is a Non-Qualifying Bid and permit such Potential Bidder to revise or supplement a Non-Qualifying Bid to make it a Qualified Bid.

4. Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, if any, the Debtors and Committee may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Debtors, after consulting with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided*, that, for the avoidance of doubt, any Qualified Bid may be improved at the applicable Auction, if any, as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures, and the Debtors and Committee expressly reserve the right to request additional diligence information and assurances necessary to assess and ensure continued compliance (including additional information, assurances, or commitments regarding the applicable Qualified Bidder's financial capability to consummate the transactions contemplated by such improved Qualified Bid).

F. **Bid Requirements**

1. A Bid by a Potential Bidder that is submitted in writing and satisfies each of the following requirements (the "**Bid Requirements**"), as determined by the Debtors in their reasonable business judgment and after consulting with the Consultation Parties, shall constitute a "**Qualified Bid**". Any Stalking Horse Bid shall be deemed a Qualified Bid for all purposes under these Bidding Procedures and at all times. Any bid by a Non-Debtor Counterparty for its lease shall be considered a Qualified Bid without having to satisfy any inapplicable Bid Requirements. The Debtors and their professionals shall promptly deliver copies of all bids to the Consultation Parties after the applicable bid deadline.

2. Documentation. Each Bid must be accompanied by a duly authorized and executed asset purchase agreement (the "**Purchase Agreement**"), based on either the form asset purchase agreement uploaded to the Data Room (if any) or the Stalking Horse Agreement (if one exists), an electronic copy of such Purchase Agreement in Microsoft Word format, with a redline to the form asset purchase agreement (if any) or to the Stalking Horse Agreement (if one exists). Each such Purchase Agreement must provide for payment in cash at closing of the Bid Protections to the Stalking Horse Bidder, if any. In addition, each Bid must be accompanied by a statement that the Bid will be irrevocable (whether or not such Bid is selected as the highest or otherwise best bid to purchase the Assets or next highest or otherwise best bid until the consummation of the Sale. The documents described above are defined as the "**Qualified Bid Documents**."

3. Purchase Price. Each Bid must clearly set forth the consideration to be provided for the applicable Company Assets, including the allocation of responsibility for the payment of any cure costs and otherwise identifying separately any cash and non-cash components. If there is a break-up fee or an expense reimbursement provided for in any Stalking Horse Agreement, the Bid must clearly provide for the payment in full of all such amounts on the date the Sale is consummated. The consideration described above is defined as the "**Purchase Price**."

a. Credit Bidding. A Potential Bidder holding a perfected security interest in any of the Assets ("**Secured Creditor**") may seek to credit bid all or a portion of the Potential Bidder's claims for the collateral in which it holds a perfected security interest (each such bid, a "**Credit Bid**") in accordance with section 363(k) of the Bankruptcy Code. A Credit Bid may be applied only with respect to those Assets in which the party submitting such Credit Bid holds a perfected security interest. In order to qualify to Credit Bid, a Secured Creditor, other than PNC, (i) must be a Qualified Bidder and a Credit Bid must qualify as a Qualified Bid; and (ii) that has a Security Interest in the assets being sold that is disputed, must have its Security Interest allowed prior to being able to submit a Credit Bid.

b. PNC has been deemed a Qualified Bidder to the extent of all of the Obligations owed to PNC (the "**Secured Obligations**"), and shall be permitted to submit a Credit Bid (which Credit Bid may include any adequate protection liens and claims granted in favor of PNC), for all or any portion of the Assets at any time prior to the end of the Auction, upon such terms and conditions as it may deem acceptable in its sole discretion, and which Credit Bid shall not be subject to the Bidding Procedures. The Credit Bid may be submitted as a Back-Up Bid in

the event that the Sale to the Successful Bidder does not close (the "**PNC Backup Credit Bid**"). If PNC submits a Credit Bid or a PNC Backup Credit Bid, it will promptly submit a form of agreement after the Auction to reflect the terms of the transaction that compromises the Credit Bid or PNC Backup Credit Bid, as applicable. If PNC submits a Credit Bid, PNC shall not be required to take title to or ownership of, or have any obligation in connection with, the Assets or any portion of the Assets for which PNC is the Successful Bidder, but rather PNC shall have the right to designate any person or entity in its sole and absolute discretion that shall take title to such Asset(s).

For the Avoidance of doubt, the failure of PNC to make a Credit Bid shall in no way be deemed consent to or acceptance of the proposed sale transaction(s) or otherwise impair PNC's rights to object to the proposed sale transaction(s).

4. Deposit. Each Bid, except a Credit Bid by PNC, must be accompanied by a cash deposit in the amount equal to 10% of the aggregate cash Purchase Price of the Bid, to be held in a segregated, non-interest-bearing escrow account to be identified and established by the Debtors (the "**Deposit**").

5. Terms; Specify Acquired Assets and Assumed Liabilities. The Bid must identify the Company Assets (including the specific executory contracts and unexpired leases) such Potential Bidder wishes to bid on and the liabilities and obligations (including applicable cure costs) to be assumed by the Potential Bidder in the Sale.

6. Committed Financing. To the extent that a Bid is not accompanied by evidence of the Qualified Bidder's capacity to consummate the Sale set forth in its Bid with cash on hand, each Bid must include unconditional committed financing from a reputable financing institution, documented to the satisfaction of the Debtors, in consultation with the Committee and PNC, that demonstrates that the Qualified Bidder has: (i) received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Purchase Price and other obligations under its Bid; and (ii) adequate working capital financing or resources to finance going concern operations for the applicable Company Assets and the Sale. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors, in consultation with the Consultation Parties.

7. Contingencies; No Financing or Diligence Outs. A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

8. Identity. Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid and the complete terms of any such participation. Each Bid must also fully disclose whether any current or former officer, director, or equity holder of the Debtors, or any entity affiliated with any current or former officer, director, or equity holder of the Debtors, will be bidding or otherwise participating in connection with such Bid, including any employment or compensation arrangements being negotiated or agreed to between the Qualified Bidder and any employee of the Debtors. Under no circumstances shall any undisclosed insiders, principals, equity holders, or financial backers of the Debtors be associated

with any Bid (including any Overbid at the Auction). Each Bid must also include contact information for the specific persons and counsel whom Silverman Consulting LLC, Goldstein & McClintock LLLP, Emerald Capital Advisors and Lowenstein Sandler LLP should contact regarding such Bid.

9. Adequate Assurance of Future Performance. Except for a Credit Bid submitted by PNC, each Bid must (i) reasonably identify any executory contracts and unexpired leases of the Debtors to be assumed or assumed and assigned in connection with the Sale, and (ii) demonstrate, in the Debtors' reasonable business judgment and in consultation with the Consultation Parties, that the Qualified Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases. Such information related to adequate assurance of future performance shall be disseminated to the affected counterparty either via overnight mail or by email to the notice parties identified in the contract and any counsel of record therefor in these Chapter 11 Cases, within 24 hours of receipt of such Bid, and in no event later than 12 hours after the Bid Deadline.

10. Binding and Irrevocable. A Qualified Bidder's Bid for the Company Assets shall be irrevocable unless and until the Debtors notify such Qualified Bidder that such Bid has not been approved as a Successful Bid or a Backup Bid at the Sale Hearing.

11. Authorization. Except for a Credit Bid submitted by PNC, a Bid must include written evidence reasonably acceptable to the Debtors, in consultation with the Consultation Parties, demonstrating appropriate corporate authorization to submit the Bid and consummate the Sale; *provided* that if the bidder is an entity specially formed for the purpose of effectuating the Sale, then the bidder must furnish written evidence reasonably acceptable to the Debtors, in consultation with the Consultation Parties, of the approval of the submission of the Bid and consummation of the Sale by equity holder(s) of such bidder.

12. As-Is, Where-Is. Except for a Credit Bid submitted by PNC, each Bid must include a written acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Company Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or such assets in making its Bid; and (iii) did not and will not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the applicable Company Assets or the completeness of any information provided in connection therewith or at an Auction, except those expressly stated in the Stalking Horse Agreement (if applicable).

13. Adherence to Bidding Procedures. By submitting a Bid, each Qualified Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these Bidding Procedures and after the conclusion of any Auction, agrees not to submit a Bid, or seek to reopen the Auction.

14. Government Approvals. Except for a Credit Bid submitted by PNC, each Bid must include a description of all governmental, licensing, regulatory, or other approvals or consents that are required to close the proposed Sale, together with evidence satisfactory to the Debtors, in

consultation with the Consultation Parties, of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals.

15. Government Approvals Timeframe. Except for a Credit Bid submitted by PNC, each Bid must set forth an estimated timeframe for obtaining any required, governmental, licensing, regulatory, or other approvals or consents for consummating any proposed Sale.

16. Consent to Jurisdiction. By submitting a Bid, each Qualified Bidder agrees and shall be deemed to have agreed, to submit to the jurisdiction of the Court and waives any right to a jury trial in connection with any disputes relating to the Debtors' qualification of bids, the Auction, if any, the construction and enforcement of these Bidding Procedures, the Sale documents, and the closing, as applicable.

17. Bid Deadline. Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** by the Bid Deadline on or before **4:00 p.m. (prevailing Eastern Time) on August 20, 2024** to:

(a) Debtors. Mountain Sports LLC, Attn: David Barton (dbarton@bobstores.com);

(b) Debtors' Counsel. Goldstein & McClintock LLLP, Attn: Maria Aprile Sawczuk (marias@goldmclaw); and Matt McClintock (mattm@goldmclaw.com);

(c) Debtors' Financial Advisors. Silverman Consulting LLC, Attn: Hassaan Mansoor (hmansoor@silvermanconsulting.net) and Greg Schmitt (gschmitt@silvermanconsulting.net);

(d) Committee's Counsel. Lowenstein Sandler LLP, Attn: Jeffrey Cohen (jcohen@lowenstein.com), Brent Weisenberg (bweisenberg@lowenstein.com), and Erica Mannix (emannix@lowenstein.com); and

(e) Committee's Financial Advisor. Emerald Capital Advisors, Attn: John Madden (jpm@emeraldcapitaladvisors.com), Christopher Saitta (csaitta@emeraldcapitaladvisors.com), and Daniel Pace (dpace@emeraldcapitaladvisors.com).

## G. Auction

### 1. Cancellation of Auction

In the event that (i) the Debtors have entered into a Stalking Horse Agreement, and such Stalking Horse Agreement has been approved pursuant to the Bidding Procedures Order, if no Qualified Bid other than the Stalking Horse Bid, if any, is received in accordance with these Bidding Procedures with respect to a scheduled Auction, or (ii) only one Qualified Bid is received in connection with an Auction, then the Debtors may, in consultation with the Consultation Parties, cancel the Auction, and may decide, in the Debtors' reasonable business judgment and in

consultation with the Consultation Parties, to designate the Stalking Horse Bid or only Qualified Bid as the Successful Bid for the Company Assets and pursue entry of the order approving the Sale of the Company Assets to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement or to the Qualified Bidder.

If the Auction is cancelled, the Debtors shall promptly file a notice of cancellation of the Auction and designation of the Stalking Horse Bid or only Qualified Bid as the Successful Bid.

2. Bid Assessment Criteria

The Debtors, in consultation with the Consultation Parties, shall evaluate all Qualified Bids and identify the Qualified Bid that is, in the Debtors' judgment, and after consulting with the Consultation Parties, the highest or otherwise best Qualified Bid for the Company Assets being sold at the Auction (the "**Baseline Bid**"), and provide copies of the applicable Qualified Bid Documents supporting the applicable Baseline Bid to each Qualified Bidder at or prior to the Auction.

When determining the highest or otherwise best Qualified Bid and selecting the Baseline Bid and the Successful Bid (as defined below), as compared to other Qualified Bids, the Debtors, in consultation with the Consultation Parties, may consider the following factors in addition to any other factors that the Debtors deem appropriate (collectively, the "**Bid Assessment Criteria**"):

(a) the number, type, and nature of any changes to the form of Purchase Agreement or Stalking Horse Agreement, if any, requested by the Qualified Bidder, including the type and amount of assets sought and obligations to be assumed in the Qualified Bid;

(b) the amount and nature of the total consideration, including the assumption of liabilities;

(c) the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof;

(d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents;

(e) the tax consequences of such Qualified Bid;

(f) the impact on employees, including the number of employees proposed to be transferred;

(g) the assumption of liabilities, including obligations under contracts and leases;

(h) ability to close by August 30, 2024, (the "**Sale Closing Deadline**");

(i) the cure amounts to be paid; and

(j) the terms and conditions of a transition services agreement.

3. Auction Time and Location

The Auction, if any, shall take place on **August 22, 2024 at 10:00 a.m. (prevailing Eastern Time)** at the place, including by remote video, the Debtors shall designate, in consultation with the Consultation Parties. The Auction, if any, shall be conducted in a timely fashion according to the procedures set forth herein. The Debtors will send all Qualified Bidders the location of the Auction and means by which they may attend prior to the Auction.

After consultation with the Consultation Parties, the Auction may be adjourned or continued to a later date by the Debtors by sending notice to all Qualified Bidders and any other party known to the Debtors that indicated an intention to attend the Auction.

4. The Debtors Shall Conduct the Auction

The Debtors and their professionals shall direct and preside over the Auction, if any. At the start of the Auction, the Debtors shall describe the material terms of the Baseline Bid for the Company Assets to be sold at the Auction. The Debtors shall maintain a written transcript of the Auction and all Bids made and announced at the Auction, if any, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

Only (a) Qualified Bidders (including the Stalking Horse Bidder, if any) and their legal and financial advisors, (b) PNC and its legal advisors, (c) the Committee and its legal and financial advisors, and (d) actual creditors of the Debtors (provided that they give at least 48 hours' notice to the Debtors' counsel and the Committee's counsel of their intention to attend the Auction via email to (i) Goldstein & McClintock LLLP, Attn: Maria Aprile Sawczuk (marias@goldmclaw); and Matt McClintock (mattm@goldmclaw.com) and (ii) Lowenstein Sandler LLP, Attn: Jeffrey Cohen (jcohen@lowenstein.com), Brent Weisenberg (bweisenberg@lowenstein.com), and Erica Mannix (emannix@lowenstein.com), shall be entitled to attend the Auction, if any, and the Qualified Bidders shall appear at the Auction and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to bid at the Auction, if any.

The Debtors, in consultation with the Consultation Parties, explicitly reserve the right, in their business judgment, to exercise their discretion in conducting the Auction, including determining whether to adjourn the Auction to facilitate separate discussions between any Qualified Bidders and the Debtors, as applicable.

5. Terms of Overbids

"**Overbid**" means any bid made at the Auction, if any, by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each applicable Overbid must comply with the following conditions:

**Minimum Overbid Increment.** The Overbid for the Company Assets shall provide for total consideration with a value that exceeds the value of the consideration under the Baseline Bid by an incremental amount that is not less than an amount to be announced at or before the commencement of the Auction (as applicable, the "**Minimum Overbid Increment**"), and successive Overbids shall be higher than the Prevailing Highest Bid (as defined below) by at least

the Minimum Overbid Increment. The Debtors reserve the right to, in consultation with the Consultation Parties, announce reductions or increases in the Minimum Overbid Increment at any time during the Auction, if any. Additional consideration in excess of the amount set forth in the respective Baseline Bid or Prevailing Highest Bid may include: (a) cash; and (b) assumption of liability, which shall be ascribed a value by the Debtors, in consultation with the Consultation Parties, in determining whether the Minimum Overbid Increment has been met.

**Conclusion of Each Overbid Round.** Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment and in consultation with the Consultation Parties, extend from time to time, the "**Overbid Round Deadline**") by which time any Overbids must be submitted to the Debtors.

**Overbid Alterations.** An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid so long as, after giving effect to the same, the terms of the Overbid are no less favorable to the Debtors' estates than any prior Bid or Overbid of such Qualified Bidder, as determined in the Debtors' reasonable business judgment and in consultation with the Consultation Parties, and shall otherwise comply with the terms of these Bidding Procedures.

**Announcing Highest Bid.** Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors, in consultation with the Consultation Parties, have identified in the applicable Overbid round, an Overbid (or combination of Overbids) as being higher or otherwise better than, in the Overbid round, the Baseline Bid plus the Minimum Overbid Increment, or in subsequent rounds, the Overbid previously designated by the Debtors, in consultation with the Consultation Parties, as the prevailing highest or otherwise best Bid (the "**Prevailing Highest Bid**"). The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

6. Consideration of Overbids

The Debtors reserve the right, in their reasonable business judgment and in consultation with the Consultation Parties, to adjourn the Auction, if any, one or more times to, among other things: (i) facilitate discussions between and amongst the Debtors and the Qualified Bidders, as appropriate; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the Sale at the prevailing Overbid amount.

7. Closing the Auction

The Auction, if any, shall continue until there is one Bid for the Company Assets that the Debtors determine, in their reasonable business judgment and in consultation with the Consultation Parties, to be the highest or otherwise best Bid for the Company Assets. Such Bid shall be declared the "**Successful Bid**" and such Qualified Bidder, the "**Successful Bidder**," at which point the Auction will be closed. The Auction, if any, shall not close unless and until all Qualified Bidders

that have not previously declined to submit an Overbid in any prior round have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors, in consultation with the Consultation Parties, of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

The Successful Bidder shall, within one business day after the conclusion of the Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Successful Bid. The Successful Bid may not be assigned to any party without the consent of the Debtors, in consultation with the Consultation Parties. In addition, the Successful Bidder (and Backup Bidder upon becoming a Successful Bidder) shall provide appropriate disclosures to the Debtors and PNC (including, without limitation, the identity of the person(s), entity(ies), and/or financial institution(s) that will be funding the cash portion of the Successful Bid) to permit them to comply with applicable requirements under the Patriot Act, anti-money laundering laws and related federal regulatory requirements.

As soon as reasonably practicable after closing the Auction, if any, and in any event not more than one business day following closing the Auction, the Debtors shall cause a notice of Successful Bid and Successful Bidder, and the Qualified Bid Documents for the Successful Bid and Backup Bid (defined below), to be filed with the Court.

To the extent that any Qualified Bid is modified before, during, or after the Auction, the Debtors reserve the right to, in consultation with the Consultation Parties, require that such Qualified Bidder adjust its deposit so that it equals 10% of the aggregate cash portion of the Purchase Price.

8. No Collusion; Good-Faith Bona Fide Offer

Each Qualified Bidder participating in the Auction will be required to confirm on the record at such Auction that (a) it has not engaged in any collusion with respect to the bidding and the Auction, (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder or Backup Bidder, and (c) the Qualified Bidder agrees to serve as the Backup Bidder if its Qualified Bid is the next highest or otherwise best bid after the Successful Bid.

### H. Auction Backup Bidder

Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Bid, as determined by the Debtors in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, (the "**Auction Backup Bid**"), shall be required to serve as a backup bidder (the "**Auction Backup Bidder**"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

The identity of the Auction Backup Bidder and the amount and material terms of the Auction Backup Bid shall be announced by the Debtors at the conclusion of the Auction, if any, at the same time the Debtors announce the identity of the Successful Bidder. The Auction Backup Bidder shall be required to keep its Bid (or if the Auction Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until the closing of the transaction with the applicable Successful Bidder. The Auction Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder.

The Auction Backup Bidder shall, within one business day after the conclusion of such Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Backup Bid. The Backup Bid may not be assigned to any party without the consent of the Debtors, in consultation with the Consultation Parties.

For purposes of these Bidding Procedures, "**Backup Bid**" and "**Backup Bidder**" shall mean if an Auction is held, the applicable Auction Backup Bid and Auction Backup Bidder, respectively.

All Qualified Bids (other than the Successful Bid and the Backup Bid) shall be deemed rejected by the Debtors on and as of the date of approval of the Successful Bid and Backup Bid by the Court.

**I. Reservation of Rights**

The Debtors reserve their rights to modify these Bidding Procedures in consultation with the Consultation Parties, in their reasonable business judgment in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, if any, additional customary terms and conditions on the Sale of the Company Assets, including: (a) extending the deadlines set forth in these Bidding Procedures except for the Indication of Interest Deadline and Closing Deadline, which require consent from the Consultation Parties; (b) adjourning the Auction, including at the Auction and/or adjourning any Sale Hearing, including in open court, without further notice; (c) modifying the Bidding Procedures and/or adding procedural rules or methods of bidding that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) waiving, or imposing additional, terms and conditions set forth herein with respect to Potential Bidders; and (f) rejecting any or all bids or Bids.

**J. Approval of Sale Transaction**

A hearing to consider the approval of the Sale to a Successful Bidder and the approval of the corresponding Backup Bid, if any (the "**Sale Hearing**"), will take place before the Honorable Mary F. Walrath at the Bankruptcy Court, 824 Market Street, Wilmington, Delaware on **August 29, 2024 at 10:30 a.m. (prevailing Eastern Time)** (unless canceled in accordance with these Bidding Procedures).

After consultation with the Consultation Parties, the Sale Hearing may be adjourned or continued to a later date by the Debtors by sending notice prior to, or making an announcement at

such Sale Hearing. No further notice of any such adjournment or continuance will be required to be provided to any party (including any Stalking Horse Bidder).

At the Sale Hearing, the Debtors, in consultation with their advisors and the Consultation Parties, shall present the Successful Bid and any Backup Bid, to the Court for approval. The Sale Order submitted at the Sale Hearing shall provide that: (i) if the Successful Bid is not consummated, after consultation with the Consultation Parties, the Debtors may file a notice with the Court designating the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed the Successful Bidder for all purposes; and (ii) the Debtors will be authorized, but not required, to consummate all transactions contemplated by the Backup Bid, once so designated as the Successful Bid, without further order of the Court or notice to any party.

**K. Return of Deposits**

The Deposits of all Qualified Bidders shall be held in one or more non-interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Court; *provided*, *however*, the Deposit of any Successful Bidder (including any Backup Bidder that becomes a Successful Bidder) may be forfeited to the Debtors or credited toward the Purchase Price set forth in the Successful Bid, in either case as set forth in these Bidding Procedures. The Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the applicable hearing to authorize the Debtors' consummation of the Sale. The Deposit of the Backup Bidder, if any, shall be returned to such Backup Bidder no later than three (3) business days after the closing of the transaction with the Successful Bidder. Upon the return of the Deposits, the owner shall receive any and all interest that will have accrued thereon. If the Successful Bidder (or Backup Bidder, as applicable) timely closes on its transaction, its Deposit shall be credited towards the applicable purchase price. If the Successful Bidder (or Backup Bidder, if applicable) fails to consummate a sale transaction because of a breach or failure to perform on the part of the Successful Bidder (or Backup Bidder, if applicable), the Debtors will not have any obligation to return the Deposit deposited by the Successful Bidder (or Backup Bidder, if applicable), and such Deposit shall irrevocably become property of the Debtors as partial compensation for the damages caused to the Debtors and their estates as a result of such breach or failure to perform without prejudice to any claims, rights, or remedies of the Debtors or their estates for additional damages.

**L. Fiduciary Out**

Nothing in these Bidding Procedures shall restrain the Debtors from taking any action, or refraining from taking any action, after consulting with the Consultation Parties, to the extent that the Debtors determine, based on the written advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or their fiduciary obligations under applicable law.