**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MOUNTAIN SPORTS LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11385 (MFW)<br><br>(Jointly Administered)<br><br>**Re: D.I. 800 & 801** |

**ROBERTS 50 USA, LLC AND GODIGITAL MEDIA GROUP, LLC'S
OBJECTION TO THE DEBTORS AND COMMITTEE'S JOINT MOTION TO
APPROVE THE COMBINED DISCLOSURE STATEMENT AND PLAN FOR
SOLICITATION PURPOSES ONLY AND RELATED TABULATION PROCEDURES**

Roberts 50 USA, LLC ("Roberts") and GoDigital Media Group, LLC ("GDMG" and together with Roberts, the "GDMG Entities"), by and through their undersigned counsel, submit this objection (the "Objection") to the *Motion for Entry of Order: (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Combined Disclosure Statement and Plan; (III) Approving the Form of Ballots and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Disclosures in and Confirmation of, the Combined Plan and Disclosure Statement; and (VI) Granting Related Relief* [D.I. 801] (the "Motion") filed jointly by the above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors in these cases (the "Committee" and, together with the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Mountain Sports LLC (9597); SDI Gift Card LLC (9775); Bob's Stores USA LLC (6115); SDI Stores LLC (4751); and Mountain Sports USA LLC (4036). The location of the Debtors' corporate headquarters is 160 Corporate Court, Meriden, CT 06450.

Debtors, the "Plan Proponents").[2]  In support of this Objection, the GDMG Entities respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Motion seeks this Court's authorization to solicit acceptances of a patently unconfirmable plan.  The Plan establishes two classes of unsecured creditors, which are the only classes entitled to vote: (i) one class containing *only* the GDMG Entities, which collectively comprise the Debtors' largest unsecured creditor (Class 3); and (ii) another class containing all other general unsecured creditors (Class 2).  The Plan Proponents purport to segregate the GDMG Entities in their own class based on the sole justification that they are insiders, while providing each unsecured creditor class with the *exact same economic treatment*.[3]  The sole purpose behind separately classifying the GDMG Entities from all other general unsecured creditors is to gerrymander an impaired accepting class by effectively nullifying the GDGM Entities' vote.

2.      This Court rejected a similar classification scheme in *Coram Healthcare*, where the equity committee sought to separately classify insiders, trade creditors, and dissenting noteholders who would otherwise control the unsecured creditor class.  315 B.R. at 349-50.  The Court held that: (i) classifying the insider's claims separately from non-insider trade claims was improper

---

[2] The Motion seeks conditional approval of the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation Jointly Proposed by Mountain Sports LLC and its Affiliated Debtors and the Official Committee of Unsecured Creditors, Dated October 8, 2025* [D.I. 800] (the "Plan") for solicitation purposes only.  The Plan includes a corresponding disclosure statement, which shall be referred to herein as the "Disclosure Statement."  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Motion, as applicable.

[3] The GDMG Entities reserve the right to contest their insider status.  However, the question of the GDMG Entities' insider status is only relevant to the extent the GDMG Entities vote to *accept* the Plan, in which case their votes would not count for the purpose of satisfying section 1129(a)(10) of the Bankruptcy Code.  *See* 11 U.S.C. § 1129(a)(10) ("The court shall confirm a plan only … [i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any *acceptance* of the plan by any insider.") (emphasis supplied).  In the event the GDMG Entities vote to *reject* the Plan, their vote would not be excluded even if they are deemed insiders.  *In re Coram Healthcare Corp.*, 315 B.R. 321. 350, n.18 (Bankr. D. Del. 2004).

68184/0001-51589912

because there was no difference in the *legal attributes* of such claims, and similar claims may not be classified separately based on *who* holds them; and (ii) the committee could not classify the noteholders separately from other unsecured creditors based on the committee's belief that the noteholders would vote to reject the plan. *Id.* at 350.

3.      The Court should similarly reject the proposed classification scheme here. The GDMG Entities' claims arose from finance, accounting, information technology, and other operational services the GDMG Entities provided to the Debtors, as well as inventory the GDMG Entities purchased on their behalf. These claims share the same legal attributes as the Debtors' other general unsecured claims. Thus, there can be no reasonable justification for the Plan Proponents' separate classification of the GDMG Entities' claims, which is predicated solely on who holds them. The Plan should not be solicited for approval unless it is modified to include the GDMG Entities in the same class as the Debtors' other general unsecured creditors.[4]

4.      The tabulation procedures should also be revised to require the Plan's votes to be solicited and tabulated votes on a Debtor-by-Debtor basis. The Plan currently provides for the deemed substantive consolidation of the Debtors for purposes of voting and distributions, without any legitimate justification for the request. Separate solicitation and tabulation will ensure that the Court and the parties have sufficient voting information to determine whether the Plan meets the requirements of sections 1129(a)(7) and (10) of the Bankruptcy Code for each Debtor in the event the disfavored remedy of substantive consolidation is ultimately denied at confirmation.

5.      Finally, the Disclosure Statement contains no Liquidation Analysis or other financial information necessary for creditors to make an informed decision regarding their vote.

---

[4]  The GDMG Entities reserve the right to object to the Plan on other grounds, including the improper setoff and injunction provisions. Because these issues can be addressed in language in any confirmation order, the GDMG Entities will reserve these issues for the confirmation hearing.

68184/0001-51589912

This information is particularly salient given the Plan's proposed substantive consolidation of the Debtors. The Plan Proponents indicate that they intend to file a Plan Supplement containing additional financial information in advance of the Voting Deadline. The GDMG Entities reserve the right to object to final approval of the Plan on adequate information grounds to the extent appropriate after reviewing such supplemental materials.

6. For the reasons set forth herein, the Motion should be denied until the issues raised by the GDMG Entities are remedied.

## FACTUAL BACKGROUND

### I. The Chapter 11 Cases and the Adversary Proceeding.

7. On June 18, 2024, each of the Debtors filed a voluntary petition for relief (collectively, the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases. The Office of the United States Trustee appointed the Committee on July 3, 2024. *See* D.I. 83.

8. On July 22, 2024, the Committee commenced an adversary proceeding against Roberts and GoDigital Brand Services, LLC ("GDB") styled *Official Committee of Unsecured Creditors of Mountain Sports LLC, et al., derivatively on behalf of the Debtors' estates v. GoDigital Brands Services, LLC, et al.*, Adv. Proc. No. 24-50095-MFW (Bankr. D. Del.) (the "Adversary Proceeding"), pursuant to which the Committee sought to unwind certain prepetition agreements entered into by and between certain of the Debtors and Roberts and related asset transfers.

9. On August 8, 2024, the Court approved a stipulation [Adv. D.I. 36] (the "Stipulation") by and among: (i) the Debtors; (ii) the Committee; (iii) PNC Bank, National Association; (iv) Roberts; (v) GDB; and (vi) Jason Peterson resolving the Adversary Proceeding.

4

68184/0001-51589912

Pursuant to the Stipulation, the Roberts and GDB withdrew their pending objection to the sale of substantially all of the Debtors' assets and agreed to cooperate with the Debtors in connection with the transfer of the Debtors' assets to the purchaser. *See* Stipulation, ¶ 3. The Stipulation expressly preserved the GDMG Entities' right to file unsecured claims against the Debtors. *See* Stipulation, ¶ 9.

## II.    The GDMG Entities' Claims.

10.    The Operating Agreement of each of the Debtors (collectively, the "Operating Agreements") authorizes the Debtors' Managing Member to "manage, direct and control all of the business and affairs of the Company, to transact business on behalf of the Company, to sign for the Company or on behalf of the Company or to otherwise bind the Company."[5] The Operating Agreements identify SDI USA, LLC as the Managing Member for each of the Debtors.

11.    SDI USA, LLC merged into Roberts pursuant to that certain Agreement and Plan of Merger dated as of April 7, 2021. As a result of the merger transaction, Roberts became the Managing Member for each of the Debtors with full corporate authority to transact on their behalf.

12.    Roberts, GDMG, and each of the Debtors are party to that certain Services Agreement dated as of April 7, 2023 (the "Services Agreement"), pursuant to which GDMG, as Service Provider agreed to provide the following services (collectively, the "Services") to Roberts and the Debtors: (i) general management services; (ii) business advisory services; (iii) back office support and corporate services; (iv) finance and banking services; (v) information technology and telecommunications services; (vi) accounting; (vii) human resources; (viii) treasury and tax services (including payroll); (ix) legal services; (x) marketing services; and (xi) other general services as Roberts and the Debtors may reasonably request from time to time.

---

[5] The GDMG Entities' proofs of claim attach or incorporate by reference the supporting documents cited herein.

5

13. As consideration for providing the Services, Roberts and the Debtors agreed to pay GDMG a service fee on an at-cost basis, within thirty (30) days after GDMG provides an invoice to Roberts/the Debtors for services rendered. Roberts and the Debtors also agreed to reimburse GDMG for its reasonable out-of-pocket costs and expenses incurred in connection with the performance of the Services (representing amounts actually paid by GDMG in connection with the performance of the Services) and to indemnify GDMG from and against certain claims relating to the Services.

14. On September 26, 2024, the Court entered an Order [D.I. 357] (the "Administrative Bar Order") establishing October 25, 2024 as the deadline to assert administrative expense claims against the Debtors in these Chapter 11 Cases that arose on or before October 1, 2024.

15. On October 25, 2024, the GDMG Entities filed a motion [D.I. 417] (the "Administrative Claim Motion") to allow an administrative claim against the Debtors in the amount of $72,411.05 (the "Administrative Claim") for unpaid post-petition amounts due and owing under the Services Agreement, including without limitation, finance, accounting, information technology, and other services necessary to sustain the Debtors' operations during these Chapter 11 Cases. As of the date hereof, the Administrative Claim Motion remains pending. *See* D.I. 571 (adjourning the hearing on the Administrative Claim Motion to a date to be determined).

16. On November 14, 2024, the Court established December 20, 2024, as the deadline to file prepetition claims against the Debtors, as reflected in the *Order (A) Fixing the Procedures and Deadlines to File Proofs of Claim and (B) Approving the Form and Manner of Notice of Thereof* [D.I. 460]. On December 20, 2024, GDMG filed claims (collectively, the "GDMG Prepetition Claims") against the Debtors in the aggregate amount of $22,862,629.67 based on

6

operational services GDMG provided to the Debtors, inventory GDMG purchased on the Debtors' behalf, and GDMG's contractual indemnification rights.  The GDMG Prepetition Claims include:

- Claim No. 10265 against Bobs Stores USA LLC in the amount of $2,811,579.17 plus certain unliquidated amounts;

- Claim No. 10267 against Mountain Sports, LLC in the amount of $8,246,274.54 plus certain unliquidated amounts;

- Claim No. 10269 against Mountain Sports USA, LLC in the amount of $2,810,460.38 plus certain unliquidated amounts; and

- Claim No. 10272 against SDI Stores LLC in the amount of $8,994,315.58 plus certain unliquidated amounts.[6]

17.    As of the date hereof, no objection has been filed to the Administrative Claim or the Prepetition Claims.

### III.    The Plan and Tabulation Procedures

18.    On October 8, 2025, the Plan Proponents jointly filed the Plan, which includes a corresponding Disclosure Statement.  The Plan Proponents also filed the Motion seeking this Court's approval of the Plan for solicitation purposes only, as well as related solicitation/tabulation procedures and ancillary notices and ballots.

19.    The Plan provides for the deemed substantive consolidation of the Debtors for the purposes of voting and receiving distributions on account of Allowed Claims.  *See* Plan, § 3.04. In support of this proposed substantive consolidation, the Plan provides as follows:

> This deemed substantive consolidation is appropriate and justified under the circumstances of the Debtors' Chapter 11 Cases because, while it may minimally affect the Distributions that creditors would receive without consolidation, it avoids the administrative costs of, among other things, administering multiple liquidating trusts for the

---

[6] Roberts filed substantially identical claims against each of these Debtors. *See* Claim Nos. 10266, 10268, 10271, and 10273 (collectively, the "Roberts Prepetition Claims" and, together with the GDMG Prepetition Claims, the "Prepetition Claims").  For the avoidance of doubt, the GDMG Entities are not seeking a double recovery on account of the Prepetition Claims.

Debtors' Estates, thereby avoiding diluting overall creditor recoveries as a result of increased professional fees.

Plan, § 3.04.

20. The Plan establishes two classes of unsecured claims, which are the only classes entitled to vote on the Plan: (i) Class 2 General Unsecured Claims (estimated between $35 and $40 million); and (ii) Class 3 Insider Claims (estimated between $0 and $23 million, *i.e.*, the approximate aggregate amount of the Prepetition Claims without double counting GDMG's and Roberts's claims). Prior to the filing of this Objection, counsel for the Committee confirmed that the GDMG Entities are the sole members of Class 3.

21. In other words, the Plan classifies the GDMG Entities in their own class, separate from all other general unsecured creditors. Notwithstanding this separate classification, the Plan provides Class 3 Insider Claims with the same economic treatment as Class 2 General Unsecured Claims. *See* Plan, § 4.03(c) ("Allowed Insider Claims shall share Pro Rata with Allowed General Unsecured Claims in any remaining Residual Cash.").[7]

22. The Plan also provides for a broad injunction that prohibits creditors from, among other things, "asserting a setoff or right of subrogation of any kind against any debt, liability, or obligation due to any debtor[.]" Plan, ¶ 9.03.

23. The Disclosure Statement does not include a Liquidation Analysis or attach any financial statements. Instead, the Plan provides that a Liquidation Analysis will be included in the Plan Supplement to be filed at least seven days prior to the earlier of (i) the deadline for the

---

[7] The Plan defines "Residual Cash" as "the Estate Cash and Cash proceeds of the Liquidating Trust Assets, including the Retained Causes of Action, less (i) amounts reserved for the administration of the Liquidating Trust from and after the Effective Date (including the fees and expenses of the Liquidating Trust and its professionals) and (ii) amounts required to make distributions on account of, or Reserves for, Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims in accordance with this Combined Disclosure Statement and Plan." Plan, § 1.104.

68184/0001-51589912

submission of ballots and (ii) the deadline to object to confirmation of the Plan. *See* Plan, § 3.09; Motion, ¶ 29.

## **OBJECTION**

### I.   **The Plan Proponents Should Not Be Authorized to Solicit Votes on a Patently Unconfirmable Plan.**

24.    A court should deny approval of a disclosure statement that describes a patently unconfirmable plan. As the Third Circuit has recognized, "if it appears there is a defect that makes a plan inherently or patently unconfirmable, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing." *In re American Capital Equipment, LLC*, 688 F.3d 145, 154 (3d Cir. 2012) (citation omitted). "A plan is patently unconfirmable where (1) confirmation 'defects [cannot] be overcome by creditor voting results' and (2) those defects 'concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing.'" *Id.* (quoting *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987)).

25.    Here, the Plan is patently unconfirmable because it constitutes a thinly veiled scheme to gerrymander an impaired accepting class by separately classifying the GDMG Entities. *See* 11 U.S.C. § 1129(a)(10) (requiring at least one impaired class to accept a chapter 11 plan); *see also* 11 U.S.C. § 1126(c) ("A class of claims has accepted a plan if such plan has been accepted by creditors … that hold *at least two-thirds in amount* and more than one-half in number of the allowed claims of such class[.]") (emphasis supplied). Courts have refused to approve a disclosure statement where the corresponding plan attempts to gerrymander the voting process. *See*, *e.g.*, *In re Curtis Ctr. Ltd. P'Ship*, 195 B.R. 631, 642-43 (Bankr. E.D. Pa. 1996) (denying approval of disclosure statement because plan's separate classification of claims was "simply an attempt to

9

gerrymander the voting process to facilitate the affirmative vote of an impaired class of claims"); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992), *aff'd* 147 B.R. 827 (E.D.N.Y. 1992) (denying approval of disclosure statement because plan's classification system rendered plan "fatally flawed and incapable of confirmation").

26.  The Plan classifies all of the Debtors' general unsecured claims other than the GDMG Entities' Prepetition Claims as Class 2 General Unsecured Claims.  The GDMG Entities' Prepetition Claims are segregated in their own class—Class 3 (Insider Claims).

27.  Though plan proponents may classify similar claims in separate classes, they may not do so when it would be unreasonable.  *Coram Healthcare*, 315 B.R. at 348.  If plan proponents were afforded unfettered discretion to separately classify similar claims, they could effectively eliminate the requirement that creditors accept the plan by "construct[ing] a classification scheme designed to secure approval through arbitrary classes."  *Id.* (citing *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs. (In re Route 37 Bus. Park Assocs.),* 987 F.2d 154, 158 (3d Cir.1993)).  Thus, it is well-established in this District that it is improper to separately classify claims and interests for the purpose of gerrymandering the plan voting process.  *See*, *e.g.*, *In re Mallinckrodt PLC*, 639 B.R. 837, 857 (Bankr. D. Del. 2022) ("There is one clear rule that emerges from otherwise muddled caselaw on § 1122 claims classification: thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan.") (internal quotations omitted); *accord In re Abeinsa Holding, Inc.*, 562 B.R. 265, 274 (Bankr. D. Del. 2016) ("The classification of claims or interests must be reasonable and cannot be grouped together for arbitrary or fraudulent purposes.").

28.  The Plan proposes to provide Class 2 General Unsecured Claims and Class 3 Insider Claims with the same economic treatment despite their separate classification.  *See* Plan, § 4.03

10

("Allowed Insider Claims shall share Pro Rata with Allowed General Unsecured Claims in any remaining Residual Cash."). The Third Circuit has noted that "'[w]here all unsecured claims receive the same treatment in terms of the Plan distribution, separate classification … is, at a minimum, *highly suspect*' and [cannot] be sustained without some further justification." *John Hancock Mut. Life Ins. Co.*, 987 F.2d at 160 (emphasis supplied). In other words, the Plan Proponents "must adduce credible proof of a legitimate reason for separate classification of similar claims[.]" *In re Boston Post Road Ltd. P'Ship*, 21 F.3d 477, 483 (2d Cir. 1994). The Plan Proponents have proffered no such justification that would allow the Plan to proceed to confirmation.

29.     This Court has previously rejected the Plan Proponents' only articulated basis for separately classifying the GDMG Entities' claims—that is, that the GDMG Entities constitute insiders of the Debtors. In *Coram Healthcare*, this Court rejected an equity committee's attempt to classify insider creditors in their own class, holding that "a proper determination of what claims are 'substantially similar' *focuses on the legal attributes of the claims*, not who holds them." 315 B.R. at 350 (emphasis supplied).

30.     The Prepetition Claims are based on finance, accounting, information technology, and other services the GDMG Entities provided the Debtors to support their business operations, as well as inventory they purchased on the Debtors' behalf. In that view, the GDMG Entities' claims share the same legal attributes as all other general unsecured claims. *Cf. id.* at 349 ("The [insider] claims arose from services provided by [insider] to [debtor]…. They are substantially similar to those of the general unsecured creditors in legal attributes and priority status."). Given that the Plan provides the GDMG Entities with the exact same treatment as all other general

11

unsecured creditors, the only rational purpose for the proposed separate classification is to nullify the GDMG Entities' vote—a blatant attempt at gerrymandering.

31. Accordingly, the Plan Proponents have failed to sustain their highly suspect classification scheme, which renders the Plan patently unconfirmable and necessitates denial of the Motion.

**II.     Votes on the Plan Should be Solicited and Tabulated on a Debtor-by-Debtor Basis.**

32. The Plan currently provides for the deemed substantive consolidation of the Debtors for purposes of soliciting and tabulating votes and for distributions on account of Allowed Claims. Substantive consolidation is strongly disfavored in this Circuit. *See In re Owens Corning*, 419 F.3d 195, 210 (3d Cir. 2005) (noting substantive consolidation should be rarely utilized and only as a "last resort" after other alternatives have failed).

33. Indeed, the Third Circuit has noted that "substantive consolidation may be used defensively to remedy the identifiable harms caused by entangled affairs, [but] it may not be used offensively." *Id.* at 211. Thus, proponents of substantive consolidation must prove either that: (i) prepetition, the entities disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity; or (ii) postpetition, their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors. *Id.*

34. The current record of these cases is woefully insufficient to meet the high burden necessary for substantive consolidation. The Plan merely provides that substantive consolidation is appropriate because it avoids the costs of administering multiple liquidating trusts. *See* Plan, § 3.04. If mere administrative convenience were sufficient to warrant substantive consolidation, then it would be the norm in multi-debtor chapter 11 cases, rather than an extraordinary remedy.

35. The GDMG Entities reserve the right to object to the proposed substantive consolidation of the Debtors based on a complete record at Plan confirmation. In the meantime,

12

the Plan Proponents should be required to solicit and tabulate votes on the Plan on a Debtor-by-Debtor basis.  Absent separate solicitation and tabulation, the Court and the parties will be unable to determine whether the Plan is accepted by the requisite creditors of each Debtor in the event the Plan's proposed substantive consolidation is ultimately denied at confirmation.

**III.    The Disclosure Statement Fails to Provide Creditors with Adequate Information in Its Current Form.**

36.    The Plan fails to provide "adequate information" to creditors as required by section 1125(b) of the Bankruptcy Code.  *See* 11 U.S.C. § 1125(b) ("An acceptance or rejection of a plan may not be solicited … from a holder of a claim or interest … unless … there is transmitted to such holder … a written disclosure statement approved … as containing adequate information.").  Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as "information of a kind, and in sufficient detail … that would enable a hypothetical reasonable investor … to make an informed judgment about the plan."  *See* 11 U.S.C. § 1125(a).

37.    Given the reliance that creditors and courts place on disclosure statements, the "obligation to provide sufficient data to satisfy the Code['s] standard" cannot be "overemphasize[d.]"  *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988).  The burden is on the plan proponent to produce a disclosure statement that contains adequate information.  *See Gen Elec. Credit Corp. v. Nardulli & Sons, Inc.*, 836 F.2d 184, 188 (3d Cir. 1988).

38.    As of the date hereof, the Plan Proponents have not filed a Liquidation Analysis, which they indicate will be included in a Plan Supplement to be filed at least seven days prior to the earlier of (i) the deadline for the submission of ballots and (ii) the deadline to object to confirmation of the Plan.  *See* Plan, § 3.09; Motion, ¶ 29.  Accordingly, it is currently impossible for the GDMG Entities to determine whether the Plan provides adequate information regarding the

13

Plan's feasibility or whether it is in the best interest of creditors.  *See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300–01 (Bankr. S.D.N.Y. 1990) ("Disclosure statements are required to contain liquidation analyses that enable creditors to make their own judgment as to whether a plan is in their best interests and to vote and object to a plan if they so desire."); *see also In re Torgro Atl. City, LLC*, No. 08-13458 (GMB), 2009 WL 1288367, at *8 (Bankr. D.N.J. May 7, 2009) (noting courts consider several factors in determining a plan's feasibility, including the debtor's economic conditions and adequacy of its capital structure).

39.     The GDMG Entities reserve the right to contest final approval of the Plan on adequate information grounds at the Combined Hearing to the extent appropriate following their review of the materials included in the Plan Supplement and to seek conversion of the Debtors' cases to cases under chapter 7 of the Bankruptcy Code.

*[**Remainder of page intentionally left blank**]*

14

68184/0001-51589912

**WHEREFORE**, the GDMG Entities respectfully request that the Court deny the Motion unless the issues raised herein are adequately addressed and grant the GDMG Entities such other and further relief as is just and proper.

Dated: October 27, 2025
Wilmington, Delaware                                     **COLE SCHOTZ P.C.**

                                                  */s/ G. David Dean*
                                                  G. David Dean (No. 6403)
                                                  Melissa M. Hartlipp (No. 7063)
                                                  500 Delaware Avenue, Suite 600
                                                  Wilmington, DE 19801
                                                  Telephone: (302) 652-3131
                                                  Facsimile: (302) 652-3117
                                                  Email: ddean@coleschotz.com
                                                          mhartlipp@coleschotz.com

                                                  -and-

                                                  Anthony De Leo (admitted *pro hac vice*)
                                                  1325 Avenue of the Americas, 19th Floor
                                                  New York, NY 10019
                                                  Telephone: (212) 752-8000
                                                  Facsimile: (212) 752-8393
                                                  Email: adeleo@coleschotz.com

                                                  *Counsel to Roberts 50 USA, LLC and GoDigital*
                                                  *Media Group, LLC*