## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MOUNTAIN SPORTS LLC; *et al.*,[1] | Case No. 24-11385 (MFW) |
| Debtors. | (Jointly Administered) |

**MODIFIED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION JOINTLY PROPOSED BY MOUNTAIN SPORTS LLC AND ITS AFFILIATED DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, DATED OCTOBER 27, 2025 (SOLICITATION VERSION)**

**GOLDSTEIN & MCCLINTOCK, LLLP**
Maria Aprile Sawczuk (No. 3320)
501 Silverside Road, Suite 65
Wilmington, DE 19809
Telephone: (302) 444-6710
marias@goldmclaw.com
-and-

Matthew E. McClintock (admitted *pro hac vice*)
William Thomas (admitted *pro hac vice*)
111 W. Washington Street, Suite 1221
Chicago, IL 60602
Telephone: (312) 337-7700
mattm@goldmclaw.com
willt@goldmclaw.com

*Counsel for the Debtors and Debtors-in-Possession*

**LOWENSTEIN SANDLER LLP**
Jeffrey L. Cohen (admitted *pro hac vice*)
Brent I. Weisenberg (admitted *pro hac vice*)
Erica G. Mannix (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 262-6700
jcohen@lowenstein.com
bweisenberg@lowenstein.com
emannix@lowenstein.com

-and-

**MORRIS JAMES LLP**
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
emonzo@morrisjames.com
bkeilson@morrisjames.com

*Counsel to the Official Committee of Unsecured Creditors*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Mountain Sports LLC (9597); SDI Gift Card LLC (9775); Bob's Stores USA LLC (6115); SDI Stores LLC (4751); and Mountain Sports USA LLC (4036). The Debtors' mailing address is 35 Park Pl., #809, Branford, CT 06405.

## TABLE OF CONTENTS

DISCLAIMER........................................................................................................................1

INTRODUCTION..................................................................................................................2

ARTICLE I: DEFINITION AND CONSTRUCTION OF TERMS ..................................3

ARTICLE II: BACKGROUND AND DISCLOSURES........................................................17

    2.01    The Debtors' Business and Historical Operations....................................17

    2.02    The Ownership Structure of the Debtors ..................................................17

    2.03    The Debtors' Prepetition Capital Structure.............................................18

        (a) The PNC Debt ..........................................................................................18

        (b) Unsecured Debt .......................................................................................18

    2.04    Events Leading to the Chapter 11 Cases ..................................................19

    2.05    Commencement of the Chapter 11 Cases and First Day Relief...............19

    2.06    Retention of Estate Professionals and Appointment of Committee .....................19

    2.07    Initial Cash Collateral Disputes with PNC ..............................................20

    2.08    Sale of the Debtors' Assets and Dispute with GoDigital and Roberts 50 .............20

    2.09    Post-Sale Administration of the Estates....................................................21

        (a) Closure of Remaining Stores and Rejection of Certain Remaining Executory Contracts ..........................................................................................21

        (b) Reconciliation of Amex Payments .........................................................21

    2.10    Claims Bar Date, Claims Pool and Reconciliation...................................22

        (a) Bar Date and Claims Pool .....................................................................22

        (b) Claims Reconciliation ............................................................................22

ARTICLE III: CONFIRMATION PROCEDURES ............................................................23

    3.01    Confirmation Procedures............................................................................23

    3.02    Procedure for Objections............................................................................23

    3.03    Requirements for Confirmation .................................................................23

**3.04**     **Deemed Substantive Consolidation** ...........................................................**24**

**3.05**     **Classification of Claims and Equity Interests** ................................**24**

**3.06**     **Impaired Claims or Equity Interests** ..............................................**26**

**3.07**     **Confirmation Without Necessary Acceptances; Cramdown** ................**26**

**3.08**     **Feasibility** .................................................................................**27**

**3.09**     **Best Interests Test and Liquidation Analysis** ................................**27**

**3.10**     **Acceptance of the Plan** .............................................................**28**

**ARTICLE IV: CLASSIFICATION OF CLAIMS AND INTERESTS AND EXPECTED RECOVERIES** ...........................................................................**29**

**4.01**     **Overview of Classification** .........................................................**29**

**4.02**     **Identification and Treatment of Unclassified Claims** .......................**29**

**4.03**     **Identification of Classes of Claims** ..............................................**30**

**4.04**     **Treatment of Classified Classes, Rights to Vote, and Estimated Distributions** ...........................................................................**31**

**4.05**     **Elimination of Classes for Voting Purposes** .................................**34**

**4.06**     **Confirmation via "Cramdown"** .................................................**34**

**4.07**     **Controversy Concerning Classification, Impairment or Voting Rights** ..............**34**

**4.08**     **Insurance** .................................................................................**34**

**ARTICLE V: CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING** ...............................................................................**35**

**5.01**     **The Plan May Not Be Accepted** .................................................**35**

**5.02**     **The Plan May Not Be Confirmed** ...............................................**35**

**5.03**     **Distributions to Holders of Allowed Claims under the Plan May Be Inconsistent with Projections** .....................................................**35**

**5.04**     **Objections to Classification of Claims** ........................................**36**

**5.05**     **Failure to Consummate the Plan** ...............................................**36**

**5.06    Allowance of Claims May Substantially Dilute the Recovery to Holders of Claims under the Plan** .................................................................37

**5.07    Certain Tax Considerations** ....................................................................37

**ARTICLE VI: IMPLEMENTATION AND EXECUTION OF THE  COMBINED DISCLOSURE STATEMENT AND PLAN** ...............................................46

**6.01    Effective Date** ..........................................................................................46

**6.02    Implementation of the Combined Disclosure Statement and Plan** ......46

**6.03    Books and Records** ..................................................................................46

**6.04    Withholding Rights** .................................................................................47

**6.05    Dissolution of the Debtors** .....................................................................47

**6.06    Determination of Tax Liabilities** ...........................................................48

**6.07    Exemption From Certain Transfer Taxes** .............................................48

**6.08    Liquidating Trust** ...................................................................................48

**6.09    Effective Date and Other Transactions** .................................................55

**6.10    Provisions Governing Distributions under the Combined Disclosure Statement and Plan** .................................................................................56

**6.11    Cancellation of Equity Interests** ...........................................................61

**6.12    Insurance Policies** ...................................................................................61

**6.13    Dissolution of Committee** .......................................................................62

**6.14    Termination of the Claims Agent** ..........................................................62

**6.15    Final Decree** ............................................................................................62

**ARTICLE VII: EXECUTORY CONTRACTS** .................................................62

**7.01    Rejection of Executory Contracts** .........................................................62

**7.02    Bar Date for Rejection Damages** ...........................................................63

**7.03    Pre-Existing Obligations to the Debtors Under Executory Contracts** ..63

**ARTICLE VIII: PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND DISTRIBUTIONS OF PROPERTY UNDER THE PLAN** ...............................63

**8.01**   **Claim Objections**........................................................................63

**8.02**   **Adjustments to Claims and Administrative Claims Without Objection** ..............64

**8.03**   **Late Claims; No Amendment Without Prior Authorization** ...................................64

**ARTICLE IX: EXCULPATION, INJUNCTION, AND RELATED PROVISIONS** ...........64

**9.01**   **Term of Bankruptcy Injunction or Stay**.......................................................64

**9.02**   **Exculpation and Limitation of Liability** ......................................................65

**9.03**   **Injunction** .....................................................................................65

**ARTICLE X: CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE** .................66

**10.01**   **Conditions Precedent to Confirmation** ........................................................66

**10.02**   **Conditions Precedent to the Effective Date** ..................................................66

**10.03**   **Waiver of Conditions** ............................................................................67

**10.04**   **Effect of Failure of Conditions**.................................................................67

**10.05**   **Filing of Notice of the Effective Date**.........................................................67

**ARTICLE XI: MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN** .........67

**11.01**   **Modification and Amendments** ...................................................................67

**11.02**   **Effect of Confirmation on Modifications** ......................................................67

**11.03**   **Revocation or Withdrawal of the Plan**.........................................................68

**ARTICLE XII: JURISDICTION**...........................................................................68

**12.01**   **Bankruptcy Court Jurisdiction** ..................................................................68

**12.02**   **Limitation on Jurisdiction**......................................................................69

**ARTICLE XIII: MISCELLANEOUS** ...................................................................70

**13.01**   **Defenses and Setoff**...............................................................................70

**13.02**   **Governing Law**.....................................................................................70

**13.03**   **Successors and Assigns**...........................................................................70

**13.04**   **Post-Effective Date Service List**.................................................................71

iv

**13.05**  **Notices** ...........................................................................................................**71**

**13.06**  **Immediate Binding Effect** ..................................................................................**72**

**13.07**  **Severability of Plan Provisions** ........................................................................**72**

**13.08**  **Exhibits** ..............................................................................................................**72**

**13.09**  **Votes Solicited in Good Faith**............................................................................**72**

**13.10**  **Conflicts** .............................................................................................................**73**

**13.11**  **U.S. Trustee Fees**...............................................................................................**73**

**13.12**  **Implementation** .................................................................................................**73**

**13.13**  **No Admissions** ...................................................................................................**73**

**13.14**  **Substantial Consummation of the Plan** ...........................................................**73**

## **DISCLAIMER**

THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST KNOWLEDGE, INFORMATION, AND BELIEF OF THE PLAN PROPONENTS (DEFINED BELOW). NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE (I) DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, (II) ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR (III) DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF. HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. NO REPRESENTATIONS CONCERNING THE DEBTORS, THEIR ESTATES, OR THE VALUE OF THEIR PROPERTY HAVE BEEN AUTHORIZED OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. ANY INFORMATION, REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST. THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3016(b), AND LOCAL RULE 3017-2 AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS. THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS

THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

SEE ARTICLE V OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN, ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING," FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM TO ACCEPT THE COMBINED DISCLOSURE STATEMENT AND PLAN.

## **INTRODUCTION**

Mountain Sports LLC; SDI Stores LLC; SDI Gift Card LLC; Bob's Stores USA LLC; and Mountain Sports USA LLC, the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") and the official committee of unsecured creditors appointed in the Debtors' Chapter 11 Cases (the "**Committee**," and together with the Debtors, the "**Plan Proponents**"), hereby jointly propose this Combined Disclosure Statement and Plan[2] pursuant to sections 1125 and 1129 of the Bankruptcy Code.

This Combined Disclosure Statement and Plan is the product of the Debtors' and the Committee's efforts to create an efficient process for the wind down of the Debtors' Estates and their exit from chapter 11 in a manner that maximizes value under the circumstances.

This Combined Disclosure Statement and Plan contemplates the establishment of a liquidating trust by and through which the Liquidating Trustee will, among other things: (i) marshal the remaining assets of the Debtors' estates, including the proceeds from the sale of substantially all of the Debtors' assets and certain retained causes of action; (ii) review, reconcile, and resolve claims; and (iii) make distributions to holders of allowed claims, all as set forth more fully herein and consistent with the priority of distribution provisions of the Bankruptcy Code.

This Combined Disclosure Statement and Plan contains, among other things, (i) a discussion of the Debtors' history and businesses, (ii) a summary of the events leading to these Chapter 11 Cases, (iii) descriptions of key events during the Chapter 11 Cases, (iv) certain risk factors, (v) a summary and analysis of this Plan, and (vi) certain other related matters.

ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS ARE ENCOURAGED TO READ THE COMBINED DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION ABOUT THE PLAN AND IMPORTANT CONSIDERATIONS PERTINENT TO ACCEPTANCE OR REJECTION OF THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND IN THE PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

---

[2]      All capitalized terms used, but not defined in this Introduction, shall have the meanings ascribed to them in Article I of the Combined Disclosure Statement and Plan.

The Plan Proponents believe that the Plan is in the best interest of creditors and other stakeholders and is the fairest means of moving these Chapter 11 Cases towards resolution. All creditors entitled to vote on the Plan are urged to vote in favor of it.  In particular and as is set forth in greater detail in the Committee Support Letter, the Committee, as the statutory fiduciary representative of unsecured creditors of the Debtors, strongly urges the Holders of General Unsecured Claims to vote in favor of the Plan.

To be counted, your Ballot must be duly completed, executed, and actually received by the Voting Agent by 4:00 p.m., prevailing Eastern Time, on **March 1, 2026** (the "**Voting Deadline**"), unless the Voting Deadline is extended by the Plan Proponents.

**ARTICLE I**

**DEFINITION AND CONSTRUCTION OF TERMS**

For purposes of the Plan, except as expressly provided or unless the context otherwise requires, (i) any capitalized term used in this Combined Disclosure Statement and Plan (also referred to herein as the Plan) that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, (ii) whenever the context requires, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter, (iii) any reference in this Combined Disclosure Statement and Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (iv) any reference in this Combined Disclosure Statement and Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (v) unless otherwise specified, all references in this Combined Disclosure Statement and Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to this Combined Disclosure Statement and Plan, (vi) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Combined Disclosure Statement and Plan in its entirety, including any schedules and exhibits hereto, rather than to any particular paragraph, subparagraph, or clause contained in this Combined Disclosure Statement and Plan, (vii) captions and headings to articles and sections are inserted for convenience of reference only and shall not limit or otherwise affect the provisions hereof or the interpretation of this Combined Disclosure Statement and Plan, and (viii) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

As used in this Combined Disclosure Statement and Plan, the following terms have the following meanings:

1.1     "**503(b)(9) Claims**" shall mean Claims arising under section 503(b)(9) of the Bankruptcy Code against one or more of the Debtors that were required to be Filed against one or more of the Debtors on or before the General Bar Date.

3

1.2    "**Administrative Claim**" shall mean any right to payment constituting a cost or expense of administration of the Chapter 11 Cases as it relates to one of the Debtors under section 503(b) and 507(a)(2) of the Bankruptcy Code including, any actual and necessary costs and expenses of preserving the Debtors' Estates, any actual and necessary costs and expenses of operating the Debtors' business, any indebtedness or obligations incurred by the Debtors after the Petition Date in connection with the conduct of its business, all compensation and reimbursement of expenses awarded or otherwise approved for payment by Final Order of the Bankruptcy Court under section 330, 503(b) or 1129(a)(4) of the Bankruptcy Code, any fees or charges assessed against the Debtors' Estates under section 1930 of chapter 123 of title 28 of the United States Code, all wages, salaries and health and other benefits on account of services rendered after the Petition Date, all post-Petition Date taxes, and all other claims entitled to administrative expense status pursuant to a Final Order of the Bankruptcy Court; however, Administrative Claims shall only be deemed valid if such Administrative Claim: (i) arose between the Petition Date and October 1, 2024 and was Filed before the First Administrative Claim Bar Date; (ii) arose between October 2, 2024 and the Effective Date but not beyond, and was Filed before the Final Administrative Claim Bar Date; or (iii) is otherwise allowed by the Court.

1.3    "**Administrative Claim Bar Date Order**" shall mean the *Order (I) Establishing Bar Date for the Filing of Requests for Allowance of Administrative Expense Claims and (II) Approving the Form and Manner of Notice Thereof*, entered by the Bankruptcy Court on September 26, 2024 [D.I. 357].

1.4    "**Administrative Claim Reserve**" shall mean the reserve(s) established by the Liquidating Trustee for payment of projected Allowed Professional Fee Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and any other costs and fees incurred in connection with the Debtors' Estates prior to the Effective Date.

1.5    "**Allowance Date**" shall mean the date that a Claim, Administrative Claim, or Equity Interest becomes Allowed.

1.6    "**Allowed**" shall mean all or a portion of a Claim or Administrative Claim against one of the Debtors or an Interest in the Debtors (a) that has been listed by one of the Debtors in its Schedules as liquidated in amount and not "disputed" or "contingent," and with respect to which no contrary Claim, Administrative Claim, or proof of Interest has been Filed; (b) as to which no Objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court; (c) that has not previously been satisfied; or (d) that is allowed (i) by a Final Order, (ii) by an agreement between the Holder of such Claim, Administrative Claim, or Interest and the Plan Proponents prior to the Effective Date, or the Liquidating Trustee on behalf of the Debtors' Estates after the Effective Date, or (iii) pursuant to the terms of this Plan. For purposes of computing Distributions under this Plan, a Claim, Administrative Claim, or Interest that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim, Administrative Claim, or Interest from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Plan. For the avoidance of doubt, any Claim or Administrative Claim that relates to obligations that were assumed by the Purchaser pursuant to the Asset Purchase Agreement shall not be Allowed for purposes of this Plan.

1.7    "**Asset Purchase Agreement**" or "**APA**" shall mean that certain asset purchase agreement by and between the Debtors and the Purchaser dated as of August 1, 2024, including all schedules and exhibits thereto and any subsequent amendments.

1.8    "**Assets**" shall mean all tangible and intangible assets of every kind and nature of the Debtors and their Estates within the meaning of section 541 of the Bankruptcy Code.

1.9    "**Bankruptcy Code**" shall mean title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to these Chapter 11 Cases.

1.10    "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the District of Delaware.

1.11    "**Bankruptcy Rules**" shall mean, when referenced generally, (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code, (iii) the applicable Local Rules, and (iv) any standing orders governing practice and procedure issues by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 case or proceedings therein, as the case may be; *provided, however*, when a specific Bankruptcy Rule is referenced (*e.g.,* Bankruptcy Rule 9019), such reference shall be to such Rule under the Federal Rules of Bankruptcy Procedure.

1.12    "**Bar Date**" shall mean, with respect to any particular Claim, the specific date set by the Bankruptcy Court as the last day for Filing Proofs of Claim or proofs of Interest against one or more of the Debtors in the Chapter 11 Cases for that specific Claim or Interest whether pursuant to this Combined Disclosure Statement and Plan, the Confirmation Order, the Bar Date Order, or any other applicable order of the Bankruptcy Court in these Chapter 11 Cases.

1.13    "**Bar Date Order**" shall mean the *Order (A) Fixing the Procedures and Deadlines to File Proofs of Claim and (B) Approving the Form and Manner of Notice Thereof*, entered by the Bankruptcy Court on November 14, 2024 [D.I. 460].

1.14    "**Beneficial Interest**" shall mean an interest that entitles the holder thereof to a Distribution from the MS Liquidating Trust in accordance with the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement.

1.15    "**Bidding Procedures Order**" shall mean the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Approving the Form and Manner of Notice of the Sale and Bid Deadlines, (III) Authorizing the Debtors to Select a Stalking Horse Bidder and Enter Into a Purchase Agreement with Such Bidder Providing for Certain Bid Protections, (IV)Approving (A) Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases and (B) The Form and Manner of Notice Thereof, (V) Scheduling the Auction and the Hearing to Consider Approval of the Sale, (VI) Authorizing the Committee to Run the Sale Process with the Debtors' Assistance and (VII) Granting Related Relief*, entered by the Bankruptcy Court on July 23, 2024 [D.I. 172].

1.16   "**Business Day**" shall mean any day, other than a Saturday, Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

1.17   "**Cash**" or "**$**" shall mean legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

1.18   "**Causes of Action**" shall mean all Claims, causes of action controversies, obligations, suits, judgments, damages, demands, debts, rights, preference actions, fraudulent conveyance actions and other claims or causes of action under sections 510, 542, 543, 544, 545, 546, 547, 548, 549, 550 and 553 of the Bankruptcy Code and other similar state law claims and causes of action, liens, indemnities, guaranties, suits, liabilities, judgments, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, suspected or unsuspected, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, arising in law, equity or pursuant to any other theory of law. For the avoidance of doubt, Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to any Claim or Interest; (c) any claim pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.19   "**Chapter 11 Cases**" shall mean the above-captioned cases commenced by each of the Debtors in the Bankruptcy Court on the Petition Date pursuant to chapter 11 of the Bankruptcy Code, which cases are jointly administered under Case No. 24-11385 (MFW).

1.20   "**Claim**" or "**Claims**" shall mean a claim or claims against one or more of the Debtors, as such term is defined in section 101(5) of the Bankruptcy Code, and shall include 503(b)(9) Claims.

1.21   "**Claims Agent**" shall mean Epiq or any successor appointed by the Bankruptcy Court.

1.22   "**Claims Objection Deadline**" shall mean three hundred sixty five (365) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court, *provided however*, that the Liquidating Trustee may file one or more motions with the Bankruptcy Court on notice and an opportunity for a hearing to extend such deadline from time to time.

1.23   "**Class**" shall mean each category or group of Holders of Claims or Interests that has been designated as a class in Article IV of this Combined Disclosure Statement and Plan.

1.24   "**Combined Disclosure Statement and Plan**" shall mean this entire document and all exhibits, schedules and related documents, whether annexed hereto or Filed in connection herewith, including the Disclosure Statement portions and the Plan portions.

1.25   "**Committee**" shall mean the official committee of unsecured creditors appointed by the U.S. Trustee in these Chapter 11 Cases, which currently is comprised of the following

members: Amer Sports Winter and Outdoor Co.; Ariat International, Inc.; Marmot Mountain LLC; Oboz Footwear LLC; and VF Corp.

1.26    "**Confirmation Date**" shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

1.27    "**Confirmation Hearing**" shall mean the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.28    "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming this Plan pursuant to, among others, section 1129 of the Bankruptcy Code, in form and substance reasonably acceptable to the Debtors and the Committee.

1.29    "**Consummation**" shall mean the occurrence of the Effective Date.

1.30    "**Creditor**" shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

1.31    "**D&O Policy**" shall mean any insurance policy for directors, members, trustees, and officers liability issued at any time to or providing coverage to the Debtors and/or their directors, members, trustees, and/or officers, and all agreements, documents or instruments relating thereto.

1.32    "**Debtors**" shall mean: (i) Mountain Sports LLC; (ii) SDI Stores LLC; (iii) SDI Gift Card LLC; (iv) Bob's Stores USA LLC; and (v) Mountain Sports USA LLC.

1.33    "**Disallowed**" shall mean with respect to any Claim, Administrative Claim, or Interest or portion thereof, any Claim or Administrative Claim against or Interest in one or more of the Debtors which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Plan Proponents or the Liquidating Trustee, as applicable, in whole or in part; (iii) has been satisfied in full or, to the extent satisfied in the part, the portion of which has been satisfied; (iv) has been assumed by the Purchaser pursuant to the Asset Purchase Agreement; (v) has been withdrawn, in whole or in part, by the Holder thereof; (vi) if listed in the Schedules as zero or as Disputed, contingent or unliquidated and in respect of which a proof of Claim or a proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code or any Final Order of the Bankruptcy Court or other applicable law; (vii) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any proof of Claim or Administrative Claim or proof of Interest; (viii) is evidenced by a proof of Claim or Administrative Claim or a proof of Interest which has been File, or which has been deemed to be Filed under applicable law or Final Order of the Bankruptcy Court or which is required to be Filed by Final Order of the Bankruptcy Court but as to which such proof of Claim or Administrative Claim or proof of Interest was not timely or properly Filed; (ix) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; or (x) where the Holder of such Claim, Administrative Claim, or Interest is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee

7

of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such Property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code. In each case a Disallowed Claim or a Disallowed Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

1.34    "**Disallowed Claim**" shall mean a Claim or Administrative Claim, or any portion thereof, that is Disallowed.

1.35    "**Disallowed Interest**" shall mean an Interest, or any portion thereof, that is Disallowed.

1.36    "**Disbursing Agent**" shall mean the Liquidating Trustee or any third party designated by the Liquidating Trustee to act as Disbursing Agent to make or facilitate distributions required by this Plan, the Confirmation Order, or the Liquidating Trust Agreement.

1.37    "**Disclosure Statement**" shall mean the disclosure statement, as amended, supplemented or modified from time to time, that is embodied within this Combined Disclosure Statement and Plan and distributed in accordance with, among others, sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law.

1.38    "**Disposition Order**" shall mean the *Final Order: (A) Authorizing the Debtors to Enter into the Disposition Agreement; (B) Authorizing and Approving the Sale of Inventory and Other Assets Free and Clear of All Liens, Claims, and Encumbrances; and (C) Granting Related Relief*, entered by the Bankruptcy Court on August 7, 2024 [Docket No. 251].

1.39    "**Disputed**" shall mean any Claim, Administrative Claim, or Interest which has not yet been Allowed or Disallowed in accordance with the terms of this Plan.

1.40    "**Disputed Claim Reserves**" shall mean the reserves that may be established by the Liquidating Trustee in its discretion pursuant to Section 6.10(j) of this Combined Disclosure Statement and Plan, the Confirmation Order, and the Liquidating Trust Agreement, which Reserve(s) shall contain amounts relating to Disputed General Unsecured Claims and/or Disputed Insider Claims.

1.41    "**Distribution**" shall mean any distribution made pursuant to the terms of this Plan by the Liquidating Trustee or another Entity acting as the Disbursing Agent, to the Holders of Allowed Claims on account of such Allowed Claim.

1.42    "**Distribution Date**" shall mean the date on which a Distribution is made pursuant to this Plan.

1.43    "**Distribution Record Date**" shall mean the date established for determining the Holders of Allowed Claims entitled to Distributions pursuant to the Plan, which date shall be the Confirmation Date.

1.44    "**Effective Date**" shall mean the first Business Day after the later of the date on which (a) all conditions in Article X of this Plan have been satisfied or waived in accordance with that Article and (b) no stay of the Confirmation Order is in effect.

1.45    "**Entity**" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

1.46    "**Epiq**" shall mean Epiq Corporate Restructuring, LLC, the Debtors' Claims Agent.

1.47    "**Estate**" or "**Estates**" shall mean one or more estate of the Debtors created pursuant to section 541 of the Bankruptcy Code.

1.48    "**Estate Cash**" shall mean the Debtors' cash on hand as of the Effective Date.

1.49    "**Exculpated Parties**" shall mean, collectively, (i) the Debtors, (ii) the Committee, and (iii) each of their respective Professionals, and in the case of the Committee, each of its members (each solely in such capacity). The term Exculpated Parties shall specifically include any authorized representative retained by the Debtors in connection with the Chapter 11 Cases, but shall exclude any of the Debtors' other current or former directors, officers, partners, shareholders, employees, members, managers, or similar persons.

1.50    "**Executory Contract**" shall mean a contract or lease to which one of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.51    "**File**," "**Filed**," or "**Filing**" shall mean, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases; *provided, however*, that with respect to Proofs of Claim and Administrative Claim and proofs of Interest only, "Filed" shall mean delivered and received in the manner provided by the applicable Bar Date Order or as otherwise established by order of the Bankruptcy Court.

1.52    "**Final Administrative Claim Bar Date**" shall mean the date that is 30 calendar days after the Effective Date, which shall be the deadline for Filing requests for payment of Administrative Claims that arose after the First Administrative Claim Bar Date and before the Effective Date.  For the avoidance of doubt, the Final Administrative Claim Bar Date shall not apply to Professional Fee Claims, as such claims are subject to the Professional Fee Bar Date.

1.53    "**Final Order**" shall mean an unstayed order, ruling or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or request for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Plan Proponents or the Liquidating Trustee on behalf of the Estates (on or after the Effective Date), or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall

9

have expired; provided, however, that the possibility that a motion under rule 59 or rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

1.54    "**First Administrative Claim Bar Date**" shall mean October 25, 2024, as established by the Administrative Claims Bar Date Order.

1.55    "**General Bar Date**" shall mean December 20, 2024, for certain Claims arising before the Petition Date, including 503(b)(9) Claims, Secured Claims, General Unsecured Claims, or Priority Non-Tax Claims, as established by the Bar Date Order.

1.56    "**General Unsecured Claim**" shall mean any Claim against one or more of the Debtors that is not: (i) an Administrative Claim; (ii) a Priority Tax Claim; (iii) a Secured Claim; (iv) a Priority Non-Tax Claim; (v) an Insider Claim; or (vi) an Intercompany Claim.

1.57    "**GoDigital Brand Services**" shall mean GoDigital Brand Services, LLC.

1.58    "**GoDigital Media Group**" shall mean GoDigital Media Group, LLC.

1.59    "**Governmental Unit**" shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

1.60    "**Governmental Unit Bar Date**" shall mean December 20, 2024, as established by the Bar Date Order.

1.61    "**Holder**" or "**Holders**" shall mean the legal or beneficial Holder of a Claim, Administrative Claim, or Interest (and, when used in conjunction with a Class or type of Claim, Administrative Claim, or Interest, means a Holder of a Claim, Administrative Claim, or Interest in such Class or of such type).

1.62    "**Impaired**" shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.63    "**Impaired Class**" shall mean a Class of Claims or Interests that is Impaired.

1.64    "**Insider**" shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code and shall include, without limitation, insiders of the Debtors and their respective affiliates, subsidiaries and predecessors, including any of the Debtors', affiliates', subsidiaries', or predecessors' former or current owners, officers, directors, members, or managers.

1.65    "**Insider Claim**" shall mean any Claim or Administrative Claim against the Debtors, which Claim or Administrative Claim has been or may be Filed by, held by, asserted by, or scheduled on behalf of any Insider of any Debtor, including any Claim or Administrative Claim of any Insider listed on the Debtors' Schedules, regardless of whether such Claim or Administrative Claim may have been transferred to a non-Insider.

1.66   "**Insurance Policies**" shall mean any issued policy of insurance and any agreements relating thereto covering one or more of the Debtors, the Debtors' Estates, or their assets, directors, officers, members, managers, employees and fiduciaries, or that may be available to provide coverage for Claims against any Debtor or any of the foregoing, including any general liability, property, workers compensation, casualty, umbrella or excess liability policy(ies), errors and omissions, director and officer or similar executive, fiduciary and organization liability policy(ies) (A, B or C coverage), and any tail or extended reporting requirement with respect thereto.

1.67   "**Intercompany Claim**" shall mean (i) any account reflecting intercompany book entries by one Debtor with respect to another Debtor, or (ii) any Claim, Administrative Claim, or Interest that is not reflected in such book entries and is held by a Debtor against the other Debtor, in each case accruing before or after the Petition Date through the Effective Date, including, but not limited to, any Claim or Administrative Claim for reimbursement, payment as guarantor or surety, or any Claim or Administrative Claim for contribution or expenses that were allocable between the one or more of the Debtors.

1.68   "**Interests**" shall mean the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person in the Debtors including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtors, partnership interests in the Debtors' stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtors or obligating the Debtors to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

1.69   "**Inventory Sale**" shall mean the disposition of the Debtors' inventory and related assets authorized by the Inventory Sale Order.

1.70   "**Inventory Sale Motion**" shall mean the *Debtors' Motion for Entry of an Interim and Final Order (A) Authorizing the Debtors to Enter Into the Disposition Agreement; (B) Authorizing and Approving the Sale of Inventory and Other Assets Free and Clear of All Liens, Claims, and Encumbrances; and (C) Granting Related Relief*, filed in these Chapter 11 Cases on June 25, 2024 [D.I. 55].

1.71   "**Inventory Sale Order**" shall mean the *Final Order (A) Authorizing the Debtors to Enter into the Disposition Agreement; (B) Authorizing and Approving the Sale of Inventory and Other Assets Free and Clear of All Liens, Claims, and Encumbrances; and (C) Granting Related Relief*, entered by the Bankruptcy Court on August 7, 2024 [D.I. 251].

1.72   "**Liquidating Trust**" shall mean the MS Liquidating Trust established under the terms of this Plan, the Confirmation Order, and the Liquidating Trust Agreement.

1.73     "**Liquidating Trust Agreement**" shall mean the trust agreement, to be included in the Plan Supplement, as it may be amended, effective as of the Effective Date, that establishes the MS Liquidating Trust and, in conjunction with this Plan and the Confirmation Order, governs the powers, duties, and responsibilities of the Liquidating Trustee and the administration of the MS Liquidating Trust.

1.74     "**Liquidating Trust Assets**" shall mean: (a) Cash in an amount equal to (i) the total amount of Estate Cash less (ii) (A) cash transferred to the Liquidating Trust (if any) on the Effective Date to fund the Liquidating Trust Expense Reserve and the Administrative Claim Reserve, and (B) cash paid from Distributable Cash on the Effective Date on account of the treatment of Administrative Claims and Priority Tax Claims; (b) the Retained Causes of Action scheduled for transfer to the Liquidating Trust on the Schedule of Retained Causes of Action and all proceeds thereof; (c) all Assets of the Estates on the Effective Date and all proceeds thereof; and (d) the Liquidating Trust's beneficial interests in the Liquidating Trust Expense Reserve and the Administrative Claim Reserve to the extent funds remain in the Liquidating Trust Expense Reserve and/or the Administrative Claim Reserve following satisfaction of all Claims on account of which a reserve was created.

1.75     "**Liquidating Trust Beneficiaries**" shall mean, collectively, the Holders of (i) Allowed Class 2 Claims against a Debtor, and (ii) Allowed Class 3 Claims against a Debtor, which remain unpaid as of the Effective Date, in their capacity as beneficiaries of the Liquidating Trust in accordance with the Liquidating Trust Agreement.

1.76     "**Liquidating Trust Expenses**" shall mean (i) the actual and projected costs and expenses of the Liquidating Trust and (ii) actual and projected reasonable fees, costs and expenses of the Liquidating Trustee and the Liquidating Trustee's retained professionals, as determined in the reasonable discretion of the Liquidating Trustee, subject to the terms of this Combined Disclosure Statement and Plan, the Confirmation Order, and the Liquidating Trust Agreement.

1.77     "**Liquidating Trust Expense Reserves**" shall mean the reserve(s) established by the Liquidating Trustee for payment of projected Liquidating Trust Expenses, which reserve(s) may be replenished or adjusted from time to time by the Liquidating Trustee in its reasonable discretion in accordance with the terms of this Combined Disclosure Statement and Plan, the Confirmation Order, and the Liquidating Trust Agreement.

1.78     "**Liquidating Trust Interests**" shall mean the non-certificated Beneficial Interests of the Liquidating Trust allocable to Holders of Allowed Claims in accordance with the terms of this Combined Disclosure Statement and Plan and the Liquidating Trust Agreement, which may or may not be transferable.

1.79     "**Liquidating Trustee**" shall mean the Person(s) appointed by the Committee pursuant the terms of this Combined Disclosure Statement and Plan, the Confirmation Order, and the Liquidating Trust Agreement and identified in the Plan Supplement, to serve as the trustee of the MS Liquidating Trust for the purposes of, among other things, liquidating the Estates' remaining assets, reconciling Claims, making Distributions, and otherwise implementing the Plan following the Effective Date.

1.80    "**Loan Agreement**" shall mean that certain Revolving Credit and Security Agreement among certain lenders, PNC as agent, each of the Debtors and non-debtor Roberts 50 USA, LLC, as borrower, and non-debtor Bob's EMS Holdings LLC as guarantor, dated as of April 7, 2023.

1.81    "**Loans**" shall mean, collectively, the two tranches under the Loan Agreement; specifically the revolver and a FILO (First In, Last Out) loan.

1.82    "**Local Rules**" shall mean the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

1.83    "**MS Liquidating Trust**" shall mean the trust established under this Disclosure Statement and Plan and the Liquidating Trust Agreement, which on the Effective Date shall be vested with the Liquidating Trust Assets and shall be governed by the terms of the Liquidating Trust Agreement.

1.84    "**Person**" shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

1.85    "**Petition Date**" shall mean June 18, 2024, the date on which the Debtors commenced the Chapter 11 Cases in the Bankruptcy Court.

1.86    "**Plan**" shall mean this joint plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time including in accordance with any documents submitted in support hereof and the Bankruptcy Code or the Bankruptcy Rules.

1.87    "**Plan Proponents**" shall mean the Debtors and the Committee.

1.88    "**Plan Supplement**" shall mean the compilation of documents and forms of documents, agreements, schedules, and exhibits to this Plan, including, among other things, (i) the Liquidating Trust Agreement, (ii) the Liquidation Analysis, and (iii) the Schedule of Retained Causes of Action, which shall be in form and substance acceptable to the Plan Proponents, and which shall be Filed in the Chapter 11 Cases, and notice of which shall be served in accordance with the Solicitation Procedures Order as may be amended or supplemented by additional documents Filed in the Chapter 11 Cases prior to the Effective Date as amendments to the Plan Supplement.

1.89    "**PNC**" shall mean PNC Bank, National Association as lender and agent under the Loan Agreement.

1.90    "**Priority Non-Tax Claim**" shall mean any and all Claims (or any portion of a Claim) accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim, Professional Fee Claim, or an Administrative Claim.

1.91    "**Priority Tax Claim**" shall mean a Claim or a portion of a Claim for which priority is asserted under section 507(a)(8) of the Bankruptcy Code.

1.92    "**Pro Rata**" shall mean the proportion that an Allowed Claim or Administrative Claim in a particular Class bears to the aggregate amount of Allowed Claims or Administrative Claims in that respective Class, or the proportion that Allowed Claims or Administrative Claims in a particular Class bear to the aggregate amount of Allowed Claims or Administrative Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Administrative Claim under this Plan, as applicable.

1.93    "**Professional**" shall mean any Person or Entity employed in these Chapter 11 Cases pursuant to a Final Order of the Bankruptcy Court under Bankruptcy Code sections 327, 328, 363, or 1103, or for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.94    "**Professional Fee Bar Date**" shall mean the deadline for Filing all applications for Professional Fee Claims, which shall be thirty (30) days after the Effective Date.

1.95    "**Professional Fee Claims**" shall mean a Claim of a Professional for compensation for services rendered, reimbursement of costs, expenses, or other charges incurred, or substantial contribution after the Petition Date and on or before the Effective Date.

1.96    "**Proof of Claim**" shall mean a proof of Claim Filed against any of the Debtors in accordance with the Bar Date Order or any other Order of the Bankruptcy Court requiring or setting forth a time period for the fixing of Claims.

1.97    "**Purchased Assets**" shall mean the Debtors' Assets sold in connection with the Sale to the Purchaser pursuant to the APA.

1.98    "**Purchaser**" shall mean, collectively, Mountain Warehouse Limited and Mountain Warehouse Outdoor Inc.

1.99    "**Rejection Claim**" shall mean any Claim or Administrative Claim for amounts due as a result of the rejection by one of the Debtors of any Executory Contract under section 365 of the Bankruptcy Code.

1.100    "**Rejection Damages Bar Date**" shall mean the deadline by which a counterparty to an Executory Contract of the Debtors rejected under this Plan must File a proof of Claim or Administrative Claim for damages arising from such rejection, and shall be the later of (a) the First Administrative Bar Date, General Bar Date or the Governmental Bar Date, as applicable, or (b) 5:00 p.m. (prevailing Eastern time) on the date that is 30 calendar days following service of an order approving rejection of any executory contract or unexpired lease of one of the Debtors.

1.101    "**Representatives**" shall mean each Professional retained by the Debtors and by the Committee pursuant to a Final Order entered in these Chapter 11 Cases, including such Professional's directors, officers, partners, shareholders, associates, employees, members, managers, or similar persons.

1.102    "**Reserves**" shall mean, collectively, the Disputed Claim Reserve, the Liquidating Trust Expense Reserve, the Administrative Claim Reserve, and any other reserves that may be

14

established by the Liquidating Trustee pursuant to Section 6.10 of this Combined Disclosure Statement and Plan.

1.103 "**Reserves Account**" shall mean an account established for holding and maintaining the Reserves, including, but not limited to, the Disputed Claim Reserve, the Liquidating Trust Expense Reserve and the Administrative Claim Reserve.

1.104 "**Residual Cash**" shall mean, collectively, the Estate Cash and Cash proceeds of the Liquidating Trust Assets, including the Retained Causes of Action, less (i) amounts reserved for the administration of the Liquidating Trust from and after the Effective Date (including the fees and expenses of the Liquidating Trust and its professionals) and (ii) amounts required to make distributions on account of, or Reserves for, Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims in accordance with this Combined Disclosure Statement and Plan.

1.105 "**Retained Causes of Action**" shall mean all Causes of Action retained by the Estates as set forth in paragraph 2 of the Asset Purchase Agreement.

1.106 "**Roberts 50**" shall mean Roberts 50 USA, LLC, the sole owner of the Debtors.

1.107 "**Sale**" shall mean the sale of substantially all of the Debtors' Assets to the Purchaser pursuant to the Asset Purchase Agreement and the Sale Order.

1.108 "**Sale Closing Date**" shall mean August 30, 2024, the date the Sale to Purchaser closed.

1.109 "**Sale Documents**" shall mean the Asset Purchase Agreement, the Sale Order, and all documents, instruments, and agreements executed and delivered in connection with the consummation of the transactions contemplated by the Asset Purchase Agreement.

1.110 "**Sale Motion**" shall mean the *Motion by the Debtors and The Official Committee of Unsecured Creditors for Orders (I) (A) Approving Bidding Procedures for the Sale of the Debtors Assets, (B) Approving the Form and Manner of Notice of the Sale and Bid Deadlines, (C) Authorizing the Debtors to Select a Stalking Horse Bidder and Enter Into a Purchase Agreement with Such Bidder Providing for Certain Bid Protections, (D) Approving (1) Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases and (2) the Form and Manner of Notice Thereof, (E) Scheduling the Auction and the Hearing to Consider Approval of the Sale, (F) Authorizing the Committee to Run the Sale Process with the Debtors' Assistance and (G) Granting Related Relief and (II) (A) Approving the Sale of the Assets, Free and Clear of All Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (C) Granting Related Relief*, filed with the Bankruptcy Court on July 15, 2024 [D.I. 116].

1.111 "**Sale Order**" shall mean the *Order (A) Authorizing the Sale of Assets Free and Clear of All Interests, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief*, entered by the Bankruptcy Court on August 29, 2024 [D.I. 302].

1.112  "**Schedule of Retained Causes of Action**" shall mean a schedule of Causes of Action set forth in the Plan Supplement, which causes of action shall be Liquidating Trust Assets on the Effective Date.

1.113  "**Schedules**" shall mean the Schedules of Assets and Liabilities and Statements of Financial Affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time, which were filed on July 31, 2024 [D.I. 218–222].

1.114  "**Secured Claim**" shall mean, pursuant to section 506(a) of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of one or more of the Debtors in and to property of the Estates, to the extent of the value of the Holder's interest in such property as of the relevant determination date, or (b) Allowed as such pursuant to the terms of this Plan (subject to the Confirmation Order becoming a Final Order). The defined term Secured Claim includes any Claim that is (i) subject to an offset right under applicable law as of the Petition Date, and (ii) a secured claim against the one or more of the Debtors pursuant to sections 506(a) and 553 of the Bankruptcy Code.

1.115  "**Solicitation Procedures Order**" shall mean the Bankruptcy Court's *Order (I) Approving on an Interim Basis the Adequacy of Disclosures in the Combined Disclosure Statement and Plan, (II) Scheduling the Confirmation Hearing and Deadline for Filing Objections, (III) Approving the Procedures and Forms for Solicitation and Tabulation of Votes, and (IV) Approving the Notice Provisions and Related Relief* entered by the Bankruptcy Court on January 14, 2026 [D.I. 907].

1.116  "**Tax**" or "**Taxes**" shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, stamp taxes, and duties, value added taxes, assessments, or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

1.117  "**Unclaimed Distributions**" shall mean any undeliverable or unclaimed Distributions.

1.118  "**Unclaimed Distribution Deadline**" means ninety (90) days from the date the Liquidating Trustee makes a Distribution pursuant to this Combined Disclosure Statement and Plan.

1.119  "**Unimpaired**" shall mean, when used in reference to a Claim, Administrative Claim, or Interest, any Claim, Administrative Claim, or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.120  "**Unimpaired Class**" shall mean a Class of Claims, Administrative Claims, or Interests that are not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.121 "**U.S. Trustee**" shall mean the office of the United States Trustee for the District of Delaware.

1.122 "**U.S. Trustee Fees**" shall mean fees payable pursuant to 28 U.S.C. § 1930.

1.123 "**Voting Agent**" shall mean Epiq or any successor appointed by the Bankruptcy Court.

1.124 "**Voting Deadline**" shall mean March 1, 2026, at 4:00 p.m. (prevailing Eastern time), the date and time by which ballots to accept or reject the Plan must be received by the Voting Agent in order to be counted, as set forth by the Solicitation Procedures Order.

## ARTICLE II

## BACKGROUND AND DISCLOSURES

### 2.01    The Debtors' Business and Historical Operations

Prior to selling substantially all of their assets during the Chapter 11 Cases, the Debtors operated outdoor clothing, sporting goods, activewear and sports equipment retail locations in the northeastern United States under the brands "Eastern Mountain Sports" ("**EMS**") and "Bob's Stores" ("**Bob's**"). EMS marketed to the adventurer looking for reliable and functional outerwear and gear at a value price, while Bob's targeted moderate-income customers with a selection of footwear, workwear, teamwear and activewear. Under both brands, the Debtors operated approximately 50 retail outlets and maintained an e-commerce presence.

The Debtors' most valuable single asset class as of the Petition Date was their inventory. As of the Petition Date, the Debtors had approximately $37.27 million in gross inventory on a cost basis.

The Debtors' operations were principally conducted from their corporate headquarters and distribution center in Meriden, Connecticut; *however*, as part of the restructuring process, the Debtors vacated the distribution center, and through the later of the Sale Closing Date (for locations sold to the Purchaser) or September 30, 3024 (the final date of the Inventory Sale), operated from their larger stores and remotely.

As of the Petition Date, the Debtors employed approximately 800 full- and part-time employees. The Debtors currently employ a single, full-time employee, the Authorized Representative of the Debtors, David Barton; as well as several part-time employees (only as and when needed, and amounting to approximately one full-time employee).

### 2.02    The Ownership Structure of the Debtors

The Debtors' ultimate parent, Bob's EMS Holdings LLC (a non-debtor) ("**Bob's EMS**") is majority owned by GoDigital Brand Services, which in turn is owned by GoDigital Media Group. On May 24, 2022, Bob's EMS acquired 100% of the equity in Roberts 50 (a non-debtor) from SDI Holdings USA LLC. At the time of the acquisition, Roberts 50 was, and continues to be, the sole owner of the Debtors.

The acquisition of the Debtors by Roberts 50 was executed through a securities purchase agreement among Roberts 50, SDI Holdings USA Inc., and Bob's EMS. Under the terms of the Securities Purchase Agreement, SDI Holdings USA Inc. transferred all issued and outstanding units of limited liability company interests in Roberts 50 to Bob's EMS. This transaction resulted in a complete change of ownership of the Debtors, with Bob's EMS indirectly owning them through its 100% ownership of Roberts 50.

The corporate structure and purpose of each entity is as follows:



### 2.03    The Debtors' Prepetition Capital Structure

(a)    <u>The PNC Debt</u>

The Debtors' primary lender and secured creditor at the time of filing was PNC. As of the Petition Date, PNC was owed approximately $24.9 million pursuant to a revolver and $4.5 million pursuant to a FILO loan, for a combined aggregate amount of approximately $29.4 million owed under the Loans. The Debtors were current on payments on the Loans through the Petition Date. PNC held a first-priority security interest in the Debtors' inventory, receivables, deposit accounts, and proceeds.

(b)    <u>Unsecured Debt</u>

As of the Petition Date, the Debtors estimated they owed aggregate unsecured operating debt of approximately $26.67 million. These obligations were generally owed to landlords for back rent, trade creditors, and other outstanding operating debts.

### 2.04    Events Leading to the Chapter 11 Cases

On March 29, 2024, PNC declared a default under the Loan Agreement. Subsequently, PNC exercised dominion over the Debtors' cash and receivables; and only agreed to fund certain limited expenses as the Debtors tried to work out a reorganization plan with PNC's consent.

Prepetition, the Debtors explored alternatives for maximizing value for PNC and other creditors, including: (a) a full orderly wind-down of the Debtors' business lines and liquidation of the inventory via "going out of business" sales ("**Orderly Wind-Down**"); and (b) a hybrid approach where a material portion of the inventory is liquidated but the Debtors engage in a restructuring transaction centered around certain "flagship" locations ("**Hybrid Approach**"). The Debtors believed that a Hybrid Approach would yield the best recovery, while PNC wanted the Debtors to liquidate their inventory via the Orderly Wind-Down approach.

These discussions did not result in a consensual resolution, and on or about June 12, 2024, PNC stopped funding the Debtors entirely.

### 2.05    Commencement of the Chapter 11 Cases and First Day Relief

The Debtors commenced these Chapter 11 Cases on the Petition Date (June 18, 2024). Shortly after the Petition Date, the Debtors sought various types of "first day" relief intended to facilitate the transition of the Debtors' business operations into chapter 11. The Bankruptcy Court entered several "first day" orders (and later final orders, where appropriate), which authorized, among other things:

- joint administration of the Chapter 11 Cases for procedural purposes [D.I. 34];

- the maintenance of the Debtors' existing bank accounts and business forms and the operation of the Debtors' existing cash management system [D.I. 41, 133];

- the establishment of procedures for requesting additional adequate assurance and prohibiting the Debtors' utility companies from altering, refusing or discontinuing service [D.I. 40, 156];

- the appointment of Epiq as the Debtors' claims and noticing agent [D.I. 71];

- the payment of certain prepetition sales and use taxes [D.I. 43, 136];

- the payment of certain prepetition employee wages, benefits and other obligations [D.I. 38, 132]; and

- the continuance of certain customer programs [D.I. 72, 249].

### 2.06    Retention of Estate Professionals and Appointment of Committee

To assist the Debtors in carrying out their duties as debtors in possession, and to represent their interests in the Chapter 11 Cases, the Debtors obtained Bankruptcy Court approval to retain Goldstein & McClintock LLLP as general bankruptcy counsel [D.I. 217]; and Silverman

Consulting as financial advisor [D.I. 237]. The Debtors also obtained Bankruptcy Court approval to employ certain ordinary course professionals [D.I. 146].

On July 3, 2024, the Office of the U.S. Trustee appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I. 83]. The Committee is comprised of five members: (i) Amer Sports Winter and Outdoor Co.; (ii) Ariat International, Inc.; (iii) Marmot Mountain LLC; (iv) Oboz Footwear LLC; and (v) VF Corp.

To represent their interests, the Committee obtained Bankruptcy Court approval to retain Lowenstein Sandler LLP as co-counsel to the Committee [D.I. 206], Morris James LLP as co-counsel to the Committee [D.I. 207], and Province, LLC as financial advisor for the Committee [D.I. 190].

### 2.07    Initial Cash Collateral Disputes with PNC

As mentioned earlier, the Debtors and PNC disagreed as to the best way to pay off PNC's debt, and as a result, when the Debtors commenced these Chapter 11 Cases, they had no agreement with PNC regarding the use of cash collateral. As a result, the outset of the Chapter 11 Cases was largely consumed by disputes between the Debtors and PNC and a series of short-term, interim measures. Initially, to avoid an immediate shutdown of the Debtors' operations, the Court entered two interim orders allowing the use of cash collateral [D.I. 45, 80].

After negotiations among the Debtors, PNC and the Committee, the Debtors proposed a two-prong approach: the Debtors would file a motion to sell their inventory and intellectual property (the "**IP**") and close certain unproductive stores, but would also conduct a sale process for substantially all of the Debtors' assets in certain stores that the Debtors believed were viable.

### 2.08    Sale of the Debtors' Assets and Dispute with GoDigital and Roberts 50

The Debtors effectuated this dual-pronged approach by filing the Inventory Sale Motion on June 25, 2024 and the Sale Motion on July 15, 2024. Thereafter, the Debtors, the Committee and the Prepetition Lenders engaged in extensive negotiations regarding (i) the terms of bidding procedures to govern the sale and marketing process, and (ii) the terms of the Asset Purchase Agreement, which was to serve as the stalking horse bid for the Debtors' Assets.

It became apparent that Roberts 50 was going to challenge the ownership of certain intellectual property assets (the "**Disputed Property**") that the Debtors sought to sell as part of the Sale Motion. Therefore, on July 22, 2024, the Committee, with the Debtors' consent to standing, commenced an adversary proceeding (the "**Adversary Proceeding**") and filed that certain *Emergency Complaint for Declaratory Judgment Regarding Property of the Estates in Connection with the Sale Process* [Adv. Pro. No. 24-50095-MFW, D.I. 1] (the "**Complaint**") against GoDigital Brand Services and Roberts 50 (together, the "**Defendants**") asserting claims for, among other things: (i) declaratory judgment that the disputed property is property of the Debtors' estates; (ii) injunctive relief to prevent the Defendants from selling, using, or otherwise disposing of the Disputed Property while the adversary proceeding was pending; and (iii) turnover of the Disputed Property pursuant to section 542 of the Bankruptcy Code. On July 23 and 24, 2024, the Committee filed the Temporary Restraining Order Motion and Summary Judgment

Motion, respectively.  On July 24, 2024, the Bankruptcy Court entered the Temporary Restraining Order.

On August 6, 2024, during the time the Adversary Proceeding was pending, GoDigital Brand Services and Roberts 50 filed an objection to the Sale Motion asserting, among other things, a title dispute in connection with the proposed sale of the Disputed Property [D.I. 241] (the "**Title Objection**").

After extensive negotiations by and among the Debtors, the Committee, PNC, GoDigital Brand Services, Roberts 50, and Jason Peterson (collectively, the "**Parties**"), the Parties entered into that certain stipulation resolving the Title Objection and the Adversary Proceeding [Adv. Pro. No. 24-50095-MFW, D.I. 35] (the "**Stipulation**").  On August 8, 2024, the Bankruptcy Court entered an Order [Adv. Pro. No. 24-50095-MFW, D.I. 36] approving the Stipulation, which paved the way for the sale of the Debtors' assets, including the Disputed Property, and provided that the Defendants and Mr. Peterson must cooperate in good faith as needed to facilitate the transfer of the Debtors' Assets in connection with any such sale.

Upon the Parties reaching a resolution of these issues, as well as issues relating to the DIP Financing Motion (as described above), the Bankruptcy Court entered the Bidding Procedures Order approving: (i) the terms of agreed-upon bidding procedures and (ii) the Asset Purchase Agreement as the stalking horse bid for substantially all of the Debtors' Assets.

Despite a fulsome marketing process, the Debtors did not receive any competing bids for the Debtors' Assets by the bid deadline set forth in the Bidding Procedures Order. Accordingly, on August 29, 2024, the Bankruptcy Court entered the Sale Order, thereby approving the Sale to the Purchaser pursuant to the terms of the Asset Purchase Agreement.  The Sale subsequently closed on August 30, 2024.  The Debtors ceased operations at the seven stores transferred to the Purchaser upon the closing of the Sale.

### 2.09    Post-Sale Administration of the Estates

(a)    Closure of Remaining Stores and Rejection of Certain Remaining Executory Contracts

On September 30, 2024, the Debtors completed the Inventory Sale and closed the remaining stores that were not assigned to the Purchaser.

Thereafter the Debtors filed motions to reject any remaining Executory Contracts which were no longer necessary to the Estates, given that the Debtors ceased operating upon closing of the Sale and the completion of the Inventory Sale, and the Court entered orders thereon.  In particular, the Debtors sought authority to reject (i) their distribution center lease; (ii) the remaining store leases; and (iii) various executory contracts related to store operations.

(b)    Reconciliation of Amex Payments

Following the store closings, the Debtors determined that American Express was holding certain of the Debtors' receivables in the amount of $1,387,695.01 (the "**Reserve**"), of which (i) $1,162,0021.88 was funded after the Petition Date (the "**Post-Petition Reserve**") and

(ii) $225,673.13 was funded before the Petition Date (the "**Remaining Reserve**").  As a result of extensive negotiations between the Debtors and American Express, the parties entered into that certain *Agreement and Release* effective as of November 13, 2024 that, among other things, provided for a release of the Post-Petition Reserve to the Debtors.  American Express still remains in possession of the Remaining Reserve. The Debtors have made a demand for the Remaining Reserve and are in negotiations with American Express regarding same. To the extent American Express refuses to turn over the Remaining Reserve to the Debtors, the Debtors will seek relief from the Court.

### 2.10    Claims Bar Date, Claims Pool and Reconciliation

(a)    Bar Date and Claims Pool

Each of the Debtors filed its Schedules with the Bankruptcy Court on July 31, 2024 [D.I. 218, 219, 220, 221, and 222].

By the Bar Date Order, the Bankruptcy Court established December 20, 2024 as the General Bar Date and the Governmental Bar Date.

In total, there were approximately 1,131 Proofs of Claim filed by the General Bar Date. As set forth above, Mountain Sports LLC and SDI Stores LLC were the only operating Debtors.  The remainder of the Debtors were holding companies or special purpose companies with no operations or significant assets.

(b)    Claims Reconciliation

Since the General Bar Date, the Debtors have engaged in a preliminary reconciliation of certain Filed Claims in advance of proposing and seeking approval and Confirmation of this Combined Disclosure Statement and Plan.  Those efforts have resulted in the following:

- Stipulations resolving certain Administrative Claims [D.I. 510, 512, 521, 533, 553, 587, 592, 595, and 627];

- Filing a Notice of Satisfaction of Claims [to be filed];

- Withdrawal of Priority Tax Claims filed by the Internal Revenue Service ("**IRS**") in the approximate amount of $48,349.87 [D.I. 689]; and

- Filing several Omnibus (Substantive and Non-Substantive) Objections to Claims. D.I. 690, 691, and others to be filed]

Importantly, consistent with the Notice of Satisfaction of Claims, PNC's Claim, the only Secured Claim asserted against the Estates in these Chapter 11 Cases, has been paid in full and is fully satisfied.

The Claims reconciliation process is ongoing, and as set forth in the Plan, the Plan Proponents or the Liquidating Trustee, as applicable, will continue the process of reconciling Claims.  As set forth in Section 3.04 of this Combined Disclosure Statement and Plan below, after

the Effective Date, the Estates of the Debtors will be deemed substantively consolidated solely for purposes of voting on, and receiving Distributions under, this Combined Disclosure Statement and Plan.

## ARTICLE III

## CONFIRMATION PROCEDURES

### 3.01    Confirmation Procedures

On January 14, 2026, the Court entered the Solicitation Procedures Order [D.I. 907] Among other things, the Solicitation Procedures Order, approved the adequacy of disclosures in the Plan on an interim basis and set certain deadlines for the solicitation of the Plan, voting on the Plan, filing objections to the Plan and a hearing to consider approval of the Plan.  The Confirmation Hearing has been scheduled for **March 12, 2026 at 2:00 p.m.** (prevailing Eastern time) at the Bankruptcy Court to consider (a) final approval of the Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.  The Confirmation Hearing may be adjourned from time to time by the Plan Proponents without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.

### 3.02    Procedure for Objections

Any objection to final approval of the Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or Confirmation of the Plan must be made in writing and Filed with the Bankruptcy Court and served on the following parties so as to be actually received on or before **March 1, 2026 at 4:00 p.m. (prevailing Eastern time)** upon: (a) counsel to the Debtors: Goldstein and McClintock LLLP, Attn: Maria Aprile Sawczuk, Esquire (marias@goldmclaw.com); (b) counsel to the Committee, Lowenstein Sandler, LLP, Attn: Jeffrey Cohen, Esquire (jcohen@lowenstein.com), Brent I. Weisenberg, Esquire (bweisenberg@lowenstein.com) and Erica G. Mannix, Esquire (emannix@lowenstein.com); and (c) counsel to the Office of the United States Trustee, Megan Seliber, Esquire (megan.seliber@usdoj.gov).  Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

### 3.03    Requirements for Confirmation

The Bankruptcy Court may Confirm the Plan if it meets the applicable requirements of section 1129 of the Bankruptcy Code. Among other requirements, the Plan (a) must be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class, the Plan must not "discriminate unfairly" against, and be "fair and equitable" with respect to, such Class; and (b) must be feasible.  In order to confirm the Plan, the Bankruptcy Court must also find that: (i) the Plan has classified Claims and Interests in a permissible manner; (ii) the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.

### 3.04    Deemed Substantive Consolidation

The Combined Disclosure Statement and Plan is being proposed as a joint plan of liquidation solely for the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of liquidation for each Debtor.  Solely for purposes of voting on, and receiving Distributions under the Combined Disclosure Statement and Plan, the Estates of the Debtors are deemed to be substantively consolidated, *i.e.*: (i) all assets and liabilities of the Debtors are deemed to be assets and liabilities, respectively, of a single Estate; (ii) all guarantees by one Debtor of the obligations of another Debtor are deemed eliminated; (iii) any joint and several liability of any of the Debtors are deemed to be one Claim against a single Estate; and (iv) Proofs of Claim filed against multiple Debtors are deemed to be one Claim against a single Estate.  This deemed consolidation will not affect: (i) the legal and corporate structures of the Debtors; (ii) the rights of the Holders of Allowed Claims to receive Distributions from any insurance policies or proceeds of such policies, including, without limitation, the D&O Policy; (iii) any Liens granted or arising any time prior to the Effective Date or the priority of those Liens; or (iv) the rights of the Debtors or Liquidating Trustee to contest alleged setoff or recoupment rights on the grounds of lack of mutuality under section 553 of the Bankruptcy Code and other applicable law.

As a result, Claims Filed against multiple Debtors seeking recovery of the same debt shall only be entitled to receive a single Distribution from the consolidated Estates in accordance with the Combined Disclosure Statement and Plan to the extent such Claim is an Allowed Claim.  Claims of Debtors against other Debtors, including Intercompany Claims, shall be disregarded for both voting and distribution purposes.  This deemed substantive consolidation shall have no effect on any claims or defenses of any Person or Entity or on any right of setoff, offset or recoupment rights.  Voting will be tabulated on a substantively consolidated basis.

This deemed substantive consolidation is appropriate and justified under the circumstances of the Debtors' Chapter 11 Cases because, while it may minimally affect the Distributions that creditors would receive without consolidation, it avoids the administrative costs of, among other things, administering multiple liquidating trusts for the Debtors' Estates, thereby avoiding diluting overall creditor recoveries as a result of increased professional fees.

### 3.05    Classification of Claims and Equity Interests

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders.  In accordance with section 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified).  The Plan Proponents also are required, under section 1122 of the Bankruptcy Code, to classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest.  The Plan Proponents believe that the Plan complies with such standard.  If the Bankruptcy Court finds otherwise, however, it could deny Confirmation of the

Plan if the Holders of Claims or Interests affected do not consent to the treatment afforded them under the Plan.

A Claim or Interest is placed in a particular Class only to the extent such Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date. The Plan Proponents believe that the Plan has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law. It is possible that a Holder of a Claim or Interest may challenge the Plan Proponents' classification of Claims or Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. If such a situation develops, the Plan Proponents intend, in accordance with the terms of the Plan, to make such permissible modifications to the Plan as may be necessary to permit its Confirmation. Any such reclassification could adversely affect Holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Plan.

EXCEPT AS SET FORTH IN THE PLAN, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.

The amount of any Claim that ultimately is Allowed by the Bankruptcy Court may vary materially from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each Class of Claims may also vary materially from any estimates contained herein with respect to the aggregate Claims in any Class. Thus, the actual recovery ultimately received by a particular Holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed. Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein and/or the actual Distribution received by Creditors. The projected recoveries are based on information available to the Plan Proponents as of the date hereof and reflect the Plan Proponents' views as of the date hereof only.

The classification of Claims and Interests and the nature of Distributions to members of each Class are summarized herein. The Plan Proponents believe that the consideration, if any, provided under the Plan to Holders of Claims reflects an appropriate resolution of their Claims taking into account the differing nature and priority (including applicable contractual subordination) of such Claims and Interests. The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Plan. Many of these tests are designed to protect the interests of Holders of Claims or Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

### 3.06    Impaired Claims or Equity Interests

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are "impaired" (as defined in section 1124 of the Bankruptcy Code) under a plan may vote to accept or reject such plan.  Generally, a claim or interest is impaired under a plan if the holder's legal, equitable or contractual rights are changed under such plan.  In addition, if the holders of claims or interests in an impaired class do not receive or retain any property under a plan on account of such claims or interests, such impaired class is deemed to have rejected such plan under section 1126(g) of the Bankruptcy Code and, therefore, such holders are not entitled to vote on such plan.

Under the Plan, only Holders of Claims in Class 2 (General Unsecured Claims) and Class 3 (Insider Claims) are Impaired and are entitled to vote on the Plan.  Under the terms of the Plan, Holders of Claims in Class 4 (Intercompany Claims) and Holders of Interests in Class 5 are Impaired and are deemed to reject the Plan and are therefore not entitled to vote on the Plan.  Under the Plan, Holders of Claims in Class 1 are Unimpaired and, therefore, not entitled to vote on the Plan and are deemed to accept the Plan.

ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASS 2 (GENERAL UNSECURED CLAIMS) AND CLASS 3 (INSIDER CLAIMS).

### 3.07    Confirmation Without Necessary Acceptances; Cramdown

In the event that any impaired class of claims or interests does not vote to accept a plan, a debtor nevertheless may move for confirmation of the plan.  A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code.  Section 1129(b) of the Bankruptcy Code requires that a court find that a plan "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests.  Here, because Holders of Claims and Interests in Classes 4 and 5 are deemed to reject the Plan, the Plan Proponents will seek Confirmation of the Plan from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code if the Plan is accepted by Holders of Claims in Class 2.  The Plan Proponents believe that such requirements are satisfied.

A plan does not "discriminate unfairly" if (a) the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the non-accepting class and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests.  The Plan Proponents believe that, under the Plan, all Impaired Classes of Claims or Interests are treated in a manner that is consistent with the treatment of other Classes of Claims or Interests that are similarly situated, if any, and no Class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims or Allowed Interests in such Class.  Accordingly, the Plan Proponents believe that the Plan does not discriminate unfairly as to any Impaired Class of Claims or Interests.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." In order to determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors and equity holders, as follows:

(a)    <u>Secured Creditors</u>. Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

(b)    <u>Unsecured Creditors</u>. Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

(c)    <u>Equity Interests</u>. Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan. As discussed above, the Plan Proponents believe that the Distributions provided under the Plan satisfy the absolute priority rule, where required.

### 3.08   Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the debtors or any successor to the debtors (unless such liquidation or reorganization is proposed in the plan). Inasmuch as the Debtors' Assets have principally been liquidated and the Plan provides for the distribution of all of the Cash proceeds of the Debtors' Assets to Holders of Claims that are Allowed as of the Effective Date in accordance with the Plan, for purposes of this test, the Plan Proponents have analyzed the ability of the Liquidating Trust to meet its obligations under the Plan. Based on the Plan Proponents' analysis, the Liquidating Trustee will have sufficient assets to accomplish its tasks under the Plan. Therefore, the Plan Proponents believe that the liquidation pursuant to the Plan will meet the feasibility requirements of the Bankruptcy Code.

### 3.09   Best Interests Test and Liquidation Analysis

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires a court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find

either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code. To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 case was converted to a chapter 7 case under the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtors' unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is greater than the Distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class. A copy of the Liquidation Analysis will be filed as part of the Plan Supplement.

Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan. However, the Plan Proponents believe that in a chapter 7 liquidation, there would be additional costs and expenses that the Estates would incur as a result of liquidating the Estates in chapter 7.

The costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a chapter 7 trustee, as well as the costs of counsel and other professionals retained by the chapter 7 trustee. The Plan Proponents believe such amount would exceed the amount of expenses that would be incurred in implementing the Plan and winding up the affairs of the Debtors. The Estates would also be obligated to pay all unpaid expenses incurred by the Debtors during the Chapter 11 Cases (such as compensation for Professionals) that are allowed in the chapter 7 case. Conversion also would likely delay the liquidation process and ultimately distributions.

Accordingly, the Plan Proponents believe that Holders of Allowed Claims would receive less than anticipated under the Plan if the Chapter 11 Cases were converted to chapter 7 cases, and therefore, the classification and treatment of Claims and Interests in the Plan complies with section 1129(a)(7) of the Bankruptcy Code.

### 3.10    Acceptance of the Plan

The rules and procedures governing eligibility to vote on the Plan, solicitation of votes, and submission of ballots are set forth in the Solicitation Procedures Order. In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Plan. At least one Voting Class, excluding the votes of Insiders, must actually vote to accept the Plan.

IF YOU ARE ENTITLED TO VOTE ON THE PLAN, YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY MAIL THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY AND TO

IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE HOLDER. IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT OR YOU LOST YOUR BALLOT OR IF YOU HAVE ANY QUESTIONS CONCERNING THE PLAN OR PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE VOTING AGENT VIA E-MAIL AT MOUNTAINSPORTS@EPIQGLOBAL.COM OR YOU CAN GO TO THE DEBTORS' WEBSITE AT HTTPS://DM.EPIQ11.COM/CASE/MTQ/INFO.   THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

## ARTICLE IV

## CLASSIFICATION OF CLAIMS AND INTERESTS AND EXPECTED RECOVERIES

### 4.01    Overview of Classification

Pursuant to section 1122 of the Bankruptcy Code, a Claim or Equity Interest is placed in a particular Class for purposes of voting on the Plan and receiving Distributions under the Plan only to the extent (i) the Claim or Equity Interest qualifies within the description of that Class; and (ii) the Claim or Equity Interest has not been paid, released, or otherwise compromised before the Effective Date.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Compensation Claims, and Priority Tax Claims are not classified under the Plan and are excluded from the Classes of Claims set forth herein.

### 4.02    Identification and Treatment of Unclassified Claims

(a)    Administrative Claims. On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for its Allowed Administrative Claim: (a) a Distribution of Cash from the Estate Cash in an amount equal to the amount of such Allowed Administrative Claim; or (b) such other treatment as to which the Plan Proponents or the Liquidating Trustee, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.

(i)    Administrative Claim Bar Date. Holders of Administrative Claims accruing from the Petition Date through and including the Effective Date, other than Professional Fee Claims, shall File with the Bankruptcy Court and serve on the Liquidating Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, so as to actually be received on or before the Administrative Claim Bar Date.  Any such Claim not Filed by the Administrative Claim Bar Date shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof.   The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Administrative Claim Bar Date and shall constitute notice of such Bar Date.  The Liquidating Trustee shall have 365 days following the Effective Date (or such longer period as may be allowed by order of the Bankruptcy Court on

motion of the Liquidating Trustee) to review and object to Administrative Claims other than Professional Fee Claims.

(ii)    Bar Date for Applications for Professional Fees. All applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date.  If an application for a Professional Fee Claim is not Filed by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof.  The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Professional Fee Bar Date and shall constitute notice of such Bar Date.  The final allowance of Professional Fee Claims shall be subject to further order of the Bankruptcy Court.

(iii)    Section 503(b)(9) Claims. For the avoidance of doubt, the deadline for Filing requests for payment of 503(b)(9) Claims was the General Bar Date and the deadline for Filing such requests is not extended by either the Plan nor the Confirmation Order.

(b)    Priority Tax Claims. On or as soon as reasonably practicable the Effective Date, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for its Allowed Priority Tax Claim: (a) a Distribution of Cash from the Estate Cash equal to the amount of such Allowed Priority Tax Claim; or (b) such other treatment as to which the Plan Proponents or the Liquidating Trustee, as applicable, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

(c)    Administrative and Priority Tax Claim Reserve. As set forth in Section 8.02 of this Plan, on or as soon as reasonably practicable after the Effective Date, the Liquidating Trustee shall establish reserves in Cash, in an amount sufficient for the payment of all Administrative Claims and Priority Tax Claims.  Such reserves will be established from the Estate Cash.

## 4.03    Identification of Classes of Claims

(a)    Treatment of Priority Non-Tax Claims (Class 1). Each Holder of an Allowed Priority Unsecured Non-Tax Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, in full and final satisfaction, settlement, and release of and in exchange for its Allowed Priority Unsecured Non-Tax Claim, either a Distribution of Cash from the Estate Cash equal to the full unpaid amount of such Allowed Priority Unsecured Non-Tax Claim, or such other treatment as the Plan Proponents or the Liquidating Trustee, as applicable, and the holder of such Allowed Priority Unsecured Non-Tax Claim shall have agreed. Such Claims are therefore unimpaired, are deemed to accept the Plan, and are not entitled to vote.

(b)    Treatment of General Unsecured Claims (Class 2).

Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim against the Debtors shall receive, in full and final satisfaction, settlement, and release of and in exchange for its

Allowed General Unsecured Claim, its Liquidating Trust Interests entitling each such Holder to receive its Pro Rata share of the Residual Cash. Distributions to Holders of Allowed General Unsecured Claims shall be made at such times and in such intervals as determined by the Liquidating Trustee.

Class 2 General Unsecured Claims are impaired and are entitled to vote on the Plan.

(c)     Treatment of Insider Claims (Class 3).

Except to the extent that a Holder of an Allowed Insider Claim agrees to less favorable treatment, each Holder of an Allowed Insider Claim against the Debtors shall receive, in full and final satisfaction, settlement, and release of and in exchange for its Allowed Insider Claim, its Liquidating Trust Interests entitling each such Holder to receive its Pro Rata share of the Residual Cash. Allowed Insider Claims shall share Pro Rata with Allowed General Unsecured Claims in any remaining Residual Cash. Distributions to Holders of Allowed Insider Claims shall be made at such times and in such intervals as determined by the Liquidating Trustee.

Class 3 Insider Claims are impaired and are entitled to vote on the Plan.

(d)     Treatment of Intercompany Claims (Class 4).

On the Effective Date all Intercompany Claims and other Intercompany liabilities, whether arising prior to or after the Petition Date, shall be deemed canceled, extinguished and of no further force and effect. Holders of Intercompany Claims shall not be entitled to receive or retain any property on account of such Claim. On or after the Effective Date, the Liquidating Trustee may reconcile such Intercompany Claims as may be advisable in order to avoid the incurrence of any past, present, or future tax or similar liabilities by such Debtor.

Class 4 Intercompany Claims are impaired, deemed to reject the Plan, and not entitled to vote.

(e)     Treatment of Equity Interests (Class 5). On the Effective Date, all Interests shall be deemed canceled, extinguished and of no further force or effect, and the Holders of Interests shall not be entitled to receive or retain any property on account of such Interest. Class 6 Equity Interests are impaired, and deemed to reject Plan, and are not entitled to vote.

**4.04     Treatment of Classified Classes, Rights to Vote, and Estimated Distributions**

The table below sets forth the proposed treatment of Classified Claims, rights to vote on the Plan, and estimated Distributions as of the date hereof.

The information set forth in the table below is provided in summary form for illustrative purposes only and is subject to material change based on certain contingencies, including without limitation relating to, the amount of Proofs of Claim that are Filed after the Bar Date, and the amount of Claims that exist after the claims reconciliation process. Actual recoveries may widely vary within these ranges, and any changes to any of the assumptions underlying these amounts could result in material adjustments to recovery estimates provided herein and/or the actual Distributions received by Creditors. The projected recoveries are based on information available

to the Plan Proponents as of the date hereof and reflect the Plan Proponents' best estimates as of the date hereof only.  In addition to the cautionary notes contained elsewhere in the Combined Disclosure Statement and Plan, it is underscored that **the Plan Proponents make no representation whatsoever as to the accuracy of these recovery estimates.**  The Plan Proponents expressly disclaim any obligation to update any estimates or assumptions after the date hereof on any basis (including new or different information received and/or errors discovered).  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described herein, have not been classified, and the respective treatment of such unclassified Claims is set forth below.  The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation and Distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

| Class/Designation | Plan Treatment | Status | Estimated Claim Pool/ Projected Recovery |
|---|---|---|---|
| Class 1: Priority Non-Tax Claims | Each holder of an Allowed Priority Unsecured Non-Tax Claim against the Debtors shall receive on or as soon as reasonably practicable after the Effective Date, on account of and in full and complete settlement, and release of, and in exchange for, such Allowed Priority Unsecured Non-Tax Claim, either a Distribution of Cash from the Estate Cash equal to the full unpaid amount of such Allowed Priority Unsecured Non-Tax Claim, or such other treatment as the Plan Proponents or the Liquidating Trustee, as applicable, and the holder of such Allowed Priority Unsecured Non-Tax Claim shall have agreed. | Unimpaired; **Not entitled to vote;** Deemed to accept Plan | Approx. $0 to $350,000 Recovery: 100% |

| Class/Designation | Plan Treatment | Status | Estimated Claim Pool/ Projected Recovery |
|---|---|---|---|
| Class 2: General Unsecured Claims | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim against the Debtors shall receive on account of and in full and complete settlement and release of, and in exchange for, such Allowed General Unsecured Claim its Liquidating Trust Interests entitling each such Holder to receive its Pro Rata share of the Residual Cash. | Impaired; **Entitled to vote** | Approx. $35 mil. to $40 mil. Estimated Recovery: 0.8%-2.2% |
| Class 3: Insider Claims | Except to the extent that a Holder of an Allowed Insider Claim agrees to less favorable treatment, each Holder of an Allowed Insider Claim against the Debtors shall receive on account of and in full and complete settlement and release of, and in exchange for, such Allowed Insider Claim its Liquidating Trust Interests entitling each such Holder to receive its Pro Rata share of the Residual Cash.<br><br>Allowed Insider Claims shall share Pro Rata with Allowed General Unsecured Claims in any remaining Residual Cash. | Impaired; **Entitled to vote** | Approx. $0 to $23 mil. Recovery: 0%-1.4% |
| Class 4: Intercompany Claims | On the Effective Date, all Intercompany Claims and other Intercompany liabilities, whether arising prior to or after the Petition Date, shall be deemed canceled, extinguished and of no further force and effect.  Holders of Intercompany Claims shall not be entitled to receive or retain any property on account of such Claim. Class 4 Intercompany Claims are impaired, deemed to reject Plan, and not entitled to vote. | Impaired; Deemed to reject Plan and **Not entitled to vote** | Approx. $0 Recovery: 0%: |

| Class 5: Equity Interests | On the Effective Date, all Interests shall be deemed canceled, extinguished and of no further force or effect, and the Holders of Interests shall not be entitled to receive or retain any property on account of such Interest. | Impaired; Deemed to reject Plan and **Not entitled to vote** | Recovery: 0% |

### 4.05   Elimination of Classes for Voting Purposes

Any Class of Claims or Equity Interests that is not occupied as of the date of the commencement of the Confirmation Hearing shall be deemed deleted from the Plan for purposes of voting on acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

### 4.06   Confirmation via "Cramdown"

With respect to the Impaired Classes of Claims and Equity Interests that reject or that are deemed to have rejected the Plan, the Plan Proponents hereby request, without any delay in the occurrence of the Confirmation Hearing or Effective Date, that the Bankruptcy Court Confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code with respect to such non-accepting Classes, in which case the Plan shall constitute a motion for such relief.  As set forth in section 3.06 of this Combined Disclosure Statement and Plan, the Plan Proponents believe the Plan satisfies the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code.

### 4.07   Controversy Concerning Classification, Impairment or Voting Rights

In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Interest Holder under the Plan, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy.  Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes (i) the amount of any contingent or unliquidated Claim the fixing or liquidation of, as the case may be, would unduly delay the administration of the Chapter 11 Cases and (ii) any right to payment arising from an equitable remedy for breach of performance.

### 4.08   Insurance

Notwithstanding anything to the contrary herein, unless elected otherwise by the Liquidating Trustee, if any Allowed Claim or Administrative Claim is covered by an Insurance Policy, such Claim or Administrative Claim shall first be paid from proceeds of such Insurance Policy to the extent such proceeds are available, with the balance, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim or Administrative Claim.

# ARTICLE V

## CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### 5.01    The Plan May Not Be Accepted

The Plan Proponents can make no assurances that the requisite acceptances to the Plan will be received, and the Plan Proponents may need to obtain acceptances of an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of Creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code.  There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to Creditors as those proposed in the Plan.

### 5.02    The Plan May Not Be Confirmed

Even if the Plan Proponents receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan.  Even if the Bankruptcy Court determined that the Combined Disclosure Statement and Plan and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for Confirmation have not been met.  Moreover, there can be no assurance that modifications to the Combined Disclosure Statement and Plan will not be required for Confirmation or that such modifications would not necessitate the resolicitation of votes.  If the Plan is not confirmed, it is unclear what distributions Holders of Claims or Interests ultimately would receive with respect to their Claims or Interests in a subsequent plan of liquidation.

### 5.03    Distributions to Holders of Allowed Claims under the Plan May Be Inconsistent with Projections

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution.  There can be no assurance that the estimated Claim amounts set forth in the Plan are correct.  These estimated amounts are based on certain assumptions with respect to a variety of factors.  Both the actual amount of Allowed Claims in a particular Class and the funds available for Distribution to such Class may differ from the Plan Proponents' estimates.  If the total amount of Allowed Claims in a Class is higher than the Plan Proponents' estimates, or the funds available for distribution to such Class are lower than the Plan

35

Proponents' estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

### 5.04    Objections to Classification of Claims

Section 1122 of the Bankruptcy Code requires that the Plan classify Claims and Interests. The Bankruptcy Code also provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. The Plan Proponents believe that all Claims and Interests have been appropriately classified in the Plan. To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Plan Proponents would seek to (i) modify the Plan to provide for whatever classification might be required for Confirmation and (ii) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Plan based upon such reclassification. Except to the extent that modification of classification in the Plan requires resolicitation, the Plan Proponents will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such Holder, regardless of the Class as to which such Holder is ultimately deemed to be a member. The Plan Proponents believe that under the Bankruptcy Rules, the Debtors would be required to resolicit votes for or against the Plan only when a modification adversely affects the treatment of the Claim or Interest of any Holder. The Bankruptcy Code also requires that the Plan provides the same treatment for each Claim or Interest of a particular Class unless the Holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest. The Plan Proponents believe that the Plan complies with the requirement of equal treatment. To the extent that the Bankruptcy Court finds that the Plan does not satisfy such requirement, the Bankruptcy Court could deny Confirmation of the Plan. Issues or disputes relating to classification and/or treatment could result in a delay in the Confirmation and Consummation of the Plan and could increase the risk that the Plan will not be consummated.

### 5.05    Failure to Consummate the Plan

The Plan provides for certain conditions that must be satisfied (or waived) prior to Confirmation and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived). Accordingly, there can be no assurance that the Plan will be confirmed by the Bankruptcy Court. Further, if the Plan is confirmed, there can be no assurance that the Plan will be Consummated.

**5.06    Allowance of Claims May Substantially Dilute the Recovery to Holders of Claims under the Plan**

There can be no assurance that the estimated Claim amounts set forth in the Plan are correct, and the actual Allowed amounts of Claims may differ materially from such estimates. The estimated amounts are based on certain assumptions with respect to a variety of factors, including with respect to Disputed Claims. Should these underlying assumptions prove incorrect, the actual Allowed amounts of Claims may vary from those estimated herein, thereby materially reducing the recovery to the Holders of Allowed General Unsecured Claims and/or Allowed Insider Claims under the Plan.

**5.07    Certain Tax Considerations**

Each holder of a Claim is urged to consult its own tax advisor regarding the federal, state, and other tax consequences of the Combined Disclosure Statement and Plan. No rulings have been or are expected to be requested from the <u>IRS</u> with respect to any tax aspects of the Combined Disclosure Statement and Plan.

A summary description of certain United States ("**<u>U.S.</u>**") federal income tax consequences of the Combined Disclosure Statement and Plan is provided below. The description of tax consequences below is for informational purposes only and, due to lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various U.S. federal income tax consequences of the Combined Disclosure Statement and Plan as discussed herein. This discussion does not address the U.S. federal income tax consequences to (i) Holders of Claims that are unimpaired under the Plan, (ii) Holders of Claims that are not entitled to vote to accept or reject the Plan, or (iii) Interests that are not entitled to receive or retain any property under the Plan. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Combined Disclosure Statement and Plan, and no tax opinion is being given in the Combined Disclosure Statement and Plan. No rulings or determinations of the IRS or any other tax authorities have been obtained or sought with respect to any tax consequences of the Combined Disclosure Statement and Plan, and the discussion below is not binding upon the IRS or such other authorities. No representations are being made regarding the particular tax consequences of the confirmation and consummation of the Combined Disclosure Statement and Plan. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed herein. ***This discussion is intended for general information purposes only, and is not a complete analysis of all potential U.S. federal income tax consequences that may be relevant to the Debtors, Creditors, or any particular Holder of Claims.***

The discussion of the U.S. federal income tax consequences below is based on the Internal Revenue Code of 1986, as amended (the "**<u>Tax Code</u>**"), Treasury Regulations promulgated and proposed thereunder, judicial decisions, and administrative rulings and pronouncements of the IRS and other applicable authorities, all as in effect on the date hereof. Legislative, judicial or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and conclusions set forth below. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to the Holders of Claims. Any such changes or interpretations

37

may be retroactive and could significantly affect the U.S. federal income tax consequences discussed below.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to a particular Holder of a Claim in light of its particular facts and circumstances, or to certain types of Holders of Claims subject to special treatment under the Tax Code (for example, non-U.S. taxpayers, governmental entities and entities exercising governmental authority, banks and certain other financial institutions, broker-dealers, insurance companies, tax-exempt organizations, real estate investment trusts, regulated investment companies, persons holding a Claim as part of a hedge, straddle, constructive sale, conversion transaction or other integrated transaction, Holders of Claims that are, or hold their Claims through, a partnership or other pass-through entity, persons that have a functional currency other than the U.S. dollar, dealers in securities or foreign currencies, employees of the Debtors, persons who received their Claims pursuant to the exercise of an employee stock option or otherwise as compensation, or persons subject to the alternative minimum tax). This discussion does not address any aspects of state, local, non-U.S. taxation or U.S. federal taxation other than income taxation, nor does it address the Foreign Account Tax Compliance Act.

The following discussion assumes that: (i) the various debt and other arrangements to which any of the Debtors is a party will be respected for U.S. federal income tax purposes in accordance with their form and (ii) except where otherwise indicated, the Claims are held as "capital assets" (generally, property held for investment) within the meaning of section 1221 of the Tax Code.

If a partnership (including any entity treated as a partnership for U.S. federal income tax purposes) holds Claims, the U.S. federal income tax consequences to the partners of such partnership will depend on the activities of the partnership and the status of the partners. A partnership considering participating in the Plan should consult its tax advisor regarding the consequences to the partnership and its partners of the Plan.

The tax treatment of Holders of Claims and the character, amount and timing of income, gain or loss recognized as a consequence of the Plan and the distributions provided for by the Plan may vary, depending upon, among other things: (i) whether the Claim (or portion thereof) constitutes a Claim for principal or interest; (ii) the type of consideration received by the Holder of the Claim in exchange for the Claim and whether the Holder of the Claim receives distributions under the Plan in more than one taxable year; (iii) whether the Holder of the Claim is a citizen or resident of the United States for tax purposes, is otherwise subject to U.S. federal income tax on a net basis, or falls into any special class of taxpayers, such as those that are excluded from this discussion as noted above; (iv) the manner in which the Holder of the Claim acquired the Claim; (v) the length of time that the Claim has been held; (vi) whether the Claim was acquired at a discount; (vii) whether the Holder of the Claim has taken a bad debt deduction with respect to the Claim (or any portion thereof) in the current or prior years; (viii) whether the Holder of the Claim has previously included accrued but unpaid interest with respect to the Claim; (ix) the method of tax accounting of the Holder of the Claim; (x) whether the Claim is an installment obligation for U.S. federal income tax purposes; and (xi) whether the "market discount" rules are applicable to the Holder of the Claim. Therefore, each Holder of a Claim should consult its tax advisor for

information that may be relevant to its particular situation and circumstances, and the particular tax consequences to such Holder of a Claim of the transactions contemplated by the Plan.

**NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN TO ANY SPECIFIC HOLDER OF A CLAIM. EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE COMBINED DISCLOSURE STATEMENT AND PLAN.**

### 1.    Consequences to the Debtors

#### a.    Cancellation of Debt and Reduction of Tax Attributes

In general, the Tax Code provides that a debtor must recognize cancellation of debt ("**COD**") income upon the elimination or reduction of debt for insufficient consideration. The amount of COD income generally is equal to the amount by which the adjusted issue price of cancelled debt exceeds the sum of the amount of cash and the fair market value of any other property given in exchange therefor. Certain statutory or judicial exceptions may apply to limit the amount of COD incurred for U.S. federal income tax purposes. One such exception to such income recognition is provided for any COD arising by reason of the discharge of the debtor's indebtedness in a bankruptcy case or to the extent of the debtor's insolvency immediately before the cancellation of the debt. In such case, the Tax Code generally requires the debtor to reduce certain of its tax attributes—such as current year NOLs and NOL carryforwards, general business tax credit carryforwards, minimum tax credit carryforwards, capital loss carryforwards, the basis of the taxpayer's assets, and foreign tax credit carryforwards, in that order—by the amount of any such excluded COD income. Although not free from doubt, it is expected that carryover of disallowed interest expense would not be a tax attribute subject to such reduction. If advantageous, the debtor can elect to reduce the basis of depreciable property prior to any reduction in its NOL carryforwards or other tax attributes. In addition to the foregoing, Section 108(e)(2) of the Tax Code provides a further exception to the realization of COD income upon the discharge of debt in that a taxpayer will not recognize COD income to the extent that the taxpayer's satisfaction of the debt would have given rise to a deduction for federal income tax purposes (which could be applicable to any discharged interest on indebtedness).

In general, any reduction in tax attributes under the COD rules does not occur until the end of the tax year, after such attributes have been applied to determine the tax for the year or, in the case of asset basis reduction, the first day of the taxable year following the tax year in which the COD occurs.

As each of the Debtors is taxed as an entity disregarded from its sole owner, Bob's EMS, for U.S. federal income tax purposes, the Debtors' tax owner may realize COD income as a result of the Combined Disclosure Statement and Plan. The ultimate amount of any COD income realized is uncertain because, among other things, it will depend on the fair market value of all assets transferred to Holders of Claims issued on the Effective Date.

**In general, if a debtor sells property to a third party it will recognize taxable income equal to the difference between the amount realized on the sale and its tax basis in such assets sold.  In addition, if a debtor conveys appreciated (or depreciated) property (i.e., property having an adjusted tax basis less (or greater) than its fair market value) to a creditor in cancellation of debt, the debtor must recognize taxable gain or loss (which may be ordinary income or loss, capital gain or loss, or a combination of each) equal to the excess or shortfall, respectively, of such fair market value over the debtor's adjusted tax basis in such property. Accordingly, as each of the Debtors is taxed as an entity disregarded from its sole owner for U.S. federal income tax purposes, the Debtors' tax owner  will recognize gain or loss on the sale of the Purchased Assets and assumption of Assumed Liabilities to the Purchaser pursuant to the APA and the Debtors' tax owner may recognize gain or loss on the Sale of Inventory.**

On the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement, and shall take all steps necessary to establish the Liquidating Trust in accordance with this Combined Disclosure Statement and Plan, which shall be for the benefit of the Holders of Claims that receive beneficial interests in the Liquidating Trust.  Additionally, on the Effective Date the Debtors shall transfer and/or assign and shall be deemed to transfer and/or assign to the Liquidating Trust all of their rights, title and interest in and to all of the Liquidating Trust Assets, and in accordance with Bankruptcy Code Section 1141, the Liquidating Trust Assets shall automatically vest in the Liquidating Trust free and clear of all Claims and Liens, subject only to (a) the beneficial interests in the Liquidating Trust, and (b) the expenses of the Liquidating Trust as provided for in the Liquidating Trust Agreement and herein.

The Liquidating Trust shall be governed by the Liquidating Trust Agreement and administered by the Liquidating Trustee.  The powers, rights, responsibilities and compensation of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement. The Liquidating Trustee shall hold and distribute the Liquidating Trust Assets in accordance with this Combined Disclosure Statement and Plan and the Liquidating Trust Agreement. Other rights and duties of the Liquidating Trustee and the Holders of Allowed Class 2 Claims and Allowed Class 3 Claims that receive beneficial interests in Liquidating Trust shall be as set forth in the Liquidating Trust Agreement.

After the Effective Date, the Debtors shall have no interest in the Liquidating Trust Assets. To the extent that any Liquidating Trust Assets cannot be transferred to the Liquidating Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by Bankruptcy Code Section 1123 or any other provision of the Bankruptcy Code, such Liquidating Trust Assets shall be deemed to have been retained by the Debtors, the Liquidating Trust, or Liquidating Trustee shall be deemed to have been designated as a representative of the Debtors pursuant to Bankruptcy Code Section 1123(b)(3)(B) to enforce and pursue such Liquidating Trust Assets on behalf of the Debtors for the benefit of the Holders of Claims that receive beneficial interests in Liquidating Trust.  Notwithstanding the foregoing, all net proceeds of such Liquidating Trust Assets shall be transferred to the Liquidating Trust to be distributed in accordance with the Combined Disclosure Statement and Plan.

As detailed above, the Debtors will have several transactions that could give rise to taxable income or loss being generated due to implementation of this Combined Disclosure Statement and

Plan.  As each of the Debtors is taxed as an entity disregarded from its sole owner for U.S. federal income tax purposes, the Debtors' tax owner may recognize (i) gain or loss on the Sale of substantially all of the Debtors' operating assets to the Purchaser, the assumption of the Assumed Liabilities as set forth in the APA and the Sale of Inventory, and/or (ii) taxable income or loss in connection with the transfer of the Liquidating Trust Assets to the Liquidating Trust.

2.      **Consequences to Holders of Allowed Class 2 Claims and Allowed Class 3 Claims**

For purposes of this discussion, a "<u>**U.S. Holder**</u>" is a holder of an Allowed Class 2 Claim or Allowed Class 3 Claim that is: (1) an individual citizen or resident of the United States for U.S. federal income tax purposes; (2) a corporation (or other entity treated as a corporation for U.S. federal income tax purposes) created or organized under the laws of the United States, any state thereof, or the District of Columbia; (3) an estate the income of which is subject to U.S. federal income taxation regardless of the source of such income; or (4) a trust (A) if a court within the United States is able to exercise primary jurisdiction over the trust's administration and one or more United States persons have authority to control all substantial decisions of the trust, or (B) that has a valid election in effect under applicable Treasury Regulations to be treated as a United States person.

If a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes) is a holder of a Claim, the tax treatment of a partner (or other beneficial owner) generally will depend upon the status of the partner (or other beneficial owner) and the activities of the partner (or other beneficial owner) and the entity.  Partners (or other beneficial owners) of partnerships (or other pass-through entities) that are holders of Claims should consult their respective tax advisors regarding the U.S. federal income tax consequences of the Plan.

Pursuant to this Combined Disclosure Statement and Plan, each Holder of an Allowed Class 2 Claim or Allowed Class 3 Claim against the Debtors will receive in satisfaction of its Claim a beneficial interest in the Liquidating Trust Assets providing for a *pro rata* share of its recovery in the Liquidating Trust.  The U.S. federal income tax treatment to Holders of Allowed Class 2 Claims and Allowed Class 3 Claims may depend in part on the tax basis a Holder has in its Claim and, in some circumstances, what gave rise to or the nature of the Holder's Claim.

For U.S. federal income tax purposes, the Allowed Class 2 Claims and Allowed Class 3 Claims will be satisfied by the deemed transfer to them of the Liquidating Trust Assets followed by a deemed contribution of said assets to the Liquidating Trust in exchange for their Liquidating Trust interest in said Liquidating Trust.  It is intended that the Liquidating Trust be treated as a liquidating trust for federal income tax purposes, although it is possible an alternative tax characterization may result.

Because of the nature of the Liquidating Trust Assets, the deemed transfer by the Debtors of the Liquidating Trust Assets could cause a Holder to recognize gain, or loss, due to said transfer. To the extent that the (i) fair market value of the beneficial interest in the Liquidating Trust Assets that a Holder of an Allowed Class 2 Claim and/or Allowed Class 3 Claim receives, exceeds (or is less than), (ii) the Holder's tax basis in such Claim, the Holder should recognize gain (or loss) on

41

such deemed transfer equal to such excess. Such gain (or loss) could be capital or ordinary in nature depending on the genesis and nature of the Claim being satisfied. All taxable income and loss of the Liquidating Trust will be allocated among, and treated as directly earned and incurred by, holders of beneficial interests in the Liquidating Trust with respect to such holder's undivided interest in the Liquidating Trust Assets (and not as income or loss with respect to its prior Claims), with the possible exception of any taxable income and loss allocable to any assets allocable to, or retained on account of, Disputed Claims. The character of any income and the character and ability to use any loss will depend on the particular situation of the Holder of Claims receiving interests in the Liquidating Trust.

Where gain or loss is recognized by a U.S. Holder, the character of such gain or loss as long-term or short-term capital gain or loss, or as ordinary income or loss, will be determined by a number of factors, including the tax status of the holder, whether the Claim constitutes a capital asset in the hands of the holder and how long it has been held, whether the holder reports income using the accrual or cash method of tax accounting, whether the Claim was acquired at a market discount, whether, and to what extent, the holder previously claimed a bad debt deduction, and/or whether (as intended and herein assumed) the Plan implements the liquidation of the Debtors for U.S. federal income tax purposes.

A U.S. Holder that purchased its Claims from a prior holder at a "market discount" (relative to the principal amount of the Claims at the time of acquisition) may be subject to the market discount rules of the Tax Code. In general, a debt instrument is considered to have been acquired with "market discount" if the U.S. Holder's adjusted tax basis in the debt instrument is less than: (i) its stated principal amount or (ii) in the case of a debt instrument issued with OID, its adjusted issue price, in each case, by at least a statutorily defined *de minimis* amount. Under these rules, any gain recognized on the exchange of Claims (other than with respect to a Claim for accrued, but unpaid, interest) generally will be treated as ordinary income to the extent of the market discount accrued (on a straight line basis or, at the election of the holder, on a constant yield basis) during the U.S. Holder's period of ownership, unless the holder elected to include the market discount in income as it accrued. If a U.S. Holder of a Claim did not elect to include market discount in income as it accrued and, thus, under the market discount rules, was required to defer all or a portion of any deductions for interest on debt incurred or maintained to purchase or carry its Claim, such deferred amounts would become deductible at the time of the receipt of cash and other consideration in satisfaction of such Claims.

### 3.   Tax Treatment of the Liquidating Trust and Liquidating Trust Beneficiaries

#### a.   Classification of the Liquidating Trust as a Liquidating Trust

The Liquidating Trust is intended to qualify as a "liquidating trust" for U.S. federal income tax purposes (other than with respect to any portion of the assets transferred to the Liquidating Trust and allocable to, or retained on account of, Disputed Claims, as discussed below). In general, a liquidating trust is not a separate taxable entity but rather is treated for U.S. federal income tax purposes as a "grantor" trust (i.e., a pass-through entity). The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a Chapter 11 plan. The Liquidating Trust will be structured with

the intention of complying with such general criteria.  Pursuant to the Plan, and in conformity with Revenue Procedure 94-45, all parties to the Liquidating Trust (including, without limitation, the Debtors, Holders of Allowed Class 2 Claims and Allowed Class 3 Claims receiving interests in the Liquidating Trust, and the Liquidating Trustee) will be required to treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as (1) a transfer of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to the Holders of Allowed Class 2 Claims and Allowed Class 3 Claims receiving interests in the Liquidating Trust (other than to the extent any of the Liquidating Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such holders to the Liquidating Trust of the Liquidating Trust Assets in exchange for interests in the Liquidating Trust.  Accordingly, except in the event of contrary definitive guidance, Holders of Allowed Class 2 Claims and Allowed Class 3 Claims receiving interests in the Liquidating Trust (i.e., the beneficiaries of the Liquidating Trust) would be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets transferred to the Liquidating Trust (other than such Liquidating Trust Assets as are allocable to Disputed Claims).

Although the following discussion assumes that the Liquidating Trust will be treated as a liquidating trust for U.S. federal income tax purposes, no ruling will necessarily be requested from the IRS concerning the tax status of the Liquidating Trust as a grantor trust.  Accordingly, there can be no assurance that the IRS will not take a contrary position to the classification of the Liquidating Trust as a grantor trust. If the IRS were to successfully challenge such classification, the U.S. federal income tax consequences to the Liquidating Trust and the U.S. Holders of Allowed Class 2 Claims and Allowed Class 3 Claims receiving interests in the Liquidating Trust could vary from those discussed herein.  Certain U.S. federal income tax consequences of the Liquidating Trust or portions thereof being treated as a "disputed ownership fund" within the meaning of Treasury Regulation Section 1.468B-9 are also discussed below.

A portion of the Liquidating Trust allocable to Disputed Claims may be treated as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, which such portion would not be treated as a "flow-through" for U.S. federal income tax purposes.  If a "disputed ownership fund" election is made with respect to a Disputed Claims Reserve, such reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to such assets (including any gain recognized upon the disposition of such assets).  All distributions from such reserves will be treated as received by Holders in respect of their Claims as if distributed by the Debtors.  All parties to the Liquidating Trust (including, without limitation, the Debtors, Holders of Allowed Class 2 Claims and Allowed Class 3 Claims receiving interests in the Liquidating Trust, and the Liquidating Trustee) will be required to report for tax purposes consistently with the foregoing.

If all or a portion of the Liquidating Trust were not to qualify as a "liquidating trust", as described above, the Liquidating Trustee will take the position that it is a partnership for U.S. federal income tax purposes (other than that portion designated as a disputed ownership fund), to the extent allowable under applicable law.  If the trust is treated as a grantor trust or partnership for U.S. federal income tax purposes, each Liquidating Trust Beneficiary will include its distributive share of income, as reported to it by the Liquidating Trustee, and may not receive sufficient cash to satisfy its tax liability.  The IRS may take the position that the Liquidating Trust should be taxed as a corporation for U.S. federal income tax purposes.  If the IRS were to prevail

in that position, the Liquidating Trust would be subject to U.S. federal income tax which would reduce the return to a Liquidating Trust Beneficiary.  Each Liquidating Trust Beneficiary is urged to consult with its own tax advisor.

b.    **General "Liquidating Trust" Tax Reporting by the Liquidating Trust and Liquidating Trust Beneficiaries**

For all U.S. federal income tax purposes, all parties to the Liquidating Trust (including, without limitation, the Debtors, Holders of Allowed Class 2 Claims and Allowed Class 3 Claims receiving interests in the Liquidating Trust, and the Liquidating Trustee) must treat the Liquidating Trust as a grantor trust of which holders of beneficial interests in the Liquidating Trust (as determined for U.S. federal income tax purposes) are the owners and grantors.  Accordingly, Holders of Allowed Class 2 Claims and Allowed Class 3 Claims receiving interests in the Liquidating Trust are treated for U.S. federal income tax purposes as the direct owners of an undivided interest in the Liquidating Trust (other than any assets allocable to Disputed Claims), consistent with their economic interests therein.  The Liquidating Trustee will file tax returns for the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).  The Liquidating Trustee also will annually send to each holder of a beneficial interest in the Liquidating Trust a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes, and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

All taxable income and loss of the Liquidating Trust will be allocated among, and treated as directly earned and incurred by, holders of beneficial interests in the Liquidating Trust with respect to such holder's undivided interest in the Liquidating Trust Assets (and not as income or loss with respect to its prior Claims), with the possible exception of any taxable income and loss allocable to any assets allocable to, or retained on account of, Disputed Claims.  The character of any income and the character and ability to use any loss will depend on the particular situation of the holder of Claims receiving interests in the Liquidating Trust.

As soon as reasonably practicable after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trustee will make a good faith valuation of the Liquidating Trust Assets.  All parties to the Liquidating Trust (including, without limitation, the Debtors (and Bob's EMS, if relevant), Holders of Allowed Class 2 Claims and Allowed Class 3 Claims receiving interests in the Liquidating Trust, and the Liquidating Trustee) must report consistently with such valuation for all U.S. federal income tax purposes.  The valuation will be made available, from time to time, as relevant for tax reporting purposes.

The U.S. federal income tax obligations of a Holder with respect to its beneficial interests in the Liquidating Trust are not dependent on the Liquidating Trust distributing any cash or other proceeds, subject to any portion(s) of the Liquidating Trust allocable to Disputed Claims.  Thus, a Holder of Allowed Class 2 Claims and Allowed Class 3 Claims receiving interests in the Liquidating Trust may incur a U.S. federal income tax liability with respect to its allocable share of Liquidating Trust's income even if the Liquidating Trust does not make a concurrent distribution to the U.S. Holder. In general, other than in respect of cash retained on account of

44

Disputed Claims, a distribution of cash by the Liquidating Trust will not be separately taxable to a beneficial owner of the Liquidating Trust since the beneficial owner is already regarded for U.S. federal income tax purposes as owning the underlying assets (and was taxed at the time the cash was earned or received by Liquidating Trust).  Holders are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of any subsequent distributions of cash originally retained by the Liquidating Trust on account of Disputed Claims.

The Liquidating Trust will comply with all applicable governmental withholding requirements.  If any beneficiaries of the Liquidating Trust are not U.S. persons, the Liquidating Trustee may be required to withhold up to 30% of the income or proceeds allocable to such persons, depending on the circumstances (including whether the type of income is subject to a lower treaty rate).  As indicated above, the foregoing discussion of the U.S. federal income tax consequences of the Plan does not generally address the consequences to holders of General Unsecured Claims or non-U.S. Holders; accordingly, such holders should consult their tax advisors with respect to the U.S. federal income tax consequences of the Plan, including owning an interest in the Liquidating Trust.

### c.    Tax Reporting for the Liquidating Trust Assets Allocable to Disputed Claims

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of an IRS private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee (A) may elect to treat any of the Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims (a "**Disputed Tax Claims Reserve**") as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9, if applicable, and (B) to the extent permitted by applicable law, will report consistently for state and local income tax purposes.

Accordingly, if a "disputed ownership fund" election is made with respect to a Disputed Claims Reserve, such reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to such assets (including any gain recognized upon the disposition of such assets).  All distributions from such reserves will be treated as received by holders in respect of their Claims as if distributed by the Debtors.  All parties to the Liquidating Trust (including, without limitation, the Debtors, Holders of Allowed Class 2 Claims and Allowed Class 3 Claims receiving interests in the Liquidating Trust, and the Liquidating Trustee) will be required to report for tax purposes consistently with the foregoing.

### 4.    Information Reporting and Back-Up Withholding

All distributions to holders of Allowed Class 2 Claims and Allowed Class 3 Claims under the Plan are subject to any applicable tax withholding.  Under U.S. federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then applicable withholding rate (currently 24%).  Backup withholding generally applies if the holder: (a) fails to furnish its social security number or other taxpayer identification number, (b) furnishes an incorrect taxpayer identification number, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified

statement, signed under penalty of perjury, that the tax identification number provided is its correct number and that it is not subject to backup withholding. Backup withholding is not an additional tax, but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions. Holders of Allowed Class 2 Claims and Allowed Class 3 Claims are urged to consult their tax advisors regarding the Treasury Regulations governing backup withholding and whether the transactions contemplated by the Plan would be subject to these Treasury Regulations.

THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## ARTICLE VI

## IMPLEMENTATION AND EXECUTION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN

### 6.01   Effective Date

The Effective Date shall not occur until all conditions for the Effective Date are satisfied or otherwise waived in accordance with the terms of the Combined Disclosure Statement and Plan. Upon the occurrence of the Effective Date, the Plan Proponents shall File the notice of Effective Date, which shall also be posted on the Case Website.

### 6.02   Implementation of the Combined Disclosure Statement and Plan

(a)    General

The Combined Disclosure Statement and Plan shall be implemented as described in detail below.

(b)    Corporate Action; Officers and Directors; Effectuating Documents

On the Effective Date, all matters and actions provided for under the Combined Disclosure Statement and Plan that would otherwise require approval of the officer(s), director(s) or Interest Holders of the Debtors, shall be deemed to have been authorized and effective in all respects as provided herein and shall be taken without any requirement for further action by the Debtors' officers, directors or managers, as applicable, or Interest Holders.

### 6.03   Books and Records

The Liquidating Trustee shall retain those documents maintained by the Debtors in the ordinary course of business and which were not otherwise transferred to the Purchaser pursuant to

the APA. After receipt of such documents, the Liquidating Trustee shall be authorized to destroy any documents it deems necessary or appropriate in its reasonable judgment; *provided*, *however*, that the Liquidating Trustee shall not destroy any documents, including, but not limited to, tax documents, that the Liquidating Trust is required to retain under applicable law or any order of the Bankruptcy Court.

After all Distributions have been completed in accordance with the Combined Disclosure Statement and Plan and the Chapter 11 Cases are closed, the Liquidating Trustee shall be authorized to destroy or abandon any books and records in its possession in accordance with Section 6.08 of the Plan.

### 6.04   Withholding Rights

In connection with the Plan, any party issuing any instrument or making any Distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding the foregoing, each Holder of an Allowed Claim or any other Person that receives a Distribution pursuant to the Plan shall have the sole responsibility for reporting and paying any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such Distribution. Any party issuing any instrument or making any Distribution pursuant to the Plan has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations. Additionally, in the case of a non-Cash distribution that is subject to withholding, the distributing party has the right, but not the obligation, to withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property. The Liquidating Trustee, in the exercise of his or her sole discretion and judgment, may enter into agreements with taxing or other authorities for the payment of such amounts that may be withheld in accordance with the provisions of this section.

### 6.05   Dissolution of the Debtors

On the Effective Date and upon: (i) the Debtors causing the Liquidating Trust Assets to be transferred to the Liquidating Trust in accordance the terms of the Combined Disclosure Statement and Plan; and (ii) the Debtors' material completion of all other duties and functions set forth herein as soon as practicable after the Effective Date, the officers, directors and managers, as the case may be, of each of the Debtors shall be deemed to have resigned.

Upon completion of the Debtors' final tax returns by the Liquidating Trustee and the entry of a final decree closing the Chapter 11 Cases, the Debtors shall be deemed dissolved for all purposes in accordance with applicable state law.

### 6.06    Determination of Tax Liabilities

The Debtors or Liquidating Trustee, shall, pursuant to section 505(b) of the Bankruptcy Code, have the right to request an expedited determination of any unpaid liability of the Debtors' Estates for any tax incurred during the administration of the Chapter 11 Cases.

Except as otherwise provided by applicable law, Bob's EMS shall prepare and file all federal, state, and local tax returns required to be filed by the Debtors in respect of (or including) any tax period (or portion thereof) ending on or prior to the Effective Date.

As of the Effective Date, the Liquidating Trustee will be responsible for preparing and filing any tax forms or returns on behalf of the Liquidating Trust.

### 6.07    Exemption From Certain Transfer Taxes

To the maximum extent provided by section 1146(a) of the Bankruptcy Code: (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (ii) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan (including any transfers to or by the Liquidating Trust), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 6.08    Liquidating Trust

(a)    Establishment of the Liquidating Trust

The Liquidating Trust will be formed on the Effective Date in accordance with this Combined Disclosure Statement and Plan and pursuant to the Liquidating Trust Agreement[3] for the purpose of, among other things: (i) implementing the Combined Disclosure Statement and Plan; (ii) continuing to investigate and prosecute the Retained Causes of Actions; (iii) administering, monetizing and/or liquidating the Liquidating Trust Assets; (iv) resolving all Disputed Claims; (v) making all distributions to Holders of Allowed Class 2 Claims and Allowed Class 3 Claims from the Liquidating Trust and as provided for in the Combined Disclosure Statement and Plan and the Liquidating Trust Agreement; and (vi) winding down the Debtors and their Estates.

The Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement to qualify as a "liquidating trust" and with no objective to continue or engage in the conduct of a

trade or business in accordance with Treasury Regulation section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684. Subject to the DOF Election (defined below), the Liquidating Trust is intended to qualify as a "grantor trust" for federal, and applicable state and local, income tax purposes within the meaning of sections 671 through 679 of the Tax Code, with the Liquidating Trust Beneficiaries treated as the sole grantors and owners of the Liquidating Trust.

Upon establishment of the Liquidating Trust, all Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust without any further action of any of the Debtors, or any employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors. The Plan Proponents shall have the power and authority to enter into the Liquidating Trust Agreement on the Effective Date.

The initial Liquidating Trustee will be designated in the Liquidating Trust Agreement.

The Liquidating Trust Agreement will be Filed by no later than the filing of the Plan Supplement and will be considered an integral part of the Combined Disclosure Statement and Plan and is incorporated herein by reference in its entirety.

        (b)      Appointment and Duties of Liquidating Trustee

        (i)      Appointment of the Liquidating Trustee. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of his or her duties unless otherwise ordered by the Bankruptcy Court. The material terms of the Liquidating Trustee's compensation are included in the Liquidating Trust Agreement. Effective as of the Effective Date, the Liquidating Trustee shall be the sole officer, director, member, and/or manager of the Debtors.

The Liquidating Trustee shall carry out the duties as set forth in this Section VI and in the Liquidating Trust Agreement. Pursuant to Bankruptcy Code section 1123(b)(3), the Liquidating Trustee shall be deemed the appointed representative to, and may investigate, pursue, litigate, and compromise and settle any such rights, claims, and Retained Causes of Action in accordance with the best interests of, and for the benefit of, the Liquidating Trust Beneficiaries. In the event that the Liquidating Trustee resigns, is removed, terminated or otherwise unable to serve as the Liquidating Trustee, then a successor shall be appointed as set forth in the Liquidating Trust Agreement. Any successor Liquidating Trustee appointed shall be bound by, and comply with, the terms of this Combined Disclosure Statement and Plan, the Confirmation Order and the Liquidating Trust Agreement.

        (ii)      Responsibilities, Powers, and Authority of Liquidating Trustee. The responsibilities and authority of the Liquidating Trustee shall include but not be limited to: (a) establishing reserves and investing Cash; (b) liquidating any remaining non-Cash Liquidating Trust Assets (if any); (c) retaining and paying professionals as necessary to carry out the purposes of the Liquidating Trust without further approval of the Bankruptcy Court; (d) preparing and filing tax returns, reports, and other documents for the Liquidating Trust necessary to conclude and close the Chapter 11 Cases; (e) objecting to, reconciling, seeking to subordinate, compromising or settling any or all Claims and Interests, and administering Distributions on account of the Holders of Allowed Claims that are Liquidating Trust Beneficiaries pursuant to the terms of this Combined

Disclosure Statement and Plan and the Liquidating Trust Agreement; (f) evaluating, filing, litigating, settling, or otherwise pursuing any Retained Causes of Action; (g) abandoning any property of the Liquidating Trust that cannot be sold or distributed economically; (h) making interim and final distributions of Liquidating Trust Assets; (i) winding up the affairs of the Liquidating Trust and dissolving it under applicable law; (j) destroying records; (k) administering each Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the date on which the Chapter 11 Cases were commenced through the liquidation of such Debtor as determined under applicable tax laws and (iii) representing the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit; and (l) such other responsibilities as may be vested in the Liquidating Trustee pursuant to the Combined Disclosure Statement and Plan, the Liquidating Trust Agreement, the Confirmation Order, other Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Combined Disclosure Statement and Plan.  For the avoidance of doubt, to the extent any action needs to be taken with respect to, or on the behalf of, the Debtors, the Liquidating Trustee shall be authorized to take such action on their behalf.

The Liquidating Trustee shall have the power and authority to perform the acts described in the Liquidating Trust Agreement, in addition to any powers granted by law or conferred to it by any other provision of the Combined Disclosure Statement and Plan, including without limitation any powers set forth herein, *provided however*, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidating Trustee to act as specifically authorized by any other provision of the Combined Disclosure Statement and Plan, the Liquidating Trust Agreement, the Confirmation Order and/or any applicable law, and to act in such manner as the Liquidating Trustee may deem necessary or appropriate to take any act deemed appropriate by the Liquidating Trustee, including, without limitation, to discharge all obligations assumed by the Liquidating Trustee or provided herein and to conserve and protect the Liquidating Trust Assets or to confer on the creditors the benefits intended to be conferred upon them by the Combined Disclosure Statement and Plan.  Except as expressly set forth in the Combined Disclosure Statement and Plan and in the Liquidating Trust Agreement, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have discretion to pursue or not to pursue any Retained Causes of Action as it determines is in the best interests of the Liquidating Trust Beneficiaries and consistent with the purposes of the Liquidating Trust, and shall have no liability for the outcome of his or her decision, other than those decisions constituting gross negligence or willful misconduct.  The Liquidating Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidating Trust Assets to Cash.  Subject to the other terms and provisions of this Combined Disclosure Statement and Plan, including, but not limited to, Section 6.08(g) concerning the Privileges, the Liquidating Trustee shall be granted standing, authority, power and right to assert, prosecute and/or settle the Retained Causes of Action and/or make a claim under any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies, including, without limitation, the D&O Policy based upon its powers as a Court-appointed representative of the Estates with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators or similar officials.  The Liquidating Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and

authorities do not affect the status of the Liquidating Trust as a "liquidating trust" for United States federal income tax purposes.

(iii)    Enforcement of Any Retained Causes of Action. Pursuant to Bankruptcy Code section 1123(b), the Liquidating Trustee, on behalf of, and for the benefit of, the Liquidating Trust Beneficiaries, shall be vested with and shall retain and may enforce any Retained Causes of Action transferred to the Liquidating Trust including, without limitation, Claims against current and former Insiders of the Debtors, other Causes of Action, setoff, offset and recoupment rights, and any and all rights related to such Retained Causes of Action that were held by, through, or on behalf of, the Debtors and/or the Estates against any other Person, arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date, whether or not Retained Causes of Action are specifically identified in the Combined Disclosure Statement and Plan, Plan Supplement, or elsewhere, and whether or not litigation with respect to same has been commenced prior to the Effective Date. All such rights shall not be deemed modified, waived, released in any manner, nor shall confirmation of the Combined Disclosure Statement and Plan or the Confirmation Order act as *res judicata* or limit any of such rights of Liquidating Trustee to commence and pursue any and all Retained Causes of Action, and other Causes of Actions or Claims, to the extent the Liquidating Trustee deems appropriate. For the avoidance of doubt, the Combined Disclosure Statement and Plan preserves and transfers to the Liquidating Trust all Retained Causes of Action that exist as of the Effective Date. The recoveries from any Retained Causes of Action transferred to the Liquidating Trust will be deposited into the Liquidating Trust and distributed in accordance with the Liquidating Trust Agreement and the Combined Disclosure Statement and Plan.

(iv)    Compensation of Liquidating Trustee. The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement; *provided*, *however*, that such compensation shall be payable from the Liquidating Trust Expense Reserve. The Liquidating Trustee shall fully comply with the terms, conditions and rights set forth in the Combined Disclosure Statement and Plan, the Confirmation Order, and the Liquidating Trust Agreement. The Liquidating Trustee shall not be required to File a fee application to receive compensation.

(v)    Retention and Payment of Professionals. The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents to assist and advise the Liquidating Trustee in the performance of his or her duties and compensate such professionals from the Liquidating Trust Expense Reserve as set forth in the Liquidating Trust Agreement, including, but not limited to, Professionals retained by the Debtors and/or by the Committee, without the need for an order of the Bankruptcy Court. The provision of services by any Professional retained in these Chapter 11 Cases shall not disqualify such Professional from employment by the Liquidating Trustee and any conflict of interest with respect to such firm's prior representations in these Chapter 11 Cases shall be deemed waived upon entry of the Confirmation Order. The Liquidating Trustee and/or Liquidating Trust's professionals shall not be required to File a fee application to receive compensation.

(vi)    Limitation of Liability of the Liquidating Trustee. The Liquidating Trust shall indemnify the Liquidating Trustee and his or her professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee or his or her professionals may incur or sustain by reason of being or

having been a Liquidating Trustee or professionals of the Liquidating Trustee for performing any functions incidental to such service; *provided*, *however*, the foregoing shall not relieve the Liquidating Trustee or his or her professionals from liability for willful misconduct, reckless disregard of duty, breach of fiduciary duty, criminal conduct, gross negligence, fraud, or self-dealing.

(c)    Liquidating Trust Tax Matters

The Liquidating Trust shall be responsible for filing all required federal, state and local tax returns and/or informational returns for the Liquidating Trust.  The Liquidating Trust shall comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Class 2 Claim and/or Allowed Class 3 Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each such Holder.  Notwithstanding any other provision of this Combined Disclosure Statement and Plan: (i) each Holder of an Allowed Class 2 Claim and/or Allowed Class 3 Claim that is to receive a Distribution from the Liquidating Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution; and (ii) no Distribution shall be made to or on behalf of such Holder pursuant to this Combined Disclosure Statement and Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the Liquidating Trust shall, pending the implementation of such arrangements, be treated as an Unclaimed Distribution to be held by the Liquidating Trustee until such time as the Liquidating Trustee is satisfied with the Holder's arrangements for any withholding tax obligations.

(d)    Transfer of Liquidating Trust Assets to Liquidating Trust

Pursuant to Bankruptcy Code sections 1123(a)(5) and 1141, except as set forth in this Combined Disclosure Statement and Plan, all transfers and contributions made to the Liquidating Trust shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests. Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets, or the Liquidating Trust.  For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) will treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms of this Combined Disclosure Statement and Plan as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof.

(e)    Preservation of Rights

Unless a Retained Cause of Action against a Creditor or other Entity is expressly waived, relinquished, released, compromised or settled in the Combined Disclosure Statement and Plan, or any Final Order, including the Sale Order and the Cash Collateral Order, the Plan Proponents expressly reserve any and all Retained Causes of Action, including, without limitation, setoff, offset and recoupment rights, for later enforcement and prosecution by the Liquidating Trustee

(including, without limitation, any Retained Causes of Actions set forth in the Plan Supplement, or not specifically identified herein, or otherwise, or which the Plan Proponents may presently be unaware of, or which may arise or exist by reason of additional facts or circumstances unknown to the Plan Proponents at this time, or facts or circumstances which may change or be different from those which the Plan Proponents now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such any and all Retained Causes of Action, including, without limitation, setoff, offset and recoupment rights, upon or after the confirmation or consummation of the Combined Disclosure Statement and Plan based on the Combined Disclosure Statement and Plan or the Confirmation Order.  In addition, the Liquidating Trust expressly reserves the right to pursue or adopt any and all Causes of Action that are not Purchased Assets, including, without limitation, setoff, offset and recoupment rights, alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions of this Combined Disclosure Statement and Plan or any Final Order.

The Plan Proponents and the Liquidating Trustee do not intend, and it should not be assumed (nor shall it be deemed) that because any existing or potential Retained Causes of Action, including, without limitation, setoff, offset and recoupment rights, have not yet been pursued by the Debtors or are not set forth herein, or otherwise, that any and all Retained Causes of Action, including, without limitation, setoff, offset and recoupment rights, has been waived or expunged.

(f)      Liquidating Trust Expenses

The Liquidating Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid Liquidating Trust Expenses, including, but not limited to, the fees and expenses of any professionals retained by the Liquidating Trustee.  All Liquidating Trust Expenses shall be charged against, and paid from, the Liquidating Trust Expense Reserve as provided for in the Liquidating Trust Agreement.

(g)      Privileges

On the Effective Date, and subject to the terms of the Plan, the Sale Order, and the APA, all of the Debtors' Privileges, including, but not limited to, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections relating to the Retained Causes of Action shall vest in the Liquidating Trustee and Liquidating Trust, as applicable, without waiver, limitation or release on the Effective Date.

Subject to the Sale Order and the APA, the Liquidating Trust shall hold, and be the beneficiary of, all Privileges and entitled to assert all Privileges.  No Privilege shall be waived by disclosures to the Liquidating Trustee of the Debtors' documents, information or communications subject to any privilege, protection or immunity or protections from disclosure jointly held by the Debtors and the Liquidating Trust.

The Debtors' Privileges relating to the Liquidating Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement. Nothing contained herein or in the Confirmation Order, nor any Professional's compliance herewith and therewith, shall constitute a breach of any Privileges of the Debtors.

(h)     Liquidating Trust Interest

Each Liquidating Trust Interest will entitle its Holder to distributions from the Liquidating Trust in accordance with the terms of the Combined Disclosure Statement and Plan and the Liquidating Trust Agreement. The Liquidating Trust Interests will be uncertificated; thus, distributions from a Liquidating Trust Interest will be accomplished solely by the entry of names of the Holders and their respective Liquidating Trust Interests in the books and records of the Liquidating Trust. Each Holder of a Liquidating Trust Interest shall take and hold its uncertificated Beneficial Interest subject to all the terms and provisions of the Combined Disclosure Statement and Plan, the Confirmation Order and the Liquidating Trust Agreement.

The Liquidating Trust Interests shall not be registered pursuant to the Securities Act of 1933, as amended, or any state securities law and shall be exempt from registrations thereunder pursuant to section 1145 of the Bankruptcy Code. Each Liquidating Trust Interest shall be freely transferrable; *provided, however*, that the transfer of the Liquidating Trust Interest will be prohibited to the extent such transfer would subject the Debtors or the Liquidating Trust to the registration and reporting requirements of the Securities Act and the Security Exchange Act.

(i)     U.S. Federal Income Tax Treatment of Liquidating Trust

In furtherance of this Section 6.08, (i) the Liquidating Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, subject to the DOF Election, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code to the Holders of Allowed Class 2 Claims and Allowed Class 3 Claims, consistent with the terms of the Plan; (ii) the Holders of Liquidating Trust Interests shall be treated as the beneficiaries and grantors of the Liquidating Trust; (iii) the sole purpose of the Liquidating Trust shall be the liquidation and distribution of the Liquidating Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), including the resolution of Allowed Class 2 Claims and Allowed Class 3 Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business; (iv) all parties (including the Debtors and the Estates, Holders of Allowed Class 2 Claims and Allowed Class 3 Claims, and the Liquidating Trustee) shall report consistently with such treatment (including the deemed receipt of the Liquidating Trust Assets, subject to applicable liabilities and obligations, by the Holders of Allowed Class 2 Claims and Allowed Class 3 Claims, followed by the deemed transfer of such Liquidating Trust Assets to the Liquidating Trust); (v) all parties shall report consistently for federal income tax purposes, and otherwise, with the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as determined by the Liquidating Trustee (or its designee); (vi) the Liquidating Trustee shall be responsible for filing returns for the Liquidating Trust as, subject to the DOF Election, a grantor trust pursuant to Treasury Regulation section 1.671-4(a); (vii) the Liquidating Trustee shall annually send to each Holder of an interest in the Liquidating Trust a separate statement regarding

the receipts and expenditures of the trust as relevant for U.S. federal income tax purposes; (viii) all items of income, deductions and credit loss of the Liquidating Trust shall be allocated for federal income tax purposes to the Holders of Allowed Class 2 Claims and Allowed Class 3 Claims based on their respective interests in the Liquidating Trust, including the Holders of an interest in the Liquidating Trust holding Disputed Claims, in such manner as the Liquidating Trustee deems reasonable and appropriate; and (ix) subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee may timely elect to (I) treat any portion of the Liquidating Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 ("**DOF Election**") (and make any appropriate elections) and (II) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  If a DOF Election is made for all or any portion of the Liquidating Trust, all impacted parties (including the Debtors and the Estates, and, to the extent applicable, Holders of Allowed Class 2 Claims and Allowed Class 3 Claims, and the Liquidating Trustee), and solely with respect to the impacted assets, shall report for United States federal, state, and local income tax purposes consistently with such election.

(j)      Termination of Liquidating Trust

The Liquidating Trust shall be dissolved upon the earlier of the distribution of all of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries or the fifth anniversary of the creation of the Liquidating Trust, provided that the Liquidating Trustee shall, in his/her sole discretion, be authorized to seek, by the filing of a motion served on the master service list for cause shown, to extend the dissolution date upon the Bankruptcy Court's determination that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidating Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.  This motion must be Filed with the Bankruptcy Court before, but no earlier than 6 months prior to, the termination date of the Liquidating Trust.

**6.09    Effective Date and Other Transactions**

(a)      Transfer of Assets to the Purchaser

Previously, on the Closing Date, all of the Purchased Assets were transferred to the Purchaser in accordance with the terms of the APA and the Sale Order.

(b)      Transfer of Assets to the Liquidating Trust and Liquidating Trustee

On the Effective Date, the Debtors will transfer to the Liquidating Trustee the Liquidating Trust Assets.

### 6.10 Provisions Governing Distributions under the Combined Disclosure Statement and Plan

(a)     Method of Payment

Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed as of the Effective Date shall be made on the Effective Date or as soon thereafter as is reasonably practicable.  Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed after the Effective Date shall be made as soon as is reasonably practicable after the date on which such Claim becomes Allowed.  Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and, except as otherwise provided in the Combined Disclosure Statement and Plan, no interest shall accrue or be payable with respect to such Claims or any Distribution related thereto.  In the event that any payment or act under the Combined Disclosure Statement and Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

All Distributions hereunder shall be made by the Disbursing Agent on or after the Effective Date or as otherwise provided herein.  For the avoidance of doubt the Liquidating Trustee or such other entity designated by the Liquidating Trustee, shall act as Disbursing Agent with respect to all Allowed Claims.  A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Disbursing Agent.

Unless otherwise expressly agreed in writing, all Cash payments to be made pursuant to the Combined Disclosure Statement and Plan shall be made by the Disbursing Agent: (a) in U.S. dollars by check, draft or warrant, drawn on a domestic bank, or by wire transfer from a domestic bank, and (b) by first-class mail (or by other equivalent or superior means as determined by the Liquidating Trustee).  All Distributions shall be allocated first to the principal amount of the Allowed Claim or Allowed Administrative Claim.  No Holder of an Allowed Claim or Allowed Administrative Claim shall receive any Distribution in excess of the Allowed amount of such Claim or Administrative Claim.

(b)     Distribution Record Date

As of 5:00 p.m. (prevailing Eastern Time) on the Distribution Record Date, the transfer registers for Claims shall be closed.  The Liquidating Trustee shall have no obligation to recognize the transfer or sale of any Claim that occurs after such time on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make Distributions only to those Holders who are Holders of Claims as of 5:00 p.m. (prevailing Eastern Time) on the Distribution Record Date.  Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to 5:00 p.m. (prevailing Eastern Time) on the Distribution Record Date shall be treated as the Holders of such Claims for

all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

(c)    Timing of Distributions

Except as specifically set forth in the Combined Disclosure Statement and Plan or Liquidating Trust Agreement, the Liquidating Trustee may determine, in his or her sole discretion, the appropriate timing, amount, and cadence for Distributions.  The Trustee, in his or her sole discretion, may make one or more interim Distributions.

(d)    Cancellation of Certain Indebtedness

Subject to all of the rights of the Holders of Secured Claims, on or as soon as practicable after the Effective Date, except for the purposes of evidencing a right to a distribution under this Combined Disclosure Statement and Plan, and except as otherwise specifically provided for in the Combined Disclosure Statement and Plan and any other certificate, note, bond, indenture, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of any of the Debtors giving rise to any Claim, all obligations and liabilities arising under, related to, or in connection with, any of the items described above, in any such case, shall be deemed automatically extinguished, cancelled and of no further force and effect, without any further act, or action under any applicable agreement, law, regulation, order or rule, and the Debtors and Liquidating Trust shall not have any continuing obligations thereunder or with respect thereto; and the obligations of any of the Debtors pursuant, relating, or pertaining to any agreements, indentures, purchase agreements, certificates of incorporation, certificates of formation, by-laws, limited liability company agreements or similar documents governing or evidencing any of the items described above shall be released; and the holder of or parties to, or beneficiaries of, any of the items described above, will have no rights arising from or relating to, and will not be entitled to the benefits of, any such items or the cancellation thereof, except the rights expressly provided for pursuant to this Combined Disclosure Statement and Plan.

(e)    Delivery of Distributions

Except as otherwise provided herein, Distributions to Holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective Proofs of Claim Filed by such Holders; (ii) at the addresses set forth in any written notice of address changes delivered to the Liquidating Trustee after the date of any related Proof of Claim; or (iii) at the address reflected in the Schedules or other more recent records of the Debtors if no Proof of Claim is Filed and the Liquidating Trustee has not received a written notice of a change of address.  Before receiving any Distributions, all Holders of Allowed Claims (including Holders of Allowed Administrative Claims), at the request of the Liquidating Trustee, must provide written notification of their respective federal tax identification numbers or social security numbers to the Liquidating Trustee; otherwise, if a Holder of an Allowed Claim or Allowed Administrative Claim fails to provide such requested tax information within ninety (90) days after the request has been sent to such Holder's last known address, the Distribution on account of such Allowed Claim or Administrative Claim shall be deemed an Unclaimed Distribution, and Section 6.10(f) of the Plan shall be applicable thereto.

Subject to applicable Bankruptcy Rules, all Distributions to Holders of Allowed Claims shall be made to the Disbursing Agent who shall transmit such Distributions to the applicable Holders of Allowed Claims or their designees.

After such date, all unclaimed property or interest in property shall revert to the Liquidating Trust to be distributed to other Holders of Allowed Claims in accordance with the terms of the Liquidating Trust Agreement and the Combined Disclosure Statement and Plan, and the Claim of any other holder to such property or interest in property shall be released and forever barred.

(f)    Undeliverable and Unclaimed Distributions

The Liquidating Trustee shall make an attempt to make the Distributions contemplated hereunder in accordance with the procedures set forth herein.  If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, the Disbursing Agent shall make a reasonable inquiry for a correct current address.  If reasonable inquiry does not yield a correct current address, then the Liquidation Trustee shall have no further obligation to determine the correct current address of the Holder and no Distribution to such Holder shall be made unless and until the Liquidation Trustee is notified, in writing, by the Holder of the correct current address of such Holder within ninety (90) days of such Distribution, at which time a Distribution shall be made to such Holder without interest; *provided*, *however*, that such Distributions shall be deemed unclaimed property or an Unclaimed Distribution under Bankruptcy Code section 347(b) at the expiration of the Unclaimed Distribution Deadline.

Any Holder of an Allowed Claim or an Allowed Administrative Claim who fails to: (i) provide the Liquidating Trustee with an updated address in accordance with this section of the Plan, (ii) claim or negotiate any Distribution within ninety (90) days from the date upon which a Distribution is first made to such entity, or (iii) fails to provide the Liquidating Trustee with a federal tax identification or social security number within ninety (90) days from the Liquidating Trustee's request, shall forfeit all rights to any Distribution under the Plan, and the Liquidating Trustee shall be authorized to cancel any Distribution to such Holder.  Pursuant to section 347(b) of the Bankruptcy Code, upon forfeiture, such Distribution (including interest thereon, if any) shall revert to the source of such Distribution.  Upon forfeiture, the claim of such Holder to such funds shall be irrevocably waived and forever barred against the all of the Debtors, the Estates, the Liquidating Trust, and the Liquidating Trustee, notwithstanding any federal or state escheat laws to the contrary, and such Holder shall have no claim whatsoever against any of the foregoing or to any Holder of a Claim to whom Distributions are made.

(g)    No Liability

The Liquidating Trustee shall only be required to act and make Distributions in accordance with the terms of this Combined Disclosure Statement and Plan, Confirmation Order, and the Liquidating Trust Agreement.  Except on account of gross negligence, fraud, illegality or willful misconduct, the Liquidating Trustee shall have no: (i) liability to any party for actions taken in accordance with the Combined Disclosure Statement and Plan, Confirmation Order, or the Liquidating Trust Agreement or in reasonable reliance upon information provided to the Liquidating Trustee in accordance with the Combined Disclosure Statement and Plan,

Confirmation Order, or the Liquidating Trust Agreement; or (ii) obligation or liability for Distributions under the Combined Disclosure Statement and Plan to any party who does not hold a Claim against the Debtors as of the Distribution Record Date or any other date on which a Distribution is made or who does not otherwise comply with the terms of this Combined Disclosure Statement and Plan.

(h)     Objection to and Resolution of Claims

Except as expressly provided herein, or in any order entered in the Chapter 11 Cases prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under the Combined Disclosure Statement and Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Interest.  On or after the Effective Date, the Liquidating Trust shall be vested with any and all rights and defenses each Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

Except as provided herein and in Article VIII of the Combined Disclosure Statement and Plan, the Liquidating Trustee or other party in interest with standing, to the extent permitted pursuant to section 502(a) of the Bankruptcy Code, shall File and serve any objection to any Claim no later than the Claims Objection Deadline.

(i)     Preservation of Rights to Settle Claims

Except as otherwise expressly provided herein, including in Article X of the Combined Disclosure Statement and Plan, nothing contained in the Combined Disclosure Statement and Plan, the Plan Documents, or in the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtors or their Estates may have or which the Liquidating Trustee may choose to assert on behalf of the Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law or rule, common law, equitable principle or other source of right or obligation, including, without limitation, (i) any and all claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or claim for setoff which seeks affirmative relief against the Debtors, their officers, directors, or representatives, and (ii) the turnover of all property of the Estates.  This Section shall not apply to any claims sold, released, waived, relinquished, exculpated, compromised, or settled under the Combined Disclosure Statement and Plan or pursuant to a Final Order, expressly including the Sale Order.  Except as expressly provided in the Combined Disclosure Statement and Plan, nothing contained in the Combined Disclosure Statement and Plan or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense.  No Entity may rely on the absence of a specific reference in the Combined Disclosure Statement and Plan, or the Plan Supplement to any cause of action against it as any indication that the Liquidating Trustee will not pursue any and all available causes of action against it.  The Liquidating Trustee expressly reserve all rights to prosecute any and all causes of action against any Person or Entity, except as otherwise expressly provided in this Combined Disclosure Statement and Plan.

(j)     Miscellaneous Distribution Provisions

(i)     Disputed Claims.  At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the Holder of such Claim the Distribution to which such Claim is entitled under the Combined Disclosure Statement and Plan with respect to the Class in which such Claim belongs at such time as the Liquidating Trustee determines to be reasonably prudent.  To the extent that all or a portion of a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated Pro Rata to the Holders of Allowed Claims in the same Class.  For the avoidance of doubt, if any portion of a Claim or Administrative Claim is Disputed, no payment or Distribution shall be made on account of such Claim or Administrative Claim until such Claim or Administrative Claim becomes Allowed.  Notwithstanding anything herein to the contrary, unless agreed otherwise by the Liquidating Trustee, no Distribution shall be made to any Holder of both an Allowed Claim and a Disputed Claim until such Holder's Disputed Claim or Disputed Administrative Claim has been resolved by settlement or Final Order.

(ii)     Disputed Claims Reserve.   On or after the Effective Date, the Liquidating Trustee may establish a separate Disputed Claims Reserve in accordance with the Liquidating Trust Agreement on account of Distributions of Cash or other property as necessary hereunder.  The Liquidating Trustee shall not make any Distributions of Liquidating Trust Assets to the Liquidating Trust Beneficiaries unless the Liquidating Trustee retains and reserves in the Disputed Claims Reserve such amounts as are reasonably necessary to satisfy amounts that would have been distributed in accordance with Combined Disclosure Statement and Plan with respect of Disputed Claims if the Disputed Claims were determined to be Allowed Claims immediately prior to such proposed Distribution to the Liquidating Trust Beneficiaries.  Further, upon the Professional Fee Bar Date, the Liquidating Trustee may establish a Reserve of Cash in an amount that the Liquidating Trustee deems reasonably necessary to satisfy all Professional Fee Claims.  On or after the Effective Date, the Liquidating Trustee may establish and maintain a separate Reserve of Cash as the Liquidating Trustee deems reasonably necessary to satisfy Disputed General Unsecured Claims and Disputed Insider Claims.

(iii)     Distributions After Allowance.  To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Combined Disclosure Statement and Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Liquidating Trustee or, as applicable, the Disbursing Agent shall provide to the Holder of such Claim the Distribution to which such Holder is entitled hereunder.

(iv)     Setoff.  The Debtors or Liquidating Trustee, as applicable, retain the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records and in accordance with the Bankruptcy Code.  A claimant may challenge any such setoff made by the Debtors or the Liquidating Trustee in the Bankruptcy Court or any other court with jurisdiction.

(v)     Post-Petition Interest.  Except as may be expressly provided herein, interest shall not accrue on any Claims, and no Holder of a Claim shall be entitled to interest

accruing on or after the Petition Date.  No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for Holders of Secured Claims, if any, under section 506(b) of the Bankruptcy Code.

(vi)     <u>Minimum Distributions</u>.  Notwithstanding anything herein to the contrary: (i) the Liquidating Trustee shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Combined Disclosure Statement and Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down; and (ii) the Liquidating Trustee shall have no duty to make a Distribution on account of any Allowed Claim (a) if the aggregate amount of all Distributions authorized to be made on such date is less than $100,000, in which case such Distributions shall be deferred to the next Distribution date, (b) if the amount to be distributed to a Holder on the particular Distribution date is less than $100.00, unless such Distribution constitutes the final Distribution to such Holder, or (c) if the amount of the final Distribution to such Holder is $50.00 or less, in which case no Distribution will be made to that Holder and such Distribution shall revert to the Liquidating Trust for distribution on account of other Allowed Claims.

(vii)     <u>Donation of Remaining Liquidating Trust Assets</u>.  After final Distributions have been made in accordance with the terms of the Combined Disclosure Statement and Plan and the Liquidating Trust Agreement, if the amount of remaining Cash is less than $10,000 or is an amount that the Liquidating Trustee determines, in his or sole discretion, is insufficient to make a cost-effective distribution to the Holders of Allowed Claims, the Liquidating Trustee may (i) donate such amount to charity in accordance with the terms of the Liquidating Trust Agreement and (ii) reserve any amount necessary to dissolve the Liquidating Trust.

## 6.11    Cancellation of Equity Interests

On the Effective Date, all existing Equity Interests of each of the Debtors shall be retired, cancelled, and/or extinguished in accordance with the terms of the Plan.  Except as otherwise provided in the Plan or the Plan Supplement, on the Effective Date: (1) the obligations of the Debtors under any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest shall be cancelled as to the Debtors shall not have any continuing obligations thereunder, and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be released.

## 6.12    Insurance Policies

(a)     <u>Insurance Policies Remain In Force</u>. Up to and including their policy expiration date(s), including any extension thereof or tail period, any and all Insurance Policies in effect as of the Effective Date shall remain in full force and effect according to their terms and the coverage obligations of the insurers and third party administrators under such Insurance Policies

shall continue following the Effective Date (including any obligations to pay, defend and process insured claims).

(b)     D&O Insurance Policies; Employment Practice Liability Policies; Similar Policies. Nothing contained in this Plan shall affect or impair the rights of any non-Debtor insured persons covered under any directors and officers Insurance Policy, employment practices or similar liability Insurance Policies (including, without limitation, policies for the benefit of the Debtors' directors, officers, employees, members, managers, or similar persons who served in such capacity either before or after the Petition Date).

### 6.13    Dissolution of Committee

Following the Effective Date, the Committee shall continue in existence and have standing and capacity to (i) prepare and prosecute applications for the payment of fees and reimbursement of expenses incurred by the Committee or its respective Professionals.  Following the completion of the foregoing, the Committee shall be dissolved and the members of the Committee shall be released and discharged from any further authority, duties, responsibilities, and obligations related to, or arising from, the Chapter 11 Cases.

### 6.14    Termination of the Claims Agent

At any time following the Effective Date, the Liquidating Trustee shall be authorized to terminate the services of the Claims Agent by providing advance written notice to the Claims Agent, without need for order of the Bankruptcy Court or any other party.  Following termination, the Claims Agent shall provide the Liquidating Trustee and the Bankruptcy Court with a copy of the claims register and a copy of all Filed Proofs of Claim.  No later than thirty (30) days after its termination, the Claims Agent shall provide the Liquidating Trustee with a final invoice, and unless the Liquidating Trustee has any issues with respect to the Claims Agent's fees or expenses, the Liquidating Trustee will be authorized to remit payment of the final invoice within fifteen (15) days of receipt.  The Bankruptcy Court will retain jurisdiction to hear any dispute in the event that the Liquidating Trustee and Claims Agent cannot agree upon the amount of fees and expenses sought by the Claims Agent.

### 6.15    Final Decree

At any time following the Effective Date, after the assets of the Liquidating Trust have been substantially administered, the Liquidating Trustee shall be authorized to File a motion for entry of a final decree closing any or all of the Chapter 11 Cases.

## ARTICLE VII

## EXECUTORY CONTRACTS

### 7.01    Rejection of Executory Contracts

(a)     Except for any Executory Contracts of the Debtors: (i) that previously were assumed or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such

contract or lease has been Filed and served prior to, and remains pending as of, Confirmation; or (iii) that were previously assumed and assigned to the Purchaser; each Executory Contract entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.  Nothing herein is intended to affect the validity of contracts and leases entered into by the Debtors on or after the Petition Date, or the rights of the Debtors thereunder, which shall remain in full force and effect after the Effective Date in accordance with their terms.

(b)    The Insurance Policies shall <u>not</u> be considered Executory Contracts for purposes of subsection (a), above.  As discussed in Section 6.12, the Insurance Policies shall remain in full force and effect following the Effective Date.

**7.02    Bar Date for Rejection Damages**

If the rejection of an Executory Contract pursuant to the Plan or otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors, Estates, or the Liquidating Trust, unless a proof of Claim or Administrative Claim is Filed with the Bankruptcy Court by no later than 30 days after the Effective Date.

**7.03    Pre-Existing Obligations to the Debtors Under Executory Contracts**

Rejection of any Executory Contract pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such Executory Contracts and the Plan Proponents and the Liquidating Trustee, as applicable, expressly reserve and do not waive any rights with respect to any such pre-existing obligations.

**ARTICLE VIII**

**PROVISIONS GOVERNING RESOLUTION OF
<u>CLAIMS AND DISTRIBUTIONS OF PROPERTY UNDER THE PLAN</u>**

**8.01    Claim Objections**

(a)    <u>Right to Object to Claims</u>. Notwithstanding anything to the contrary herein, notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, except insofar as a Claim is Allowed under the Plan on and after the Effective Date, the Liquidating Trustee will have the authority, but not the obligation, to do any of the following with respect to any Claims, Administrative Claims, or Interests: (1) File, withdraw or litigate to judgment objections to and requests for estimation of Claims; (2) settle or compromise any Disputed Claim or Disputed Administrative Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.  The Liquidating Trustee shall succeed to any pending objections to Claims or Administrative Claims Filed by the Debtors and/or the Committee prior to the Effective Date, and shall have and

retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim or Disputed Administrative Claim.

(b)    Claims Objection Deadline. Objections to Claims or Administrative Claims must be Filed with the Bankruptcy Court, and a copy of the objection must be served on the subject Creditor before the expiration of the Claims Objection Deadline, including any extension thereof; otherwise such Claims or Administrative Claims shall be deemed Allowed in accordance with Bankruptcy Code sections 502 or 503, as applicable.  The objection shall notify the Creditor of the deadline for responding to such objection.

(c)    Claim Estimation. Pursuant to section 502(c) of the Bankruptcy Code, the Liquidating Trustee may request estimation or liquidation of any Disputed Claim or Disputed Administrative Claim that is contingent or unliquidated or any Disputed Claim or Disputed Administrative Claim arising from a right to an equitable remedy or breach of performance.

### 8.02    Adjustments to Claims and Administrative Claims Without Objection

After the Effective Date, upon 10 days' written notice to the affected Claimant, any Claim or Administrative Claim that has been paid or satisfied, including payment from any third party including insurance coverage, or any Claim or Administrative Claim that has been amended or superseded, may be marked as satisfied, adjusted or expunged, as applicable, on the claims register in the Chapter 11 Cases by the Claims Agent at the direction of the Liquidating Trustee without an objection having to be Filed.

### 8.03    Late Claims; No Amendment Without Prior Authorization

Except as provided herein or otherwise agreed, any and all Holders of Claims or Administrative Claims Filed after the applicable Bar Date shall not be treated as Creditors for purposes of Distribution pursuant to Bankruptcy Rule 3003(c)(2) and the Bar Date Order unless, on or before the Confirmation Date, such late Claim or Administrative Claim has been deemed timely Filed by a Final Order.

On or after the Effective Date, a claim may not be Filed or amended unless such filing or amendment has been authorized by a Final Order of the Bankruptcy Court or agreement of the Liquidating Trustee and any such new or amended Claim Filed without such prior authorization shall be deemed Disallowed in full and expunged without further action.

## ARTICLE IX

## EXCULPATION, INJUNCTION, AND RELATED PROVISIONS

### 9.01    Term of Bankruptcy Injunction or Stay

Except as otherwise expressly provided in the Plan or the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and which are in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 9.02    Exculpation and Limitation of Liability

EACH OF THE EXCULPATED PARTIES SHALL NOT BE LIABLE FOR ANY CLAIM, ACTION, PROCEEDING, CAUSE OF ACTION, SUIT, ACCOUNT, CONTROVERSY, AGREEMENT, PROMISE, RIGHT TO LEGAL REMEDIES, RIGHT TO EQUITABLE REMEDIES, RIGHT TO PAYMENT OR CLAIM (AS DEFINED IN SECTION 101(5) OF THE BANKRUPTCY CODE), FROM THE PETITION DATE TO THE EFFECTIVE DATE, WHETHER KNOWN, UNKNOWN, REDUCED TO JUDGMENT, NOT REDUCED TO JUDGMENT, LIQUIDATED, UNLIQUIDATED, FIXED, CONTINGENT, MATURED, UNMATURED, DISPUTED, UNDISPUTED, SECURED OR UNSECURED AND WHETHER ASSERTED OR ASSERTABLE DIRECTLY OR DERIVATIVELY, IN LAW, EQUITY OR OTHERWISE TO ONE ANOTHER OR TO ANY HOLDER OF A CLAIM OR EQUITY INTEREST, OR ANY OTHER PARTY IN INTEREST, OR ANY OTHER PERSON OR ENTITY OR ANY OF THEIR RESPECTIVE AGENTS, EMPLOYEES, REPRESENTATIVES, FINANCIAL ADVISORS, ATTORNEYS, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE NEGOTIATION AND FILING OF THIS PLAN AND DISCLOSURE STATEMENT OR ANY PRIOR PLANS, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION OF THE PLAN OR ANY PRIOR PLANS, THE SALE ORDER, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE LIQUIDATED AND/OR DISTRIBUTED UNDER THE PLAN, EXCEPT FOR WILLFUL MISCONDUCT, GROSS NEGLIGENCE OR FRAUD AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION.

NOTWITHSTANDING THE FOREGOING, NOTHING IN THIS SECTION 9.02 SHALL BE DEEMED TO PROHIBIT ANY OBJECTION TO ANY ADMINISTRATIVE CLAIM OR PROFESSIONAL FEE CLAIM IN ACCORDANCE WITH THE TERMS OF THE PLAN, ORDERS OF THE BANKRUPTCY COURT, AND/OR THE BANKRUPTCY CODE.

### 9.03    Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, FROM AND AFTER THE EFFECTIVE DATE THROUGH AND INCLUDING THE DATE ALL LIQUIDATING TRUST ASSETS HAVE BEEN DISTRIBUTED OR OTHERWISE BEEN TRANSFERRED AND THE LIQUIDATION TRUST DISSOLVED, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN ANY OF THE DEBTORS ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST ANY OF THE DEBTORS OR THEIR ESTATES, ANY DEBTORS' PROPERTY, THE LIQUIDATING TRUST OR THE LIQUIDATING TRUSTEE, ON ACCOUNT OF ANY SUCH CLAIMS OR INTERESTS: (A) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (B) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE; (C) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND AGAINST ANY DEBT, LIABILITY OR

**OBLIGATION DUE TO ANY DEBTOR; (D) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN; AND (E) TAKING ANY ACTION WHICH INTERFERES WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN; PROVIDED, HOWEVER, THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE SUCH PERSONS FROM EXERCISING AND/OR ENFORCING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE PLAN OR THE CONFIRMATION ORDER.**

## ARTICLE X

## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

### 10.01   Conditions Precedent to Confirmation

It shall be a condition to Confirmation hereof that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Section 10.03:

(a)      The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Plan Proponents, approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

(b)      The Plan, the Confirmation Order, and documents in the Plan Supplement shall be in a form and substance reasonably acceptable to the Plan Proponents.

### 10.02   Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Section 10.03:

(a)      The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Plan Proponents confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

(b)      All authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained.

(c)      No order of a court shall have been entered and remain in effect restraining the Debtors from consummating the Plan and the transactions contemplated therein, and the Confirmation Order shall be in full force and effect.

(d)      All actions, documents, certificates and agreements necessary to implement the Plan, including the Liquidating Trust Agreement, shall have been effectuated or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws, and are in form and substance, acceptable to the Plan Proponents.

### 10.03   Waiver of Conditions

The conditions to Confirmation of the Plan and to the occurrence of the Effective Date set forth in this Article X may be waived at any time by each of the Plan Proponents.

### 10.04   Effect of Failure of Conditions

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or Claims against the Debtors; (ii) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest or any other entity; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtors, the Committee, any Creditors or Interest Holders or any other entity in any respect.

### 10.05   Filing of Notice of the Effective Date.

On the Effective Date or as shortly thereafter as reasonably practicable, the Plan Proponents shall File a notice of the Effective Date with the Bankruptcy Court.

## ARTICLE XI

## MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN

### 11.01   Modification and Amendments

Except as otherwise specifically provided herein, the Plan Proponents reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and Bankruptcy Rules and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their rights to alter, amend or modify materially the Plan with respect to any or all Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided*, *however*, that any alterations, amendments or modifications to the Plan, the Disclosure Statement and Confirmation Order must be consistent in all respects with the Settlements.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article and with the consent of both of the Plan Proponents.  In addition, prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to the Plan, without further order or approval of the Bankruptcy Court; *provided*, *however*, that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Allowed Claims or Interests.

### 11.02   Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the commencement of the solicitation of votes on the Plan are approved pursuant

to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 11.03   Revocation or Withdrawal of the Plan

The Plan Proponents reserve the right to revoke or withdraw the Plan before the Effective Date.  If the Plan Proponents revoke or withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of any Executory Contracts effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests or claims by any Debtor against any other entity; (b) prejudice in any manner the rights of such Debtor, the Committee, the Holder of any Claim or Interest or any other entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, the Committee or any other entity.

**ARTICLE XII**

**JURISDICTION**

### 12.01   Bankruptcy Court Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Cases to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

(a)      To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim, Administrative Claim, or Interest and the resolution of any and all objections to the allowance or priority of Claims, Administrative Claims, or Interests;

(b)      To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(c)      To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any Executory Contract;

(d)      To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

(e)      To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any Plan Documents or any entity's obligations in connection with the Plan or any Plan Documents, or to defend any of the rights, benefits, Estate property transferred, created, or otherwise provided or

confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

(f)      To consider the compromise and settlement of any claim or cause of action by or against the Debtors, the Estates, the Liquidating Trust, or the Liquidating Trustee, including the Retained Causes of Action;

(g)      To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtors, or the Estates that may be pending on the Effective Date or that may be brought by the Debtors or the Liquidating Trustee, or any other related proceedings by the Liquidating Trustee, and to enter and enforce any default judgment on any of the foregoing;

(h)      To decide or resolve any and all applications for compensation;

(i)      To issue orders in aid of execution and implementation of the Plan or any Plan Documents to the extent authorized by section 1142 of the Bankruptcy Code or provided by the terms of the Plan;

(j)      To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Combined Disclosure Statement and Plan, except as otherwise provided herein;

(k)      To hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(l)      To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the General Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is released or enjoined hereunder, or for any other purpose;

(m)      To interpret and enforce any orders entered by the Bankruptcy Court in the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed); and

(n)      To enter a final decree and an order closing the Chapter 11 Cases when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

**12.02   Limitation on Jurisdiction**

In no event shall the provisions of the Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334, as well as the applicable circumstances that continue jurisdiction for defense and enforcement of the Plan and Plan Documents.  For the avoidance of doubt, however, such jurisdiction shall be deemed, by the entry of the Confirmation Order, to:

(a)      Permit entry of a final judgment by the Bankruptcy Court in any core proceeding referenced in 28 U.S.C. § 157(b) and to hear and resolve such proceedings in

accordance with 28 U.S.C. § 157(c) and any and all related proceedings, including, without limitation, (i) all proceedings concerning disputes with, or Causes of Action or Claims against, any Person that the Debtors, the Estates, the Liquidating Trustee, the Liquidating Trust or any of their successors or assigns, may have, and (ii) any and all Causes of Action or other Claims against any Person for harm to or with respect to (x) any Property of the Estate or Property of the Liquidating Trust, including conversion thereof, or (y) any Estate Property liened or transferred by the Debtors to any other Person;

(b)    Include jurisdiction over the recovery of any Property of the Estate or Property of the Liquidating Trust (or property transferred by the Debtors with Bankruptcy Court approval) from any Person wrongly asserting ownership, possession or control of the same, whether pursuant to sections 542, 543, 549, and/or 550 of the Bankruptcy Code or otherwise, as well as to punish any violation of the automatic stay under section 362 of the Bankruptcy Code or any other legal rights of the Debtors or the Estates under or related to the Bankruptcy Code; and

(c)    Permit the taking of any judgment, including a judgment by default, against any Person who has submitted himself or herself to the jurisdiction of the Bankruptcy Court.

## ARTICLE XIII

### MISCELLANEOUS

### 13.01   Defenses and Setoff

Nothing contained in this Plan shall constitute a waiver or release by the Debtors, the Estates, the Liquidating Trust, or the Liquidating Trustee of any right rights in respect of legal and equitable objections, defenses, setoffs, or recoupment.  To the extent permitted by applicable law, the Liquidating Trustee may, but shall not be required to, set off or recoup against any Claim or Administrative Claim and the payments or other Distributions to be made under the Plan in respect of such Claim or Administrative Claim, claims of any nature whatsoever that arose before the Petition Date that the Debtors, the Estates, the Liquidating Trust or the Liquidating Trustee may have against the Holder of such Claim, or Administrative Claim, or Interest.

### 13.02   Governing Law

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

### 13.03   Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan or any Plan Document shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### 13.04   Post-Effective Date Service List

Pursuant to Bankruptcy Rule 2002 and any applicable Local Rule, notice of all post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served only upon the following:  (i) counsel for the U.S. Trustee, (ii) counsel to the Plan Proponents, (iii) counsel for the Liquidating Trustee, (iv) any party or its counsel of record, if known, whose rights would be affected by the relief requested, and (v) all persons on the Bankruptcy Rule 2002 service list.  With the exception of the Plan Proponents and the U.S. Trustee, any Person desiring to remain on the Debtors' Bankruptcy Rule 2002 service list shall be required to File a request for continued service and to serve such request upon counsel to the Liquidating Trustee within thirty (30) days subsequent to the Effective Date.  Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order.  **Persons who do not File a request for continued service within thirty (30) days subsequent to the Effective Date shall be removed from the Debtors' Bankruptcy Rule 2002 service list unless and until they file and serve a subsequent request for service pursuant to Bankruptcy Rule 2002**

### 13.05   Notices

To be effective, any pleading, notice or other document required by the Plan or the Confirmation Order to be served on or delivered to counsel to the Debtors, the Committee, and the U.S. Trustee must be sent by overnight delivery service, electronic mail, courier service or messenger to:

    **(a)**    <u>**If to the Debtors:**</u>

        Goldstein & McClintock, LLLP
        Maria Aprile Sawczuk, Esq.
        501 Silverside Road, Suite 65
        Wilmington, DE 19809
        marias@goldmclaw.com

    **(b)**    <u>**If to the Committee:**</u>

        Lowenstein Sandler LLP
        Jeffrey Cohen, Esq.
        Brent I. Weisenberg, Esq.
        Erica G, Mannix, Esq.
        1251 Avenue of the Americas
        New York, NY 10020
        jcohen@lowenstein.com
        bweisenberg@lowenstein.com
        emannix@lowenstein.com

**(c)**     **If to the U.S. Trustee:**

Office of the U.S. Trustee
Megan Seliber, Esq.
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, Delaware 19801
Megan.Seliber@usdoj.gov

### 13.06   Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) and 7062 and/or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims, Administrative Claims, and Interests (irrespective of whether such Claims, Administrative Claims,  or Interests are Allowed or Disallowed or were voted to accept or reject the Plan), all Entities that are parties to or are subject to the Plan, each entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts with one or more of the Debtors.

### 13.07   Severability of Plan Provisions

If, before the Effective Date of the Plan, any term or provision of the Plan is held by the Bankruptcy Court or any other court exercising jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court or other court exercising jurisdiction may alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, and such term or provision shall then be applicable as altered or interpreted so long as such term or provision is acceptable to the Plan Proponents.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Plan Proponents' consent; and (iii) non-severable and mutually dependent.

### 13.08   Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan, to the extent not inconsistent with the Plan. The Plan Proponents reserve the right to amend the Exhibits and schedules to the Plan any time prior to Confirmation.

### 13.09   Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Plan Proponents will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non- bankruptcy law, and pursuant to section 1125(e), the Plan Proponents and their respective managers (pursuant to Debtors' corporate organizational documents), and Professionals

will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, including, if applicable, in the offer, issuance, sale and purchase of any Plan securities (if any) provided under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan.

### 13.10  Conflicts

If there is a conflict between this Plan and a Plan Supplement document, including the Liquidating Trust Agreement, the Plan Supplement document, as applicable, shall govern and control.  If any provision of this Plan (including a Plan Supplement) conflicts with or is in any way inconsistent with any provision of the Confirmation Order, the Confirmation Order shall govern and control.

### 13.11  U.S. Trustee Fees

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the remaining Debtors and the Liquidating Trust shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, each of the remaining Debtors and the Liquidating Trustee shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors and the Liquidating Trust shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.

### 13.12  Implementation

The Plan Proponents shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan and the Plan Documents, without further order from the Bankruptcy Court.

### 13.13  No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtors, the Estates, or the Committee with respect to any matter set forth herein, including, without limitation, liability on any Claim, Administrative Claim, or Interest or the propriety of the classification of any Claim, Administrative Claim, or Interest.

### 13.14  Substantial Consummation of the Plan

On the Effective Date, the Combined Disclosure Statement and Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.